DAVID YANG (SBN 246132)
*dyang@hycounsel.com*
MATT HAWKINSON (SBN 248216)
*mhawkinson@hycounsel.com*
KEVIN GOLDMAN (SBN 249894)
*kgoldman@hycounsel.com*
SHARLENE LEE (SBN 274033)
*slee@hycounsel.com*
HAWKINSON YANG LLP
8033 W. Sunset Blvd. #3300
Los Angeles, CA 90046
Telephone: (213) 634-0370
Facsimile: (213) 260-9305

Attorneys for Plaintiff
7EDU IMPACT ACADEMY INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

7EDU IMPACT ACADEMY INC., a California corporation,

Plaintiff,

v.

YA YOU, an individual, AMY QU (a.k.a. AIMEE QU), an individual; YAYI LI, an individual; IGNISION EDUCATION SILICON VALLEY, a California corporation; and DOES 1-10, inclusive,

Defendants.

CASE NO.

**COMPLAINT FOR**

**(1) TRADE SECRET MISAPPROPRIATION UNDER THE DEFEND TRADE SECRETS ACT (18 U.S.C. §1836, ET SEQ.)**
**(2) TRADE SECRET MISAPPROPRIATION UNDER CAL. CIV. CODE §3426)**
**(3) BREACH OF CONTRACT (YOU)**
**(4) BREACH OF CONTRACT (LI)**
**(5) VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. §1030, ET SEQ.)**
**(6) COMPUTER CRIMES IN VIOLATION OF CALIFORNIA PENAL CODE §502(C)**
**(7) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**
**(8) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
**(9) CONVERSION**
**(10) MONEY HAD AND RECEIVED**
**(11) BREACH OF DUTY OF LOYALTY**
**(12) BREACH OF FIDUCIARY DUTY**
**(13) AIDING AND ABETTING BREACH OF DUTY OF LOYALTY**
**(14) AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
**(15) DEFAMATION**

**(16) FEDERAL FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. §1125(A)**
**(17) FALSE ADVERTISING IN VIOLATION OF CAL. BUS. & PROF. CODE §17500, ET SEQ.**
**(18) UNFAIR COMPETITION (CAL. BUS. & PROF. CODE §17200, ET SEQ.)**

**DEMAND FOR JURY TRIAL**

Plaintiff 7EDU Impact Academy Inc. ("Plaintiff" or "7EDU") hereby sues Defendants Ya You ("You"), Amy Qu (a.k.a. Aimee Qu) ("Qu"), Yayi Li ("Li"), Ignision Education Silicon Valley ("Ignision"), and Does 1-10, and alleges:

## NATURE OF THE ACTION

1. 7EDU is a high-end education consulting and tutoring business based in Silicon Valley that helps students and their parents navigate the increasingly competitive college admissions process. 7EDU offers a personalized, premium service through which its counselors manage all aspects of the college preparation journey, from curating students' extracurricular activities to helping them land summer internships, craft essays, and providing personalized tutoring for their courses with the goal of getting the students into top colleges and universities. 7EDU provides online and on-site courses and services for college-bound students, including college counseling and application assistance, test prep (e.g., SAT, ACT, and AP exams), enrichment courses, independent study, after school programs, summer camp, and winter camp.

2. This is a case in which three trusted 7EDU employees, Defendants You, Qu, and Li, secretly conspired to sabotage 7EDU from the inside for the benefit of a new competing business that they were then planning to establish, Defendant Ignision Education Silicon Valley ("Ignision"). Among other wrongful acts, Defendants have stolen 7EDU's confidential and trade secret information and used it to benefit Defendant Ignision. 7EDU's investigation to date also revealed that at least Defendant You has stolen substantial sums of money from 7EDU.

3. Defendant You held several high-level roles during her employment by 7EDU, including Chief Operating Officer and Marketing & Sales Director, and also worked directly with

clients. Starting at least as early as mid-2023, while they were all still employed by 7EDU, Defendants You, Qu, and Li hatched a secret plan to establish a separate business (Defendant Ignision) to compete with 7EDU. To prepare for their competing venture, they stole 7EDU's business files for their own use, diverted client payments, and sabotaged 7EDU's social media account, making the account worthless for 7EDU purposes. When Defendant You resigned from 7EDU in December 2023, Defendant Qu suggested that 7EDU transfer Defendant You's client matters to Defendant Qu, without revealing that Defendant Qu was also planning to leave 7EDU to join Ignision. When Defendant Qu resigned days later (as planned by Defendants), Defendants used this as an opportunity to try to take 7EDU's clients. 7EDU is informed that Defendants have made several false statements about 7EDU in an effort to steal its clients, including false statements that 7EDU is experiencing a staff exodus and that 7EDU is no longer accepting new clients. These brazen actions and false statements were intended by Defendants to drive clients away from 7EDU and to Defendant Ignision. Contrary to Defendants' false statements, 7EDU maintains a strong roster of counselors who continue to provide exceptional service to 7EDU's clients.

4. After their resignations, Defendants have continued their misconduct by brazenly using 7EDU's trade secret information to solicit 7EDU clients and employees to terminate their agreements to 7EDU and sign new agreements with Defendants' newly-formed competitor, Defendant Ignision. Additionally, Defendants have irreversibly changed the name of 7EDU's social media account, preventing 7EDU from using its own account. Defendants are also making false and/or misleading representations on Defendant Ignision's website, making false statements to 7EDU students, parents, and employees.

5. Rather than stopping this misconduct once 7EDU's counsel contacted Defendants' counsel, Defendants have failed to provide a substantive response and are continuing their wrongful acts. This willful, brazen, and unlawful conduct cannot be left unchecked. Nothing can justify Defendants' trade secret theft, deliberate contractual breaches, their tortious conduct, or their unfair business practices. This Court should hold Defendants to their contractual promises, award 7EDU compensatory and punitive damages, and enjoin Defendants from engaging in further misconduct.

**THE PARTIES**

6. 7EDU is now, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of California, with its principal place of business in the City of Cupertino, County of Santa Clara, State of California.

7. 7EDU is informed and believes and on that basis alleges that Defendant You is now, and at all times herein mentioned was, an individual residing in the City of Los Gatos, County of Santa Clara, State of California.

8. 7EDU is informed and believes and on that basis alleges that Defendant Qu is now, and at all times herein mentioned was, an individual residing in the City of Cupertino, County of Santa Clara, State of California.

9. 7EDU is informed and believes and on that basis alleges that Defendant Li was at all times herein mentioned an individual residing in either the City of Los Angeles, County of Los Angeles, State of California or the City of Durham, County of Durham, State of North Carolina. 7EDU is informed and believes and on that basis alleges that Defendant Li is now an individual residing in the City of Durham, County of Durham, State of North Carolina.

10. 7EDU is informed and believes and on that basis alleges that Defendant Ignision is now, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of California, with its principal place of business in the City of San Jose, County of Santa Clara, State of California. Defendant Qu is the Chief Executive Officer, Chief Financial Officer, and Secretary of Ignision. 7EDU is informed and believes and on that basis alleges that Defendant You is an officer, director, shareholder and/or employee of Ignision. 7EDU is informed and believes and on that basis alleges that Defendant Li is an employee of Ignision.

11. 7EDU is informed and believes and on that basis alleges that at all times relevant herein, the named Defendants and Does 1 through 10, inclusive, were the alter ego of each other and each of them, and that such a unity of interest and ownership existed between them that separate personalities have not in reality existed; and there would be an inequitable result if the acts and omissions at issue in this case were treated as those of any of the Defendants and Does 1 through 10 alone. 7EDU is further informed and believes that the named Defendants and Does 1 through 10

commingle funds and assets among themselves, that the named Defendants and Does 1 through 10 have identical, nearly identical or effectively identical owners, that the Defendants and Does 1 through 10 have the same offices, directors, and officers and that the Defendants and Does 1 through 10 use one another as a mere shell or conduit for the affairs of one another. In addition, 7EDU is informed and believes that each of the named Defendants and Does 1 through 10 disregard corporate formalities, shares employees and each transfers assets or properties away and/or creates or shifts liabilities so that each may be left with insufficient capital to meet the needs of each entity's business and its liabilities and without consideration to the detriment of the entity's creditors.

12. 7EDU does not know the true names and capacities of the Defendants sued herein as Does 1 through 10, inclusive, whether individual, corporate, associated, or otherwise, and therefore sues these defendants by such fictitious names. 7EDU is informed and believes and based thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the events and happenings, and caused the damages, alleged herein. 7EDU will seek leave to amend this Complaint to allege the true names and capacities of such Defendants, named herein as Does 1 through 10, when their names and capacities have been ascertained.

13. 7EDU is informed and believes and on that basis alleges that at all times herein mentioned, each of the Defendants was the actual or ostensible duly authorized agent, managing agent, servant, employee, representative, alter ego, co-conspirator, incorporator, officer, director, shareholder, member, parent, brother or sister company or corporation, predecessor and successor-in-interest of each of the remaining co-defendants, and in doing the things hereinafter alleged, was acting within the course and scope of said agency, employment and office, with the express and/or implied permission, consent, resolution, direction, authorization and ratification of the remaining co-Defendants, and each of them.

14. Each reference in this Complaint to "Defendant," "Defendants," "co-Defendants," "Defendant Companies," "Company Defendants," "all persons acting under, in concert with, or for him/her/it," or any language similar to the foregoing, or to any specifically named Defendant refers also to all Defendants, including those sued or sued and served herein under fictitious names.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

15. This Court has original jurisdiction over this action pursuant to the Defend Secrets Act, 18 U.S.C. § 1836(c), the Lanham Act, 15 U.S.C. §1125, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and supplemental jurisdiction over 7EDU's state law claims pursuant to 28 U.S.C. § 1367.

16. This Court has personal jurisdiction over the defendants, who are residents of California.

17. Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b) because plaintiff 7EDU maintains its principal place of business in this District, Defendants You and Qu reside in this District and Defendant Ignision maintains its principal place of business in this District. Additionally, venue properly lies in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District. The agreements at issue in this complaint were also made and entered into in this District, was to be performed in this District, and the effects of the other conduct alleged herein were suffered by 7EDU in this District.

18. Pursuant to Northern District of California Local Rules 3-2 and 3-5 and General Order No. 44, this matter is to be assigned on a district-wide basis because it involved the misappropriation of intellectual property. The action arose in Cupertino, which is in Santa Clara County, and would therefore be assigned to the San Jose Division if not subject to district-wide assignment.

## GENERAL ALLEGATIONS

### I. BACKGROUND

19. 7EDU is a high-end education consulting and tutoring business based in Silicon Valley that helps students and their parents navigate the increasingly competitive college admissions process. 7EDU offers a personalized, premium service through which its counselors manage all aspects of the college preparatory journey, from curating students' extracurricular activities to helping them land summer internships, craft essays, and providing personalized tutoring for their courses with the goal of getting students into top colleges and universities. 7EDU provides online and on-site courses and services for college-bound students, including college counseling and application assistance, test prep (e.g., SAT, ACT, and AP exams), enrichment courses, independent study, after school programs,

summer camp, and winter camp.

20. 7EDU has invested years of time and hundreds of thousands of dollars developing confidential and proprietary information, including trade secrets, that give it an advantage in the marketplace. 7EDU takes extensive measures to keep this confidential and proprietary information secret and out of the hands of anyone (including its former employees) that should not have it. Despite this, 7EDU has learned that during their employment with 7EDU and without 7EDU's permission, Defendant You (7EDU's former Chief Operating Officer and Marketing & Sales Director), Defendant Qu (a former English Instructor at 7EDU), and, upon information and belief, Defendant Li (a former student mentor at 7EDU) downloaded and/or shared to their personal (non-7EDU) accounts and/or computers/devices, thousands of 7EDU's documents containing confidential and proprietary information, and are now working for a newly-formed direct competitor, Defendant Ignision. Among the materials that Defendants You, Qu, and Li took are trade secret documents related to 7EDU's marketing strategy, customer contract and related information, pricing, course materials, and other information that provides 7EDU with an advantage against competitors such as Defendant Ignision.

21. At the time of Defendant You's termination on December 7, 2023, she was 7EDU's Marketing & Sales Director, though she previously held the role of Chief Operating Officer. Leading up to her departure, Defendant You accessed numerous files from 7EDU's password-protected Google Drive, and downloaded and/or shared several files to external non-7EDU accounts. These files included 7EDU's client information, marketing materials, course materials and course design information. 7EDU is informed and believes and thereon alleges that Defendant You accessed these files in order to copy and keep 7EDU's confidential information for the benefit of Defendants. Defendant You also "wiped" her 7EDU-issued computer before returning it to 7EDU. On information and belief, Defendant You wiped her 7EDU laptop in order to hide evidence of her misconduct.

22. Defendant Li resigned her employment with 7EDU on December 13, 2023, less than a week after Defendant You's resignation. Upon information and belief, Defendant Li downloaded 7EDU files in order to take 7EDU's confidential information prior to her resignation, then wiped her 7EDU phone to hide evidence of her misconduct.

23. Defendant Qu resigned her employment with 7EDU on December 14, 2023. Leading up

to her departure, Defendant Qu downloaded over 800 files from 7EDU's password-protected Google Drive. Most of these downloads were completed on the last two days before her resignation. These files were selected and downloaded all at once, showing that Defendant Qu's goal was simply to take the files.

24. 7EDU is informed and believes, and thereon alleges that Defendants You, Qu, and Li now work for Defendant Ignision. On December 15, 2023, Defendant Qu filed Articles of Incorporation for Defendant Ignision. Defendant Qu is the Chief Executive Officer, Chief Financial Officer, and Secretary of Defendant Ignision.

## II. 7EDU's CONFIDENTIAL AND TRADE SECRET INFORMATION

### A. 7EDU has developed numerous trade secrets and maintains other valuable confidential information.

25. 7EDU has not only invested significant resources in developing its course materials; it has spent ten years and hundreds of thousands of dollars, and dedicated marketing and operations personnel to develop trade secret and confidential information regarding 7EDU's marketing strategy, client preferences, client contracts, pricing, and other competitively valuable information.

26. 7EDU derives significant advantage from this confidential and trade secret information. It allows 7EDU to anticipate the needs of its current and potential clients, understand the current capabilities and likely future needs of clients, efficiently time and target its marketing efforts, and develop industry-leading educational materials for clients. In short, the information at issue in this matter is critical to 7EDU's ability to successfully compete in the marketplace.

27. A competitor's or other third party's use of these trade secrets would result in irreparable harm to 7EDU by, for example, exposing its core business strategies, and providing competitors with insight into the needs, key contact, rates, contract terms, and preferences of 7EDU's clients. 7EDU's competitors could use this information to compete with 7EDU for business without having to invest the time, effort, and resources that 7EDU poured into developing this information. As a company that charges its clients for its experience and expertise, which are reflected in its course materials, the disclosure of such material would not only destroy the sales advantages that 7EDU has devoted such significant resources to building, it could also severely damage 7EDU's relationships

with its clients.

**B. 7EDU takes efforts to protect its confidential and trade secret information.**

28. 7EDU takes the protection its confidential and trade secret information very seriously and expends a considerable amount of time and money to keep its information secure. At all relevant times, 7EDU has taken extensive and reasonable steps to protect the confidentiality of its trade secrets and other proprietary information. These steps include:

a. Dual-factor authentication for any remote access to 7EDU systems or databases;

b. Email and messaging vaults and account recovery;

c. Data insight scanning and reporting;

d. Workspace audit logs;

e. On-site security at 7EDU's office;

f. Maintaining and disseminating a policy regarding the Company's confidential and trade secret information; and

g. Maintaining and disseminating a policy which outlines Company policy and guidelines with respect to the use and protection of electronic resources.

29. As a further safeguard for its confidential and trade secret information, 7EDU requires its employees to contractually agree to protect the company's intellectual property through their employment contracts and proprietary information and invention assignment agreements.

30. To that end, on October 21, 2020, Defendant You executed an Employment Contract ("You Employment Contract") and on October 22, 2020, Defendant You executed an Employee Proprietary Information and Invention Assignment Agreement ("You PIIA"). A copy of the You Employment Contract is attached as **Exhibit A**. A copy of the You PIIA is attached as **Exhibit B**.

31. Among other things, the You Employment Contract provides that during the time of her employment, Defendant You

> "agree[s] to not engage in any employment, business, or activity that is in any competitive with the business or proposed business of [7EDU]. [Defendant You] shall disclose to [7EDU] in writing any other gainful employment, business, or activity that he or she is currently associated with or participating in that competes with [7EDU]. [Defendant You] shall not assist any other person or organization in competing with [7EDU] or in preparing to engage in competition with the business or prospective business(es) of [7EDU]."

Exhibit. A, Section 17.

32. Additionally, in the You Employment Contract, Defendant You agreed "to keep all Confidential Information[1] absolutely confidential and protect its release from the public," "not to divulge, reveal, report or use, for any purpose, any of the Confidential Information which [Defendant You] has obtained or which was disclosed to [Defendant You] as a result of [Defendant You's] employment by [7EDU]," and "that any disclosure of the Confidential Information to a third party cannot be reasonably or adequately compensated for in money damages, would cause irreparable injury to [Defendant You], would gravely affect the effective and successful conduct of [7EDU's] business and goodwill and would be a material breach of this Agreement." Exhibit A, Section 21-22. The You Employment Contract also required Defendant You to follow 7EDU's policies and procedures, including 7EDU's Handbook. *See* Exhibit A, Section B.

33. Similarly, in the You PIIA, Defendant You agreed that during her employment, and at all times thereafter, she would "hold the Proprietary Information[2] in strict confidence and […] not use, reproduce, disclose or deliver, directly or indirectly, any Proprietary Information except to the extent necessary to perform [her] duties." Exhibit B, Section 3.

34. Defendant You also agreed in the You PIIA that she would not,

> "following the termination of [her] employment with the Company for any reason, use the Company's Proprietary Information or trade secrets or any other means that would amount to unfair competition to solicit any of the Company's customers, clients, vendors, business partners, or suppliers, or otherwise interfere with any business relationship or contract between the Company and any of its customers, clients, vendors, business partners, or suppliers."

Exhibit B, Section 3(d)(ii).

35. In the You PIIA, Defendant You further agreed "to promptly return all property of the Company," to "not retain any written or other tangible material containing any Proprietary Information or information pertaining to any Company Invention," and that during her employment she had a "duty of loyalty to the Company," that she would "not engage in any activity that is in any way detrimental to the Company's business or demonstrably anticipated business of the Company." Exhibit B, Section

[1] "Confidential Information" is defined in the You Employment Contract as "information which is confidential to [7EDU]." Exhibit A, Section 18.

[2] "Proprietary Information" is defined in the You PIIA as "any and all information and materials […] pertaining in any manner to the business of or used by the Company and its affiliates, or pertaining in any manner to any person or entity to whom the Company owes a duty of confidentiality." Exhibit B, Section 2(a).

9-10.

36. In Section 11 of the You PIIA, Defendant You agreed that "any breach by [her] of this Agreement would cause irreparable injury to the Company for which pecuniary compensation would not afford adequate relief and for which it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief to the Company." Therefore, she agreed "that if [she] breach[ed] any provision of this Agreement, the Company shall be entitled to injunctive or other equitable relief to remedy any breach or prevent any threatened breach of this Agreement, without necessity of posting bond or other security or proving it has sustained any damage." Exhibit B, Section 11.

37. Similarly, Defendant Li signed an employment contract on May 3, 2023 (the "Li Employment Contract"), containing the same provisions as the You Employment Contract. A copy of the Li Employment Contract is attached as **Exhibit C**. Defendant Li also signed a Proprietary Information and Invention Assignment Agreement on May 3, 2023 (the "Li PIIA"), containing the same provisions as the You PIIA. A copy of the Li PIIA is attached as **Exhibit D**.

38. As set forth above, 7EDU also maintained and disseminated a policy regarding the Company's confidential and trade secret information, as well as a policy which outlines Company policy and guidelines with respect to the use and protection of electronic resources.

39. Accordingly, Defendants You, Qu, and Li were required to keep 7EDU's confidential and trade secret information confidential pursuant to 7EDU's policies, as well as applicable law.

## III. DEFENDANTS YOU, QU, and LI'S EMPLOYMENT AND RESIGNATIONS

40. Defendants You, Qu, and Li were trusted 7EDU employees.

41. Defendant You began her employment with 7EDU as Learning and Development Director on October 26, 2020. She was promoted to Sales & Marketing Lead on August 2, 2022, and promoted again to Chief Operating Officer on June 1, 2023. Her position was adjusted to Marketing & Sales Director on August 21, 2023. On December 4, 2023, Defendant You resigned her employment with 7EDU, and her employment terminated on December 7, 2023. During her time at 7EDU and owing to her high-level positions, Defendant You had been given a significant amount of trust, including access to many of 7EDU's most valuable trade secrets and other confidential information.

42. Defendant Li began her employment with 7EDU as a Student Mentor on or around May 3, 2023. On December 13, 2023, Defendant Li resigned her employment with 7EDU, and her employment terminated on December 13, 2023. At the time of her resignation, Defendant Li also had been given a significant amount of trust, including access to many of 7EDU's most valuable trade secrets and other confidential information.

43. Defendant Qu began her employment with 7EDU as an English Instructor on September 11, 2019. On December 14, 2023, Defendant Qu resigned her employment with 7EDU, and her employment terminated on December 14, 2023. At the time of her resignation, Defendant Qu similarly had been given a significant amount of trust, including access to many of 7EDU's most valuable trade secrets and other confidential information.

44. As part of its extensive efforts to protect its trade secret and confidential information, 7EDU disables access to its systems and databases upon termination. Thus, Defendant You's access to 7EDU's systems was terminated on December 7, 2023, Defendant Li's access to 7EDU's systems was terminated on December 13, 2023, and Defendants Qu's access to 7EDU's systems was terminated on December 14, 2023.

## IV. DEFENDANTS' MISCONDUCT

### A. Defendants have stolen and misappropriated 7EDU's confidential and trade Secret information.

45. As a further part of 7EDU's commitment to protecting its intellectual property, 7EDU conducts forensic investigations of its systems following the departure of employees with access to sensitive information.

46. Upon conducting such an investigation regarding Defendants You, Qu, and Li, 7EDU discovered that Defendants You and Qu had accessed 7EDU's secure Google Drive, which is a cloud-based storage system/database wherein virtually all of 7EDU's business files have been compiled and stored. Computer forensics show that Defendant You viewed numerous files containing 7EDU's confidential and trade secret information immediately prior to resigning her employment with the Company, including a document showing 7EDU's employee compensation on December 1, 2023. She also downloaded and/or shared several to external non-7EDU accounts. These files included 7EDU's

client information, marketing materials, course materials and course design. Upon information and belief, Defendant You used her personal computer to view these files so that she could copy the files and use them after her employment with 7EDU terminated.

47. Defendant You's viewing activity was inconsistent with any of her prior work as a 7EDU employee. Importantly, she accessed 7EDU's key marketing and sales documents on her last day of employment while she was supposed to work on client account transfers..

48. Although Defendant You promised to return her 7EDU devices in their original condition, Defendant You also deleted the data from her 7EDU laptop and cleared the data from the applications on her 7EDU phone before returning these devices to 7EDU. Upon information and belief, Defendant You deleted the data on the 7EDU devices to conceal her downloading and/or copying of 7EDU's confidential and trade secret information, as well as her solicitation of 7EDU students/parents and employees using 7EDU's confidential and trade secret information.

49. Similarly, Defendant Li deleted the data from her 7EDU phone before returning these devices to 7EDU. Upon information and belief, Defendant Li deleted the data on her 7EDU phone to conceal her solicitation of 7EDU students/parents and employees using 7EDU's confidential and trade secret information.

50. Additionally, 7EDU has discovered that Defendant You improperly created or modified 7EDU documents such that her personal Google account is listed as the owner or editor, allowing her to use her personal Google account to access and copy 7EDU documents. Upon information and belief, Defendant You has used her ownership of these 7EDU documents to copy these documents for use by Defendant Ignision.

51. Computer forensics also show that Defendant Qu downloaded thousands of files containing 7EDU's confidential and trade secret information immediately prior to and one day after resigning her employment with 7EDU. In the days leading up to her departure, Defendant Qu downloaded over 800 files from 7EDU's password-protected Google Drive. Most of these downloads were completed on her last two days of employment with 7EDU. Defendant Qu selected and downloaded these files all at the same time, showing that Defendant Qu's goal was simply to take the files so that they could be used by Defendants.

52. Defendant Qu's mass-downloading activity was inconsistent with any of her prior work as a 7EDU employee; during her entire four years at 7EDU, she had never previously downloaded anywhere near that many files in a single day. Upon information and belief, Defendant Qu used her personal computer for these downloads so that she could keep the files and use them after her employment with 7EDU terminated.

53. Additionally, 7EDU has discovered that Defendant Qu improperly created or modified 7EDU documents such that her personal Google account is listed as the owner or editor, allowing her to use her personal Google account to access and copy 7EDU documents. Upon information and belief, Defendant Qu has used her ownership of these 7EDU documents to copy these documents for use by Defendant Ignision.

54. Many of these files contained confidential business partner and marketing data. 7EDU maintains these documents specifically because they provide an advantage in the market: companies without access to historical statistics regarding marketing efforts are not able to efficiently determine the business partners and types of marketing strategies that lead to the highest amount of new student/parent agreements.

55. Defendants You and Qu also took documents containing 7EDU's client information. These documents include client contracts as well as information on services provided to clients, information on the needs and progress of the clients, pricing, renewal dates and terms, contact information, long-term relationship histories, notes from interactions with 7EDU personnel, client concerns and complaints, the progress of each client, and a panoply of additional data that describe the exact relationship between 7EDU and its clients. This information is valuable because its secrecy prevents competitors from engaging in surgically targeted marketing to 7EDU's clients. For example, if a competitor has access to 7EDU's clients contracts, it would know exactly whom to contact, the most advantageous time and way to pitch 7EDU's clients, what programs and services the clients need or would be interested in, and how to price its programs and services to efficiently undercut 7EDU.

56. Defendants You and Qu also took 7EDU's course materials, including its curriculum information. These documents are critical to 7EDU because they provide the blueprints for creating copycat courses. A competitor could use these materials to mimic 7EDU's courses.

57. Defendants You and Qu also took 7EDU's research and analysis of colleges and universities and strategies for admission, which 7EDU has developed over ten years at the cost of hundreds of thousands of dollars. 7EDU maintains these documents specifically because they provide an advantage in the market: companies without access to this information are not able to advise clients on admissions strategies as efficiently and effectively as 7EDU.

58. Defendants You and Qu also took documents containing employee information. These documents include employee contact information and employee compensation information. This information is valuable because its secrecy prevents competitors from engaging in surgically targeted solicitation of 7EDU's employees. For example, if a competitor has access to 7EDU's employee information, it would know exactly whom to contact, the most advantageous time and way to solicit 7EDU's employees, and how much compensation to offer 7EDU's employees to efficiently lure them to a competitor.

59. Upon information and belief, Defendant Li also used 7EDU's confidential and trade secret information to solicit 7EDU students and parents, and deleted the evidence of such misconduct from her 7EDU phone.

60. Defendants You, Qu, and Li's theft of 7EDU's confidential and trade secret information is particularly concerning because they were planning to leave 7EDU to start a direct competitor, Defendant Ignision. Upon information and belief, Defendant You, Qu, and Li engaged in these unlawful activities within the scope of their employment with Defendant Ignision. Defendant Ignision offers college admissions counseling and tutoring, in direct competition to 7EDU. 7EDU and Defendant Ignision compete in the same market: college admissions counseling and tutoring. The companies also compete for customers in the same geographic area – the San Francisco Bay Area, and in particular, Silicon Valley.

61. Upon information and belief, Defendants You, Qu, and Li knew not only that they were going to start working for a competing business, Defendant Ignision, but that they knew they were bringing Defendant Ignision stolen files to help it compete against 7EDU. Upon information and belief, Defendant You and Qu began preparing to steal 7EDU's confidential and trade secret information to use for their competing business well before they resigned.

62. On December 4, 2023, Defendant You informed 7EDU's CEO, Jun Liu, that she had decided to leave 7EDU for another opportunity. Defendant You agreed to help transition her clients to another 7EDU employee, and promised to try her best to minimize any kind of damage to 7EDU. Defendant You told Jun Liu, CEO of 7EDU, that she would support the transition of her clients to make sure that the students were not affected. Defendant You agreed to let 7EDU inform its students of Defendant You's resignation. Defendant You's promises were false and were intended to hide her plans from 7EDU.

63. Unfortunately, before 7EDU could inform its clients of Defendant You's resignation, without informing 7EDU, on December 5, 2023, Defendant You emailed 7EDU's clients announcing her departure and encouraging them to contact her at her personal email, causing concern among 7EDU's clients. The following day, Defendant Qu approached 7EDU's CEO, offering to take over the clients that Defendant You had serviced on behalf of 7EDU. 7EDU, unaware of Defendant Qu's plan to resign days later, began transitioning Defendant You's students to Defendant Qu. It is now clear that Defendant Qu requested to take over these client accounts so that she could try to bring them over to Defendant Ignision.

64. On December 6, 2023, Jun Liu and 7EDU's co-founder, Yan Liu, met with Defendant You regarding the transition, and 7EDU's Department Manager, Wanting Chen, sent Defendant You a transition document to work on. However, by the end of the day, Defendant You had made little progress, and 7EDU deactivated Defendant You's work accounts. When Defendant You claimed that she couldn't complete the transition document because she no longer had access to her Google Drive, 7EDU instructed her to complete the document from memory, and later that day, 7EDU terminated her employment.

65. After 7EDU transitioned Defendant You's students to Defendant Qu as she had requested, Defendants Li and Qu suddenly resigned without transitioning their students, causing disruption to 7EDU's clients.

66. Soon after resigning their employment with 7EDU, Defendants You, Qu, and Li contacted 7EDU's clients to tell them that they had started working for a new company, Defendant Ignision.

67. Soon after resigning their employment with 7EDU, Defendants You, Qu, and Li used 7EDU's confidential information to solicit 7EDU clients to terminate their agreements with 7EDU and to sign up with Defendant Ignision. For example, Defendant Qu used 7EDU's confidential information to reached out to at least one 7EDU client and told them that she wanted to continue tutoring them through her personal Zoom.

**B. Defendant You misdirected 7EDU payments to her personal bank account.**

68. 7EDU has discovered that while she was employed at 7EDU, Defendant You secretly misdirected 7EDU payments to her personal bank account, including, without limitation, a payment in the amount of $2,045.78 on September 12, 2023, a payment in the amount of $2,045.78 on September 27, 2023, and a payment in the amount of $4,091.55 on November 17, 2023. Defendant You did not inform 7EDU about these unauthorized payments, and instead instructed a 7EDU employee to mark the invoices as paid, even though she knew that she had received the payments instead of 7EDU.

C. **Defendant You has sabotaged 7EDU's social media account.**

69. In the course of her employment with 7EDU, Defendant You had access to 7EDU's social media and marketing platform accounts. Defendant You has sabotaged 7EDU's social media by irreversibly changing the name of 7EDU's social media account, making the account worthless for 7EDU purposes.

**D. Defendant Ignision is making false and/or misleading representations on its website.**

70. Defendant Ignision is making false and/or misleading representations on its website (https://ignision.education), including the following:

a. that Ignision's students have a 97% acceptance rate to colleges;

b. that Ignision's students have received 500+ top university offers;

c. that Ignision has supported 1000+ students; and

d. that Ignision's students have received offers of admission from Johns Hopkins University, Massachusetts Institute of Technology, University of Pennsylvania, University of California, Berkeley, Columbia University, Stanford University, Yale University, Cornell University, Swarthmore College, Brown University,

and Harvard University.

Defendant Ignision's representations are false. It is not possible for these representations to be true, as Ignision was only formed on December 15, 2023. The above representations by Defendant Ignision were copied from 7EDU's website.

71. Defendant Ignsion also includes photographs of several 7EDU counselors on its website, even though they are not working for Defendant Ignision. Thus, the depiction of these 7EDU employees on Defendant Ignision's website is false and misleading, and is intended to falsely convince 7EDU's students and parents that these 7EDU employees have left 7EDU to work for Defendant Ignision.

**E. Defendants You and Qu are making false statements to 7EDU's clients.**

72. Additionally, 7EDU has also discovered that Defendants have made false statements to 7EDU's clients in an attempt to persuade them to terminate their agreements with 7EDU and sign agreements with Defendant Ignision instead. For instance, on information and belief, Defendants have told 7EDU's clients and prospective clients that 7EDU is suffering a staff exodus and is not accepting new clients. These statements are not only false, they are intentional lies aimed at harming 7EDU to the benefit of Defendant Ignision.

**F. Defendants ignored 7EDU's request that they stop using 7EDU's confidential and trade secret information.**

73. After their resignations, 7EDU sent Defendants You, Li, and Qu emails reminding them that student contact and other information were 7EDU's intellectual property, and that contacting 7EDU students using such information would breach her proprietary information agreement. 7EDU received no response from Defendants You and Li, and an email from Defendant Qu denying that she had any obligation to keep 7EDU's intellectual property confidential.

74. On December 28, 2023, 7EDU sent Defendant You a cease and desist letter, demanding that Defendant You cease using and disclosing 7EDU's confidential and trade secret information, and return 7EDU's information. A copy of the letter is attached as **Exhibit E.** 7EDU received a response from Defendant You's counsel on January 6, 2024, requesting a two-week extension to respond. 7EDU's counsel responded on January 11, 2024, requesting an immediate response, but to date, 7EDU

has not received any substantive response. A copy of the email correspondence with Defendant You's counsel is attached as **Exhibit F**.

75. On March 8, 2024, 7EDU sent Defendants Qu, Li, and Ignision a cease and desist letter, demanding that Defendants return all stolen trade secrets and/or remove them from their devices, requesting that Defendants provide sworn attestations of their compliance, and asking Defendants to provide it with access to their email accounts and devices to confirm that they did not retain the trade secrets they stole. A copy of the letter is attached as **Exhibit G.** Given Defendant Qu's denial of any obligation to maintain the confidentiality of 7EDU's trade secrets, her status as the founder and CEO of Defendant Ignision, and Defendant You's refusal to substantively respond to 7EDU's demand letter, 7EDU has reason to believe that the other Defendants will also refuse to respond.

## FIRST CAUSE OF ACTION

## (Trade Secret Misappropriation Under the Defend Trade Secrets Act (18 U.S.C. §1836 et seq.) Against Defendants You, Qu, Li and Ignision and Does 1 through 10)

76. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

77. 7EDU owns and possesses trade secret information as set forth above, including documents containing confidential and proprietary information that is valuable specifically because it is not known to the public.

78. 7EDU will not disclose its trade secrets in a public filing, and Defendants You, Qu, Li, and Ignision's exfiltration was so extensive that every category of trade secret information cannot be identified at this point in 7EDU's investigation. Nonetheless, 7EDU is aware of at least the following categories of trade secret information misappropriated by Defendants You, Qu, Li, and Ignision:

a. pricing information;

b. client service details;

c. client contracts and related information;

d. client informational repositories;

e. marketing data and strategy documents; and

f. instructional and counseling materials.

79. These trade secrets were created by 7EDU at significant expense and developed over

the course of many years.

80. 7EDU's trade secret information is highly valuable, and 7EDU will suffer irreparable harm from the use and disclosure of its information, including loss of business and loss of competitive advantage.

81. 7EDU has taken reasonable steps to protect the secrecy of its trade secrets, including those listed above.

82. Upon information and belief, Defendant You misappropriated 7EDU's trade secret information by viewing and copying 7EDU's employee compensation information, client information, and marketing files in preparation for her resignation from 7EDU and retaining those files after her employment terminated. Defendant You also misappropriated 7EDU's trade secret information by using 7EDU's confidential and trade secret information to solicit 7EDU students and parents on behalf of Defendant Ignision.

83. Defendant Qu misappropriated 7EDU's trade secret information by downloading over 800 files in preparation for her resignation from 7EDU, retaining those files after her employment terminated, and using 7EDU's confidential and trade secret information to solicit 7EDU's clients on behalf of Defendant Ignision.

84. Defendant Li misappropriated 7EDU's trade secret information by using 7EDU's confidential and trade secret information to solicit 7EDU's clients on behalf of Defendant Ignision, then deleting data on her 7EDU phone to hide her misconduct.

85. Defendants You, Qu, Li, and Ignision had no legitimate business reason to take those documents or to use the information to solicit 7EDU's clients.

86. On information and belief, unless they are enjoined from doing so, Defendants You, Qu, Li, and Ignision will continue to misappropriate, disclose, and use 7EDU's trade secrets for their benefit and to 7EDU's detriment. On information and belief, Defendant Ignision is aware that Defendants You, Qu, and Li are using 7EDU's trade secrets for the benefit of Defendant Ignision, and to the detriment of 7EDU, and Defendant Ignision will continue to use 7EDU's trade secrets unless it is enjoined from doing so.

87. Because 7EDU's remedy at law is inadequate and it will suffer irreparable harm, 7EDU

seeks—in addition to damages—a preliminary injunction and a permanent injunction to protect its confidential and trade secret information and legitimate business interests. 7EDU will continue to suffer irreparable harm absent injunctive relief.

88. Defendants' misappropriation of 7EDU's trade secret information has cause and will continue to cause 7EDU substantial injury, including but not limited to actual damages, lost profits, harm to its reputation, and the diminution in value of its trade secrets.

89. Upon information and belief, Defendants have also been unjustly enriched by their misappropriation of 7EDU's trade secrets which, as described above, are worth millions of dollars.

90. Defendants' misappropriation of 7EDU's trade secrets is willful and malicious within the meaning of 18 U.S.C. § 1836(b)(3)(C). Defendants misappropriated 7EDU's trade secrets intentionally and knowingly and with a deliberate intent to benefit themselves and to injury 7EDU, against whom Defendant Ignision is now competing.

91. Defendants and Does 1 through 10, and each of them, knew of Defendants' conduct, actually knew or had reason to know that Defendants' possession and use of 7EDU's trade secret and confidential information was derived through improper means, and facilitated or benefited from the misappropriation and misuse. Defendants and Does 1 through 10 acted in concert with Defendants, knowingly encouraging and participating in the wrongful conduct, and receiving, misappropriating, and acting as a repository for the trade secret materials misappropriated by Defendants. Defendants and Does 1 through 10 took advantage of and profited from Defendants' improper conduct as alleged herein.

92. 7EDU is entitled to damages in an amount to be determined at trial, as well as injunctive relief, and an awarded of exemplary damages and attorney fees pursuant to 18 U.S.C. Section 1836(b)(3).

## SECOND CAUSE OF ACTION

**(Trade Secret Misappropriation Under Cal. Civ. Code §3426 Against Defendants You, Qu, Li and Ignision and Does 1 through 10)**

93. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

94. 7EDU owns and possesses trade secret information as set forth above, including

documents containing confidential and proprietary information that is valuable specifically because it is not known to the public.

95. 7EDU will not disclose its trade secrets in a public filing, and Defendants You, Qu, Li, and Ignision's exfiltration was so extensive that every category of trade secret information cannot be identified at this point in 7EDU's investigation. Nonetheless, 7EDU is aware of at least the following categories of trade secret information misappropriated by Defendants You, Qu, Li, and Ignision:

a. pricing information;

b. client service details;

c. client contracts and related information;

d. client informational repositories;

e. marketing data and strategy documents; and

f. instructional and counseling materials.

96. These trade secrets were created by 7EDU at significant expense and developed over the course of many years.

97. 7EDU's trade secret information is highly valuable, and 7EDU will suffer irreparable harm from the use and disclosure of its information, including loss of business and loss of competitive advantage.

98. 7EDU has taken reasonable steps to protect the secrecy of its trade secrets, including those listed above.

99. Upon information and belief, Defendant You misappropriated 7EDU's trade secret information by viewing and copying 7EDU's employee compensation information, client information, and marketing files, in preparation for her resignation from 7EDU and retaining those files after her employment terminated. Defendant You also misappropriated 7EDU's trade secret information by using 7EDU's confidential and trade secret information to solicit 7EDU's clients on behalf of Defendant Ignision.

100. Defendant Qu misappropriated 7EDU's trade secret information by downloading over 800 files in preparation for her resignation from 7EDU, retaining those files after her employment terminated, and using 7EDU's confidential and trade secret information to solicit 7EDU's clients on

behalf of Defendant Ignision.

101. Defendant Li misappropriated 7EDU's trade secret information by using 7EDU's confidential and trade secret information to solicit 7EDU students and parents on behalf of Defendant Ignision, then deleting data on her 7EDU phone to hide her misconduct.

102. Defendants You, Qu, Li, and Ignision had no legitimate business reason to take those documents or to use the information to solicit 7EDU students and parents.

103. On information and belief, unless they are enjoined from doing so, Defendants You, Qu, Li, and Ignision will continue to misappropriate, disclose, and use 7EDU's trade secrets for their benefit and to 7EDU's detriment. On information and belief, Defendant Ignision is aware that Defendants You, Qu, and Li are using 7EDU's trade secrets for the benefit of Defendant Ignision, and to the detriment of 7EDU, and Defendant Ignision will continue to use 7EDU's trade secrets unless it is enjoined from doing so.

104. Because 7EDU's remedy at law is inadequate and it will suffer irreparable harm, 7EDU seeks—in addition to damages—a preliminary injunction and a permanent injunction to protect its confidential and trade secret information and legitimate business interests. 7EDU will continue to suffer irreparable harm absent injunctive relief.

105. Defendants' misappropriation of 7EDU's trade secret information has cause and will continue to cause 7EDU substantial injury, including but not limited to actual damages, lost profits, harm to its reputation, and the diminution in value of its trade secrets.

106. Upon information and belief, Defendants have also been unjustly enriched by their misappropriation of 7EDU's trade secrets which, as described above, are worth millions of dollars.

107. Defendants' misappropriation of 7EDU's trade secrets was willful and malicious within the meaning of Cal. Civ. Code § 3294. Defendants misappropriated 7EDU's trade secrets intentionally and knowingly and with a deliberate intent to benefit themselves and to injury 7EDU, against whom Defendant Ignision is now competing.

108. Defendants and Does 1 through 10, and each of them, knew of Defendants' conduct, actually knew or had reason to know that Defendants' possession and use of 7EDU's trade secret and confidential information was derived through improper means, and facilitated or benefited from the

misappropriation and misuse. Defendants and Does 1 through 10 acted in concert with Defendants, knowingly encouraging and participating in the wrongful conduct, and receiving, misappropriating, and acting as a repository for the trade secret materials misappropriated by Defendants. Defendants and Does 1 through 10 took advantage of and profited from Defendants' improper conduct as alleged herein.

109. 7EDU is entitled to damages in an amount to be determined at trial, as well as injunctive relief, and an awarded of exemplary damages and attorney fees.

**THIRD CAUSE OF ACTION**

**(Breach of Contract Against Defendant You)**

110. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

111. As a condition of her employment at 7EDU, Defendant You agreed to abide by the terms of the You Employment Contract and the You PIIA.

112. Among other things, these contracts imposed the following obligations on Defendant You:

a. Devote best efforts to 7EDU and refrain from acting against 7EDU's interests (Ex. A (You Employment Contract), § B and 17; Ex. B (You PIIA), § 10);

b. Abide by 7EDU's policies (Ex. A, § B);

c. Protect and keep secret 7EDU's confidential and trade secret information (Ex. A, §21-23; Ex. B, § 3(a));

d. Return all company physical and intellectual property upon termination (Ex. A, §29; Ex. B, § 9); and

e. Provide written certification of the return of all physical and intellectual 7EDU property (Ex. B, § 9).

113. 7EDU met its obligations under the You Employment Contract and the You PIIA including, without limitation, by providing Defendant You with a salary and benefits.

114. Defendant You breached her obligations by, among other things:

a. Upon information and belief, by viewing and copying 7EDU's files, immediately before leaving in violation of both her contractual obligations and

7EDU's policies so that she could use that information to directly compete against 7EDU.

b. Deleting 7EDU files on her 7EDU laptop and phones.

c. Failing to return 7EDU's intellectual property after her termination;

d. Failing to provide a written certificate of the return of 7EDU's physical and intellectual property;

e. Misdirecting 7EDU payments to herself; and

f. Irreversibly changing the name of 7EDU's social media account, making the account worthless for 7EDU purposes.

115. Defendant You's performance on these contractual provisions was not excused.

116. As a direct and proximate result of Defendant You's breaches, 7EDU has suffered damages in an amount to be proven at trial. Further 7EDU will continue to be directly and proximately damages and irreparably harmed if Defendant You is not enjoined from further violation of her contractual obligations, directed to comply therewith, and prohibited from using and disclosing 7EDU's confidential and trade secret information. 7EDU does not have an adequate remedy at law and will not be fully compensated for Defendant You's breaches without injunctive relief.

**FOURTH CAUSE OF ACTION**

**(Breach of Contract Against Defendant Li)**

117. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

118. As a condition of her employment at 7EDU, Defendant Li agreed to abide by the terms of the Li Employment Contract and the Li PIIA.

119. Among other things, these contracts imposed the following obligations on Defendant Li:

a. Devote best efforts to 7EDU and refrain from acting against 7EDU's interests (Ex. C (Li Employment Contract), § B and 17; Ex. D (Li PIIA), § 10);

b. Abide by 7EDU's policies (Ex. C, § B);

c. Protect and keep secret 7EDU's confidential and trade secret information (Ex. C, § 21-23; Ex. D, § 3(a));

d. Return all company physical and intellectual property upon termination (Ex. C, § 29; Ex. D, §9); and

e. Provide written certification of the return of all physical and intellectual 7EDU property (Ex. D, § 9).

120. 7EDU met its obligations under the Li Employment Contract and the Li PIIA including, without limitation, by providing Defendant Li with a salary and benefits.

121. Defendant Li breached her obligations by, among other things:

a. Upon information and belief, by viewing and copying 7EDU's files, immediately before leaving in violation of both her contractual obligations and 7EDU's policies so that she could use that information to directly compete against 7EDU.

b. Deleting 7EDU files on her 7EDU phone.

c. Upon information and belief, failing to return 7EDU's intellectual property after her termination; and

d. Failing to provide a written certificate of the return of 7EDU's physical and intellectual property.

122. Defendant Li's performance on these contractual provisions was not excused.

123. As a direct and proximate result of Defendant Li's breaches, 7EDU has suffered damages in an amount to be proven at trial. Further 7EDU will continue to be directly and proximately damages and irreparably harmed if Defendant Li is not enjoined from further violation of her contractual obligations, directed to comply therewith, and prohibited from using and disclosing 7EDU's confidential and trade secret information. 7EDU does not have an adequate remedy at law and will not be fully compensated for Defendant Li's breaches without injunctive relief.

**FIFTH CAUSE OF ACTION**

**(Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030)**

**Against Defendants You, Qu, Ignision, and Does 1 through 10)**

124. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

125. Upon information and belief, Defendants engaged in criminal acts in violation of the

Computer Fraud and Abuse Act (18 U.S.C. §1030) by accessing and removing 7EDU's data without authorization and by deleting information from 7EDU's systems, laptop, and phones.

126. 18 U.S.C. §1030 prohibits knowingly, intentionally, and without authorization causing the transmission of a program, information, code, or command to a protected computer, and causing damage.

127. On information and belief, Defendants Qu and Ignision were aware that Defendant You was engaged in this misconduct for the benefit of Defendant Ignision, and to the detriment of 7EDU, and each approved of this conduct.

128. Does 1-10, and each of them, knew of the conduct being engaged in by Defendants You and Ignision, actually knew or had reason to know that Defendants' conduct was wrongful, and facilitated or benefitted from the conduct. Does 1-10 acted in concert with Defendants, knowingly encouraging and participating in their wrongful conduct. Does 1-10 took advantage of and profited from Defendants' improper conduct as alleged herein.

129. As a direct and proximate result of Defendants' unlawful conduct, 7EDU has suffered economic damages, including, without limitation, damage to business reputation, lost profits, lost revenue, all in an amount to be determined according to proof at the time of trial. 7EDU has also been irreparably harmed, entitling it to injunctive relief.

## SIXTH CAUSE OF ACTION

**(Computer Crimes in Violation of California Penal Code §502(c)**
**Against Defendants You, Qu, Li, Ignision, and Does 1 through 10)**

130. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

131. Upon information and belief, Defendant You engaged in criminal acts in violation of California Penal Code Section 502 by accessing and removing 7EDU's data without authorization and by deleting information from 7EDU's systems, laptop, and phones.

132. Defendant Qu engaged in criminal acts in violation of California Penal Code Section 502 by accessing and downloading 7EDU's data without authorization.

133. Upon information and belief, Defendant Li engaged in criminal acts in violation of California Penal Code Section 502 by accessing and removing 7EDU's data without authorization and

by deleting information from 7EDU's systems, laptop, and phones

134. Penal Code Section 502(c) makes it a crime, for which there is a civil remedy, where, as here, a person:

> Knowingly accesses and without permission alters, damages, deletes, [or] destroys […] any data, computer, computer system, or computer network in order to either (A) devise of execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data […];

and

> Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network.

135. The actions taken by Defendants You, Qu, and Li, as alleged above, were not authorized by 7EDU and do not fall within the scope of employment exception set forth in Section 502(h).

136. Defendants You, Qu, and Li were acting solely for their personal benefit and/or for the benefit of their new company, Defendant Ignision, a competitor of 7EDU, and against the best interests of 7EDU when they accessed and/or deleted the information from 7EDU's systems, laptop, and phones.

137. This claim is not predicated on the misappropriation or theft of any confidential, proprietary, and/or trade secret information belonging to 7EDU, but rather on the independently improper actions described above, including Defendants You, Qu, and Li's access and/or deleting of information on 7EDU's systems, laptop and phones.

138. On information and belief, Defendant Ignision was aware that Defendants You, Qu, and Li were engaged in this misconduct for the benefit of Defendant Ignision, and to the detriment of 7EDU.

139. Does 1-10, and each of them, knew of the conduct being engaged in by Defendants,

actually knew or had reason to know that Defendants' conduct was wrongful, and facilitated or benefitted from the conduct. Does 1-10 acted in concert with Defendants, knowingly encouraging and participating in their wrongful conduct. Does 1-10 took advantage of and profited from Defendants' improper conduct as alleged herein.

140. As a consequence, Defendants You, Qu, and Li have been unjustly enriched and 7EDU has sustained damages in an amount to be proven at trial. Defendants You, Qu, and Li's acts were carried out willfully, fraudulently, maliciously, and with a wanton disregard of 7EDU's rights, thereby entitling 7EDU to punitive damages.

**SEVENTH CAUSE OF ACTION**

**(Intentional Interference with Contractual Relations**

**Against Defendants You, Qu, Li, and Ignision, and Does 1 through 10)**

141. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

142. 7EDU had valid services agreements with its clients (collectively, the "Client Agreements").

143. 7EDU had valid employment agreements with its employees (collectively, the "Employee Agreements"), including Defendant Li.

144. Defendants You, Qu, Li and Ignision were aware of 7EDU's Client Agreements and Employee Agreements.

145. Defendants You, Qu, Li, and Ignision intentionally engaged in conduct designed to disrupt the Client Agreements and the Employee Agreements, including, without limitation, making false representations about which 7EDU employees are working for Defendant Ignision, making false statements to 7EDU clients and employees regarding Defendants You and Qu's resignation from 7EDU, and otherwise engaging in communications with clients and employees to dissuade them from working with 7EDU and otherwise attempting to disrupt the contractual relationships between 7EDU and its clients, and the contractual relationships between 7EDU and its employees.

146. 7EDU's contractual relationships with its clients and employees were actually disrupted because several clients have terminated their agreements with 7EDU, and at least one employee has terminated her agreement with 7EDU.

147. Does 1-10, and each of them, knew of the conduct being engaged in by Defendants , actually knew or had reason to know that Defendants' conduct was wrongful, and facilitated or benefitted from the conduct. Does 1-10 acted in concert with Defendants, knowingly encouraging and participating in their wrongful conduct, and receiving, misappropriating and acting as a repository for, the property misappropriated by Defendants. Does 1-10 took advantage of and profited from Defendants' improper conduct as alleged herein.

148. As a direct and proximate result of Defendants' unlawful conduct, 7EDU has suffered economic damages, including, without limitation, lost profits associated with the termination of the Client Agreements and the Employee Agreements, loss of its competitive position, and loss of market share. 7EDU has also been irreparably harmed, entitling it to injunctive relief.

149. 7EDU is entitled to exemplary or punitive damages because Defendants acted with fraud, malice, oppression, and in conscious disregard of 7EDU's rights.

**EIGHTH CAUSE OF ACTION**

**(Intentional Interference with Prospective Economic Advantage Against Defendants You, Qu, Li, and Ignision, and Does 1 through 10)**

150. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

151. 7EDU had existing and prospective economic relationships with each of its existing and prospective clients.

152. Defendants You, Qu, Li and Ignision were aware of 7EDU's economic relationships with its existing and prospective clients.

153. Defendants You, Qu, Li, and Ignision intentionally engaged in conduct designed to disrupt 7EDU's economic relationships with its existing and prospective clients, including, without limitation, falsely telling prospective clients that 7EDU was no longer taking new clients, making false representations about which 7EDU employees are working for Defendant Ignision, making false statements to 7EDU clients and employees regarding Defendants You and Qu's resignation from 7EDU, and otherwise engaging in communications with clients and employees to dissuade them from working with 7EDU and otherwise attempting to disrupt 7EDU's economic relationships with its existing and prospective clients. 7EDU's economic relationships with its existing and prospective

clients were actually disrupted.

154. Does 1-10, and each of them, knew of the conduct being engaged in by Defendants, actually knew or had reason to know that Defendants' conduct was wrongful, and facilitated or benefitted from the conduct. Does 1-10 acted in concert with Defendants, knowingly encouraging and participating in their wrongful conduct. Does 1-10 took advantage of and profited from Defendants' improper conduct as alleged herein.

155. As a direct and proximate result of Defendants' unlawful conduct, 7EDU has suffered economic damages, including, without limitation, damage to business reputation, lost profits, lost revenue, loss of its competitive position, loss of market share, and lost business opportunities, all in an amount to be determined according to proof at the time of trial. 7EDU has also been irreparably harmed, entitling it to injunctive relief.

156. 7EDU is entitled to exemplary or punitive damages because Defendants acted with fraud, malice, oppression, and in conscious disregard of 7EDU's rights.

## NINTH CAUSE OF ACTION

## (Conversion Against Defendant You, and Does 1 through 10)

157. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

158. Defendant You secretly misdirected 7EDU payments to her personal bank account, including, without limitation, a payment in the amount of $2,045.78 on September 12, 2023, a payment in the amount of $2,045.78 on September 27, 2023, and a payment in the amount of $4,091.55 on November 17, 2023. Together, these payments total around $8,183.11. Defendant You did not inform 7EDU about these unauthorized payments, and instead instructed a 7EDU employee to mark the invoices as paid, even though she knew that she had received the payments instead of 7EDU. This money is the property of 7EDU. 7EDU did not give Defendant You permission to use or disburse this money. Defendant You had wrongfully and fraudulently retained and/or disbursed this money for her own gain.

159. As set forth above, Defendant You has wrongfully denied 7EDU those proceeds and have in fact exercised control over those payments and converted them by transferring and/or paying herself these proceeds for her own gain.

160. 7EDU has demanded immediate payment of the payments to which it is entitled, but Defendant You has refused those demands and continue to assert sole and exclusive possession and control over the payments that belong to 7EDU.

161. Does 1-10, and each of them, knew of the conduct being engaged in by Defendant You, actually knew or had reason to know that Defendant You's conduct was wrongful, and facilitated or benefitted from the conduct. Does 1-10 acted in concert with Defendant You, knowingly encouraging and participating in their wrongful conduct, and receiving, misappropriating and acting as a repository for, the property misappropriated by Defendant You. Does 1-10 took advantage of and profited from Defendant You's improper conduct as alleged herein.

162. 7EDU is entitled to immediate possession of the payments. As a legal and proximate result of defendants' conversion, 7EDU has suffered damages in an amount unknown at this time, but which is not less than $8,183.11. 7EDU will establish its exact damages according to proof at trial.

163. In acting as herein alleged, Defendant You, and Does 1 through 10 acted with fraud, oppression, and malice and with the intent to cause injury to 7EDU. The conduct of Defendant You, and Does 1 through 10 was despicable, oppressive, and in conscious disregard of the rights of 7EDU. Accordingly, 7EDU is entitled to recover exemplary and punitive damages from Defendant You, and Does 1 through 10, jointly and severally, in an amount sufficient to punish and make an example of Defendant You, and Does 1 through 10, which sum shall be shown according to proof at trial.

## TENTH COUNTERCLAIM

**(For Money Had and Received Against Defendant You, and Does 1 through 10)**

164. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

165. As set forth above, Defendant You and Does 1 through 10, and each of them, received money that was intended to be used for the benefit of 7EDU. This money was not used for the benefit of 7EDU, and Defendant You has not given the money to 7EDU.

166. Does 1-10, and each of them, knew of the conduct being engaged in by Defendant You, actually knew or had reason to know that Defendant You's conduct was wrongful, and facilitated or benefitted from the conduct. Does 1-10 acted in concert with Defendant You, knowingly encouraging and participating in her wrongful conduct, and receiving, misappropriating and acting as a repository

for, the money misappropriated by Defendant You. Does 1-10 took advantage of and profited from Defendant You's improper conduct as alleged herein.

167. As a result, Defendant You became indebted to 7EDU in the sum of at least $8,183.11 for money had and received by Defendant You and Does 1 through 10, and each of them.

168. Neither the whole nor any part of this sum has been paid, although demand therefore has been made. There is now due, owing, and unpaid from Defendant You, and Does 1 through 10, and each of them, to 7EDU the sum of at least $8,183.11.

169. 7EDU seeks recovery of at least $8,183.11 plus interest at the legal rate, according to proof.

## ELEVENTH CAUSE OF ACTION

**(Breach of Duty of Loyalty Against Defendants You, Qu, Li, and Does 1 through 10)**

170. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

171. As employees of 7EDU, Defendants You, Qu, and Li each owed 7EDU a duty of loyalty. As result, Defendants You, Qu, and Li were obligated with the utmost good faith and in the best interest of 7EDU.

172. 7EDU was entitled to place its trust and confidence in Defendants You, Qu, and Li and was entitled to expect Defendants You, Qu, and Li to act with the utmost good faith towards it in carrying out the business of 7EDU.

173. 7EDU did rely on Defendants You. Qu, and Li's loyalty and integrity and faithful performance of their job duties and responsibilities.

174. Labor Code section 2863 specifically states that "An employee who has any business to transact on his own account, similar to that entrusted to him by his employer, shall always give the preference to the business of the employer."

175. Through the actions set forth above, including falsely telling prospective clients that 7EDU was no longer taking new clients, as well as Defendants' efforts to harm the business of 7EDU, Defendants You, Qu, and Li knowingly and willingly breached their common law duties of loyalty to 7EDU and violated California Labor Code 2863.

176. This claim is not predicated on the misappropriation or theft of any confidential,

proprietary, and/or trade secret information belonging to 7EDU. Rather, it is predicated on Defendants' You, Qu, and Li's deceit and beaches of their duties of loyalty.

177. As a direct and proximate result of Defendants You, Qu, and Li's breach of their duties of loyalty, 7EDU has been and is being harmed and faces irreparable injury.

178. 7EDU is entitled to damages, in an amount to be determined at trial, as well as disgorgement by Defendants You, Qu, and Li of the salary, benefits, and other forms of renumeration paid to them during the time that they were, in secret, being disloyal to 7EDU, and all profits they and/or their new employer, Defendant Ignision, received as a result of this disloyalty, in an amount to be determined at trial 7EDU is further entitled to injunctive relief against Defendants to remedy their past improper conduct and prevent further irreparable harm to 7EDU.

179. Defendants' actions were done with malice, fraud, oppression, and reckless disregard of the above-described rights of 7EDU and within the meaning of California Civil Code Section 3294. Therefore, 7EDU seeks and is entitled to recover punitive damages.

## TWELFTH CAUSE OF ACTION

## (Breach of Fiduciary Duty Against Defendant You)

180. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

181. A fiduciary relationship existed between 7EDU on one hand, and Defendant You, on the other hand, during the time that Defendant You served as Chief Operating Officer and Sales & Marketing Director because of the parties' conduct, where Defendant You was responsible for, among other things, managing payments to 7EDU.

182. As Chief Operating Officer of 7EDU, and then as its Sales & Marketing Director, Defendant You owed fiduciary duties of care, loyalty, and good faith to 7EDU. Defendant You's fiduciary duties included obligations to exercise good business judgment, to act prudently in the management of 7EDU's payments, and to discharge her actions in good faith, and to deal fairly and truthfully with 7EDU. Defendant You also owed a fiduciary duty to act in the best interest of 7EDU.

183. 7EDU breached her fiduciary duties of good faith and loyalty by, among other things, misdirecting 7EDU payments to herself, falsely telling prospective clients that 7EDU was no longer taking new clients, and other wrongful conduct, as alleged herein. This claim is not predicated on the

misappropriation or theft of any confidential, proprietary, and/or trade secret information belonging to 7EDU, and is instead predicated on the independently wrongful actions described above.

184. As a foreseeable, direct, and proximate result of Defendant You's breach of fiduciary duty, 7EDU has been damaged in an amount according to proof.

185. Additionally, as a direct, proximate, and foreseeable result of the wrongful conduct of defendants, and each of them, 7EDU is entitled to relief, including imposition of a constructive trust, recovery in quantum meruit, restitution, and/or disgorgement of any profits, fees, or payments that may be obtained by defendants as a result of such wrongful conduct.

186. Defendant You's actions were done with malice, fraud, oppression, and reckless disregard of the above-described rights of 7EDU and within the meaning of California Civil Code Section 3294. Therefore, 7EDU seeks and is entitled to recover punitive damages.

**THIRTEENTH CAUSE OF ACTION**

**(Aiding and Abetting Breach of Duty of Loyalty**

**Against Defendants You, Qu, Li, Ignision, and Does 1 through 10)**

187. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

188. Defendants each provided substantial assistance, support, and encouragement to the other Defendants in committing breaches of their duties of loyalty, as described above. Defendants engaged in this bad conduct with full knowledge that the other Defendants were still employed by 7EDU and, therefore, owed duties of loyalty to 7EDU.

189. Further, 7EDU alleges on information and belief that Defendant Ignision accepted the benefits of Defendants' misconduct with full knowledge that the acts were wrongful.

190. This claim is not predicated on the misappropriation or theft of any confidential, proprietary, and/or trade secret information belonging to 7EDU, and is instead predicated on the independently wrongful actions described above.

191. The conduct of Defendants was a substantial factor in causing the harm suffered by 7EDU as a result of the breaches described above.

192. Does 1-10, and each of them, knew of the conduct being engaged in by Defendants, actually knew or had reason to know that Defendants' conduct was wrongful, and facilitated or

benefitted from the conduct. Does 1-10 acted in concert with Defendants, knowingly encouraging and participating in their wrongful conduct. Does 1-10 took advantage of and profited from Defendants' improper conduct as alleged herein.

193. As a direct and proximate result of Defendants' unlawful conduct, 7EDU has suffered economic damages, including, without limitation, damage to business reputation, lost profits, lost revenue, loss of its competitive position, loss of market share, and lost business opportunities, all in an amount to be determined according to proof at the time of trial.

194. Defendants' actions were done with malice, fraud, oppression, and reckless disregard of the above-described rights of 7EDU and within the meaning of California Civil Code Section 3294. Therefore, 7EDU seeks and is entitled to recover punitive damages.

**FOURTEENTH CAUSE OF ACTION**

**(Aiding and Abetting Breach of Duty of Fiduciary Duty**

**Against Defendants Qu, Li, Ignision, and Does 1 through 10)**

195. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

196. Defendants each provided substantial assistance, support, and encouragement to Defendant You in committing the breach of fiduciary duty, as described above. Defendants engaged in this bad conduct with full knowledge that the Defendant You was still employed by 7EDU as Chief Operating Officer and/or as its Sales & Marketing Director, and, therefore, owed fiduciary duties to 7EDU.

197. Further, 7EDU alleges on information and belief that Defendant Ignision accepted the benefits of Defendant You's misconduct with full knowledge that the acts were wrongful.

198. This claim is not predicated on the misappropriation or theft of any confidential, proprietary, and/or trade secret information belonging to 7EDU, and is instead predicated on the independently wrongful actions described above.

199. The conduct of Defendants was a substantial factor in causing the harm suffered by 7EDU as a result of the breaches described above.

200. Does 1-10, and each of them, knew of the conduct being engaged in by Defendants, actually knew or had reason to know that Defendants' conduct was wrongful, and facilitated or

benefitted from the conduct. Does 1-10 acted in concert with Defendants, knowingly encouraging and participating in their wrongful conduct. Does 1-10 took advantage of and profited from Defendants' improper conduct as alleged herein.

201. As a direct and proximate result of Defendants' unlawful conduct, 7EDU has suffered economic damages, including, without limitation, damage to business reputation, lost profits, lost revenue, loss of its competitive position, loss of market share, and lost business opportunities, all in an amount to be determined according to proof at the time of trial.

202. Defendants' actions were done with malice, fraud, oppression, and reckless disregard of the above-described rights of 7EDU and within the meaning of California Civil Code Section 3294. Therefore, 7EDU seeks and is entitled to recover punitive damages.

## FIFTEENTH CAUSE OF ACTION

### (Defamation Against Defendants You, Qu, Ignision, and Does 1 through 10)

203. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

204. In or around December 2023 and January 2024, Defendants caused to be published numerous false and defamatory statements about 7EDU and its business by orally making the false statements to 7EDU's clients.

205. Upon information and belief, Defendants You and Qu have falsely told 7EDU's clients and prospective clients that 7EDU was suffering mass staff resignations and that 7EDU was no longer accepting new clients.

206. The false statements were defamatory because they have a tendency to injure 7EDU in its business. As a result of the false statements, 7EDU was harmed because it lost business opportunities. Alternatively, the false statements were defamatory per se, because they tend directly to injure 7EDU with respect to its business by imputing to it general disqualification and imputing something with reference to its business that has a natural tendency to lessen its profits. The false statements were defamatory per se because the defamatory meaning appeared from the language itself.

207. Further, 7EDU alleges on information and belief that Defendant Ignision accepted the benefits of Defendants' misconduct with full knowledge that the acts were wrongful.

208. Does 1-10, and each of them, knew of the conduct being engaged in by Defendants,

actually knew or had reason to know that Defendants' conduct was wrongful, and facilitated or benefitted from the conduct. Does 1-10 acted in concert with Defendants, knowingly encouraging and participating in their wrongful conduct. Does 1-10 took advantage of and profited from Defendants' improper conduct as alleged herein.

209. As a result of Defendants' making the false statements, 7EDU has suffered harm to its reputation and is entitled to injunctive relief to prevent further publication of the defamatory statements, an order that Defendants publicly issue a correction of the defamatory statements, as well as general, special, and punitive damages in an amount to be proven at trial.

**SIXTEENTH CAUSE OF ACTION**

**(Federal False Advertising in Violation of 15 U.S.C. §1125(a) Against Defendant Ignision and Does 1 through 10)**

210. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

211. Defendant Ignision is making false and/or misleading representations on its website, including the following:

a. that Ignision's students have a 97% acceptance rate to colleges;

b. that Ignision's students have received 500+ top university offers;

c. that Ignision has supported 1000+ students; and

d. that Ignision's students have received offers of admission from Johns Hopkins University, Massachusetts Institute of Technology, University of Pennsylvania, University of California, Berkeley, Columbia University, Stanford University, Yale University, Cornell University, Swarthmore College, Brown University, and Harvard University.

212. Defendant Ignision's representations are false. It is not possible for these representations to be true, as Ignision was only formed on December 15, 2023. The above representations by Defendant Ignision were copied from 7EDU's website.

213. Defendant Ignsion also includes photographs of several 7EDU counselors on its website, even though they are not working for Defendant Ignision. Thus, the depiction of these 7EDU employees on Defendant Ignision's website is false and misleading, and is intended to falsely convince

7EDU's clients that these 7EDU employees have left 7EDU to work for Defendant Ignision.

214. Defendant Ignision's false and misleading marketing materials and statements on its website constitute false advertising in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125.

215. Defendant Ignision has made and continues to make false and misleading misrepresentations concerning its services in Defendant Ignision's marketing materials and statements on its website, throughout the United States, including in California, with the intent to mislead and deceive potential clients.

216. Upon information and belief, Defendant Ignision's false and/or misleading statements have actually deceived or tended to deceive a substantial segment of the relevant consumers for the parties' competing college admissions and tutoring services.

217. Upon information and belief, Defendant Ignision's false and/or misleading statements are material in that they have influenced the purchasing decisions of clients in the United States.

218. Defendant Ignision's false and/or misleading statements were and are made in interstate commerce.

219. Defendant Ignision's improper activities, as described herein, have been willful and deliberate, thereby making this an exceptional case under the Lanham Act. Indeed, Defendant Ignision knew or reasonably should have known that its advertisements and marketing materials were false and/or misleading. Therefore, Defendant Ignision's false advertising of its products was purposeful and knowing and merits a finding that exceptional circumstances exist sufficient to support an award of attorneys' fees and treble damages.

220. Does 1-10, and each of them, knew of the conduct being engaged in by Defendant Ignision, actually knew or had reason to know that Defendant Ignision's conduct was wrongful, and facilitated or benefitted from the conduct. Does 1-10 acted in concert with Defendant Ignision, knowingly encouraging and participating in their wrongful conduct. Does 1-10 took advantage of and profited from Defendant Ignision's improper conduct as alleged herein.

221. As a direct and proximate result of the acts of Defendants as alleged herein, 7EDU has been damaged through, among other things, lost sales and profits, lost students, and lsot market share.

222. As a direct and proximate result of the acts of Defendants as alleged herein, 7EDU has

suffered and will continue to suffer damage to its business, goodwill, reputation, and profits, while Defendant Ignision is profiting at 7EDU's expense.

223. 7EDU has suffered an irreparable injury. 7EDU has no adequate remedy at law, and the balance of hardships favor granting 7EDU injunctive relief.

224. The public interest would be served by enjoining Defendants because it would, among other reasons, stop Defendant Ignision's false and misleading advertising and consumer deception from continuing.

**SEVENTEENTH CAUSE OF ACTION**

**(False Advertising in Violation of Cal. Bus. & Prof. Code §17500 et seq.**

**Against Defendant Ignision and Does 1 through 10)**

225. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

226. Defendant Ignision advertises its services on its website, including its competing college admissions and tutoring services, in the State of California. In so doing, Defendant Ignision makes representations concerning its past successes and its employees. As set forth above, these representations are false and misleading.

227. Defendant Ignision knew that the statements on its website are untrue or misleading or, by the exercise of reasonable care, should have known that the statements are untrue or misleading.

228. Defendant Ignision's conduct constitutes false advertising under Cal. Bus. & Prof. Code §17500 et seq. Such false advertising has been done willfully with the intent to harm 7EDU.

229. Defendant Ignision has benefited from the sale of its services to clients who relied upon the untrue and misleading representations set forth herein.

230. Defendant Ignision's false and misleading statements were intended to competitively disadvantage 7EDU in the State of California and give Defendant Ignision an unfair competitive advantage in the marketplace.

231. Does 1-10, and each of them, knew of the conduct being engaged in by Defendant Ignision, actually knew or had reason to know that Defendant Ignision's conduct was wrongful, and facilitated or benefitted from the conduct. Does 1-10 acted in concert with Defendant Ignision, knowingly encouraging and participating in their wrongful conduct. Does 1-10 took advantage of and

profited from Defendant Ignision's improper conduct as alleged herein.

232. Defendants' false advertising has caused and is causing damage and irreparable harm to 7EDU in the form of lost profits, loss of market share, loss of sales, and loss of reputation and goodwill, which damage and injury will continue if not enjoined.

**EIGHTEENTH CAUSE OF ACTION**

**(Unfair Competition (California Business & Professions Code § 17200, et. seq.)**

**Against Defendants You, Qu, Li, Ignision, and Does 1 through 10)**

233. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

234. By the other wrongful conduct alleged herein, defendants have engaged in a pattern of unfair, unlawful, and/or fraudulent business practices and unfair competition in violation of California Business and Professions Code Section 17200, et. seq.

235. As a result of defendants' unfair competition, 7EDU has suffered and will continue to suffer irreparable harm from defendants' unfair practices and unfair competition, including, without limitation, harm to their business reputation, goodwill, and stature, for which there is no adequate remedy at law, thereby justifying injunctive relief.

236. Until and unless injunctive relief is granted, 7EDU will be irreparably harmed and defendants will be unjustly enriched, which enrichment should be disgorged pursuant to allowable remedies under California Business and Professions Code Section 17200, et. seq.

237. Additionally, as a direct, proximate, and foreseeable result of the wrongful conduct of defendants, and each of them, 7EDU is entitled to relief, including return of the payments intended for 7EDU, as well as imposition of a constructive trust, recovery in quantum meruit, restitution, and/or disgorgement of any profits, fees, or payments that may be obtained by defendants as a result of such wrongful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, 7EDU prays for judgment jointly and severally against Defendants You, Qu, Li, Ignision, and Does 1 through 10, inclusive, as follows:

a. For temporary and permanent injunctive relief, including an order stating that 7EDU is entitled to immediate possession of the confidential and trade secret information of 7EDU, an order to

prevent further publication of the defamatory statements, and an order that Defendants publicly issue a correction of the defamatory statements, an order prohibiting Defendants from making the false and misleading statements complained of herein; an order requiring Defendants to immediately withdraw, retract, and/or destroy, as applicable, all marketing materials containing such false or misleading statements; an order requiring Defendants to publish appropriate corrective advertising; and an order requiring Defendants to withdraw from any student agreements signed based on these false and misleading statements;

b. For compensatory damages, including general, actual, economic, consequential, emotional distress, and special damages, in an amount to be proven at trial;

c. For exemplary and punitive damages based on defendants' knowing, willful, intentional, and malicious conduct in an amount to be proven at trial;

d. For pre-judgment and post-judgment interest on the damages, according to proof;

e. For equitable relief, including imposition of a constructive trust, recovery in quantum meruit, restitution and/or disgorgement of any profits, fees, or payments;

f. For exemplary and punitive damages based on defendants' knowing, willful, intentional and malicious conduct in an amount to be proven at the trial;

g. For attorneys' fees pursuant to agreement or statute, according to proof;

h. For costs of suit and expenses; and

i. For such other relief as may be just and proper.

DATED: March 19, 2024 Hawkinson Yang LLP

By: /s/ David Yang

David Yang
Matt Hawkinson
Kevin Goldman
Sharlene Lee

Attorneys for Plaintiff
7EDU Impact Academy Inc.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff 7EDU Impact Academy Inc. hereby demands a trial by jury of any and all issues triable of right by a jury pursuant to the Seventh Amendment to the United States Constitution or as given by a statute of the United States.

DATED: March 19, 2024

Hawkinson Yang LLP

By: /s/ David Yang

David Yang
Matt Hawkinson
Kevin Goldman
Sharlene Lee

Attorneys for Plaintiff
7EDU Impact Academy Inc.