ELENA DIMUZIO (SBN 239953)
edimuzio@hycounsel.com
DAVID YANG (SBN 246132)
*dyang@hycounsel.com*
MATT HAWKINSON (SBN 248216)
*mhawkinson@hycounsel.com*
KEVIN GOLDMAN (SBN 249894)
*kgoldman@hycounsel.com*
SHARLENE LEE (SBN 274033)
*slee@hycounsel.com*
HAWKINSON YANG LLP
8033 W. Sunset Blvd. #3300
Los Angeles, CA 90046
Telephone: (213) 634-0370
Facsimile: (213) 260-9305

Attorneys for Plaintiff
7EDU IMPACT ACADEMY INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

7EDU IMPACT ACADEMY INC., a California corporation,

Plaintiff,

v.

YA YOU, an individual, AMY QU (a.k.a. AIMEE QU), an individual; YAYI LI, an individual; IGNISION EDUCATION SILICON VALLEY, a California corporation; and DOES 1-10, inclusive.

Defendants.

CASE NO.

**FIRST AMENDED COMPLAINT FOR**

**(1) TRADE SECRET MISAPPROPRIATION UNDER THE DEFEND TRADE SECRETS ACT (18 U.S.C. §1836, ET SEQ.)**
**(2) TRADE SECRET MISAPPROPRIATION UNDER CAL. CIV. CODE §3426)**
**(3) BREACH OF CONTRACT (YOU)**
**(4) BREACH OF CONTRACT (LI)**
**(5) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**
**(6) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
**(7) CONVERSION**
**(8) MONEY HAD AND RECEIVED**
**(9) BREACH OF DUTY OF LOYALTY**
**(10) BREACH OF FIDUCIARY DUTY**
**(11) AIDING AND ABETTING BREACH OF DUTY OF LOYALTY**
**(12) AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
**(13) FEDERAL FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. §1125(A)**
**(14) FALSE ADVERTISING IN VIOLATION OF CAL. BUS. & PROF.**

**CODE §17500, ET SEQ.**
**(15) UNFAIR COMPETITION (CAL. BUS. & PROF. CODE §17200, ET SEQ.)**

**DEMAND FOR JURY TRIAL**

Plaintiff 7EDU Impact Academy Inc. ("Plaintiff" or "7EDU") hereby sues Defendants Ya You ("You"), Amy Qu (a.k.a. Aimee Qu) ("Qu"), Yayi Li ("Li"), Ignision Education Silicon Valley ("Ignision"), and Does 1-10, and alleges:

## NATURE OF THE ACTION

1. 7EDU is a high-end education consulting and tutoring business based in Silicon Valley that helps students and their parents navigate the increasingly competitive college admissions process. 7EDU offers a personalized, premium service through which its counselors manage all aspects of the college preparation journey, from curating students' extracurricular activities to helping them land summer internships, craft essays, and providing personalized tutoring for their courses with the goal of getting the students into top colleges and universities. 7EDU provides online and on-site courses and services for college-bound students, including college counseling and application assistance, test prep (e.g., SAT, ACT, and AP exams), enrichment courses, independent study, after school programs, summer camp, and winter camp.

2. This is a case in which three trusted 7EDU employees, Defendants You, Qu, and Li, secretly conspired to sabotage 7EDU from the inside for the benefit of a new competing business that they were then planning to establish, Defendant Ignision Education Silicon Valley ("Ignision"). Among other wrongful acts, Defendants have stolen 7EDU's confidential and trade secret information and used it to benefit Defendant Ignision. 7EDU's investigation to date also revealed that at least Defendant You has stolen substantial sums of money from 7EDU.

3. Defendant You held several high-level roles during her employment by 7EDU, including Chief Operating Officer and Marketing & Sales Director, and also worked directly with clients. Starting at least as early as mid-2023, while they were all still employed by 7EDU, Defendants You, Qu, and Li hatched a secret plan to establish a separate business (Defendant Ignision) to compete

with 7EDU. To prepare for their competing venture, they stole 7EDU's business files for their own use, diverted client payments, secretly diverted marketing leads away from 7EDU, and sabotaged 7EDU's account on the marketing social network RED, making the account worthless for 7EDU's use. When Defendant You resigned from 7EDU in December 2023, Defendant Qu suggested that 7EDU transfer Defendant You's client matters to Defendant Qu, without revealing that Defendant Qu was also planning to leave 7EDU to join Ignision. When Defendant Qu resigned days later (as planned by Defendants), Defendants used this as an opportunity to try to take 7EDU's clients. Defendants also reached out to students they had been working with both before and after they left 7EDU to attempt to persuade those students to move to Ignision for counseling services. These brazen actions were intended by Defendants to drive clients away from 7EDU and to Defendant Ignision. And Defendants were successfully able to disrupt 7EDU's relationship at least eight students. Collectively, these actions have caused 7EDU hundreds of thousands of dollars of losses in new business, existing clients, and diverted payments.

4. After their resignations, Defendants have continued their misconduct by brazenly using 7EDU's trade secret information to solicit 7EDU clients to terminate their agreements with 7EDU and sign new agreements with Defendants' newly-formed competitor, Defendant Ignision, and have used 7EDU proprietary information to solicit new clients, to counsel students, and to create courses and content to deliver through Ignision. Defendants have also made false and misleading representations on Defendant Ignision's website.

5. Rather than stopping this misconduct once 7EDU's counsel contacted Defendants' counsel, Defendants have failed to provide a substantive response to these allegations, and are continuing their wrongful acts. This willful, brazen, and unlawful conduct cannot be left unchecked. Nothing can justify Defendants' trade secret theft, deliberate contractual breaches, their tortious conduct, or their unfair business practices. This Court should hold Defendants to their contractual promises, award 7EDU compensatory and punitive damages, and enjoin Defendants from engaging in further misconduct.

## THE PARTIES

6. 7EDU is now, and at all times herein mentioned was, a corporation organized and

existing under the laws of the State of California, with its principal place of business in the City of Cupertino, County of Santa Clara, State of California.

7. 7EDU is informed and believes and on that basis alleges that Defendant You is now, and at all times herein mentioned was, an individual residing in the City of Los Gatos, County of Santa Clara, State of California.

8. 7EDU is informed and believes and on that basis alleges that Defendant Qu is now, and at all times herein mentioned was, an individual residing in the City of Cupertino, County of Santa Clara, State of California.

9. 7EDU is informed and believes and on that basis alleges that Defendant Li was at all times herein mentioned an individual residing in either the City of Los Angeles, County of Los Angeles, State of California or the City of Durham, County of Durham, State of North Carolina. 7EDU is informed and believes and on that basis alleges that Defendant Li is now an individual residing in the City of Durham, County of Durham, State of North Carolina.

10. 7EDU is informed and believes and on that basis alleges that Defendant Ignision is now, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of California, with its principal place of business in the City of San Jose, County of Santa Clara, State of California. Defendant Qu is the Chief Executive Officer, Chief Financial Officer, and Secretary of Ignision. 7EDU is informed and believes and on that basis alleges that Defendant You is an officer, director, shareholder and/or employee of Ignision. 7EDU is informed and believes and on that basis alleges that Defendant Li is an employee of Ignision.

11. 7EDU is informed and believes and on that basis alleges that at all times relevant herein, the named Defendants and Does 1 through 10, inclusive, were the alter ego of each other and each of them, and that such a unity of interest and ownership existed between them that separate personalities have not in reality existed; and there would be an inequitable result if the acts and omissions at issue in this case were treated as those of any of the Defendants and Does 1 through 10 alone. 7EDU is further informed and believes that the named Defendants and Does 1 through 10 commingle funds and assets among themselves, that the named Defendants and Does 1 through 10 have identical, nearly identical or effectively identical owners, that the Defendants and Does 1 through

10 have the same offices, directors, and officers and that the Defendants and Does 1 through 10 use one another as a mere shell or conduit for the affairs of one another. In addition, 7EDU is informed and believes that each of the named Defendants and Does 1 through 10 disregard corporate formalities, shares employees and each transfers assets or properties away and/or creates or shifts liabilities so that each may be left with insufficient capital to meet the needs of each entity's business and its liabilities and without consideration to the detriment of the entity's creditors.

12. 7EDU does not know the true names and capacities of the Defendants sued herein as Does 1 through 10, inclusive, whether individual, corporate, associated, or otherwise, and therefore sues these defendants by such fictitious names. 7EDU is informed and believes and based thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the events and happenings, and caused the damages, alleged herein. 7EDU will seek leave to amend this Complaint to allege the true names and capacities of such Defendants, named herein as Does 1 through 10, when their names and capacities have been ascertained.

13. 7EDU is informed and believes and on that basis alleges that at all times herein mentioned, each of the Defendants was the actual or ostensible duly authorized agent, managing agent, servant, employee, representative, alter ego, co-conspirator, incorporator, officer, director, shareholder, member, parent, brother or sister company or corporation, predecessor and successor-in-interest of each of the remaining co-defendants, and in doing the things hereinafter alleged, was acting within the course and scope of said agency, employment and office, with the express and/or implied permission, consent, resolution, direction, authorization and ratification of the remaining co-Defendants, and each of them.

14. Each reference in this Complaint to "Defendant," "Defendants," "co-Defendants," "Defendant Companies," "Company Defendants," "all persons acting under, in concert with, or for him/her/it," or any language similar to the foregoing, or to any specifically named Defendant refers also to all Defendants, including those sued or sued and served herein under fictitious names.

## **JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

15. This Court has original jurisdiction over this action pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(c), the Lanham Act, 15 U.S.C. §1125, and the Computer Fraud and

Abuse Act, 18 U.S.C. § 1030, and supplemental jurisdiction over 7EDU's state law claims pursuant to 28 U.S.C. § 1367.

16. This Court has personal jurisdiction over the defendants, who are residents of California.

17. Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b) because plaintiff 7EDU maintains its principal place of business in this District, Defendants You and Qu reside in this District and Defendant Ignision maintains its principal place of business in this District. Additionally, venue properly lies in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District. The agreements at issue in this complaint were also made and entered into in this District, was to be performed in this District, and the effects of the other conduct alleged herein were suffered by 7EDU in this District.

18. Pursuant to Northern District of California Local Rules 3-2 and 3-5 and General Order No. 44, this matter is to be assigned on a district-wide basis because it involved the misappropriation of intellectual property. The action arose in Cupertino, which is in Santa Clara County, and would therefore be assigned to the San Jose Division if not subject to district-wide assignment.

## GENERAL ALLEGATIONS

### I. BACKGROUND

19. 7EDU is a high-end education consulting and tutoring business based in Silicon Valley that helps students and their parents navigate the increasingly competitive college admissions process. 7EDU offers a personalized, premium service through which its counselors manage all aspects of the college preparatory journey, from curating students' extracurricular activities to helping them land summer internships, craft essays, and providing personalized tutoring for their courses with the goal of getting students into top colleges and universities. 7EDU provides online and on-site courses and services for college-bound students, including college counseling and application assistance, test prep (e.g., SAT, ACT, and AP exams), enrichment courses, independent study, after school programs, summer camp, and winter camp.

20. 7EDU has invested years of time and hundreds of thousands of dollars developing confidential and proprietary information, including trade secrets, that give it an advantage in the

marketplace. 7EDU takes extensive measures to keep this confidential and proprietary information secret and out of the hands of anyone (including its former employees) that should not have it. Despite this, 7EDU has learned that during their employment with 7EDU and without 7EDU's permission, Defendant You (7EDU's former Chief Operating Officer and Marketing & Sales Director), Defendant Qu (a former English Instructor at 7EDU), and Defendant Li (a former student mentor at 7EDU) downloaded hundreds of 7EDU's documents containing confidential and proprietary information, conspired to divert prospective client leads away from 7EDU, and viewed a large volume of highly valuable proprietary information during their last days at 7EDU (and, on information and belief, copied this information onto personal devices or storage media), and are now working for a newly-formed direct competitor, Defendant Ignision. Among the materials that Defendants You, Qu, and Li took are trade secret documents related to 7EDU's competitive strategy, customer contract and detailed counseling information, pricing, course materials design documents, and other information that provides 7EDU with an advantage against competitors such as Defendant Ignision.

21. At the time of Defendant You's termination on December 7, 2023, she was 7EDU's Marketing & Sales Director, having been demoted from the role of Chief Operating Officer (COO) in August, 2023 due to poor performance. Leading up to her departure, Defendant You used her position as marketing director to secretly divert all of 7EDU's social media marketing leads to Defendant Li, instead of splitting them between Li and two other employees responsible for sales. Defendant You did not respond to questions from one of the impacted sales employees about why their leads had reduced significantly. In addition, starting in mid-2023, Defendant You failed to update the documents 7EDU uses to plan and monitor student progress for eight of the students she was counseling. Despite promising to update these critical documents multiple times, Defendant You never updated them prior to her departure. However, in the days leading up to her departure, Defendant You opened and viewed nearly 100 files from 7EDU's password-protected Google Drive, including the files she was supposed to update. Defendant You then "wiped" her 7EDU-issued computer and phone before returning them to 7EDU. On information and belief, Defendant You deleted data from 7EDU devices in order to hide evidence of her misconduct.

22. Defendant Li resigned her employment with 7EDU on December 13, 2023, less than a

week after Defendant You's resignation. Because Defendant You had ensured that, starting in mid-July, 2023, all marketing leads from social media channels would be delivered exclusively to Defendant Li, it was particularly important for Defendant Li to return her work devices with all data intact, particularly WeChat history. The majority of 7EDU's prospective clients communicated with 7EDU through WeChat. Defendant Li had been issued a 7EDU-controlled WeChat account to communicate with prospective clients. But due to WeChat's design, the history of her communications was stored only locally, on her device. Like Defendant You, Defendant Li completely wiped her work laptop and phone before returning them, making it impossible for 7EDU to see or follow up on the previous six months of marketing leads. Upon information and belief, Defendant Li took this marketing lead information prior to her resignation to help build Ignision's business, then wiped her 7EDU phone to hide evidence of her misconduct.

23. Defendant Qu resigned her employment with 7EDU on December 14, 2023. Leading up to her departure, Defendant Qu downloaded over 800 files from 7EDU's password-protected Google Drive. Most of these downloads were completed on the last two days before her resignation, late at night. Most of these files were selected and downloaded all at once, showing that Defendant Qu's goal was simply to take the files.

24. 7EDU is informed and believes, and thereon alleges that Defendants You, Qu, and Li now work for Defendant Ignision. On December 15, 2023, Defendant Qu filed Articles of Incorporation for Defendant Ignision. Defendant Qu is the Chief Executive Officer, Chief Financial Officer, and Secretary of Defendant Ignision.

## II. 7EDU's CONFIDENTIAL AND TRADE SECRET INFORMATION

### A. 7EDU has developed numerous trade secrets and maintains other valuable confidential information.

25. 7EDU has not only invested significant resources in developing its course materials; it has spent ten years and hundreds of thousands of dollars, and dedicated marketing and operations personnel to develop trade secret and confidential information regarding 7EDU's marketing strategy, client preferences, client contracts, pricing, and other competitively valuable information.

26. One document that exemplifies this 7EDU's proprietary information is the "7EDU

Console" spreadsheet document that 7EDU creates for each student it counsels. 7EDU uses these spreadsheets to organize every element of preparing for admission to an elite college or university, including:

a. detailed plans for every week of the summer break;

b. a "Timeline" tab, broken down by semester from the time the student starts working with 7EDU, with a summary of plans for extracurricular activities, academic courses, travel, and other development opportunities including independent projects that 7EDU advises students in selecting and completing, plus notes by 7EDU staff about counseling, advice, skills development, growth areas, and client concerns and preferences;

c. contact information for student and parent (legal name, preferred name, email, graduation year, mailing address, place of birth, current school);

d. a "counselor dashboard" for 7EDU staff to keep detailed notes on the student's progress in all of the areas mentioned in the Timeline plan (Academics, Community Involvement, Competition, Intellectual Curiosity, Experiential Learning, Special Talents, Holiday Plan), plus details about all the courses the student is taking;

e. an "admissions" tab to track details of a student's applications to colleges and universities, with a summary of their grades on different standardized tests, their GPA, sports, volunteering, and their strengths and weaknesses;

f. a "student dashboard" page for student updates on the categories outlined above;

g. "Counselor Dashboard" page for more-detailed notes on all of the categories outlined above;

h. an "Event Dashboard," listing all 7EDU-sponsored classes the student should attend

i. a "Resume" page to collect information to help build the student's resume.

The 7EDU Console also gathers links to many key documents like test results, student report cards, draft essays and other works in progress. The structure of the 7EDU Console document as well as the

individualized information in each 7EDU student's Console reflect 7EDU's years of experience in providing college admissions and educational counseling. These documents, and documents like these, contain confidential and highly valuable information that enables 7EDU to provide excellent, personalized service to its clients.

27. 7EDU has also invested significantly in developing its own educational and training materials. 7EDU has a large and growing set of classes including tutoring in core subjects like Critical Reading and Writing from elementary to high school levels, as well as targeted trainings on test strategy, resume writing, and more. In addition to the presentation materials used in teaching these classes, 7EDU maintains documents that set out the structure, teaching methodology, course goals, and assessment criteria for these classes at different levels. One document that exemplifies this type of proprietary information is titled "Critical Reading and Writing Series Stage Plan Fall 2021-Spring 2022," 7EDU created a detailed template for designing its Critical Reading and Writing Series classes. The document contains tables for the course at six grade levels, specifying in detail (by week): a focus genre of writing, with detailed specifications for content to be covered, skills to be developed, and the correct assessment tool to gauge progress. This document reflects 7EDU's years of expertise in developing highly effective courses. This document, and documents like it, are valuable to 7EDU because it helps 7EDU develop consistent, high-quality courses very efficiently.

28. 7EDU has also invested significantly in developing the design, marketing, and pricing of its services. One document that exemplifies this type of proprietary information is a spreadsheet titled "【不对外】2023-2024 Promotion Courses and Programs 【星标】". This spreadsheet shows 7EDU's strategic business plan for the year, including the schedule for all classes and events, specific features and benefits for different subscription levels, pricing strategy (including discounts), and details such as the minimum number of students required. Another example of 7EDU's investment in strategic planning and business development is a document titled "NEW MKT/sales/product propsal (sic)". This spreadsheet summarizes revenues from different elements of 7EDU's services, broken down by month, over the years 2022-2023, and projects revenues for new and recurring business for different types of services for 2024, with plans and action items to achieve this growth. These documents, and others like them, are valuable to 7EDU because they reflect details

of its confidential, competitive strategy and plans for business growth.

29. Another example of 7EDU's investment in its business is its development of sales leads through social media marketing. 7EDU promotes marketing material with QR codes that bring prospective clients to an information form where they can share personal information with 7EDU. A 7EDU sales employee will then follow up with these potential client leads with the goal of converting them to paying clients. Sales employees are paid by commission for this business development. Prospective client leads are a very valuable and confidential asset that 7EDU invests to develop.

30. 7EDU derives significant advantage from the confidential and trade secret information described in detail in the paragraphs above. This information allows 7EDU to anticipate the needs of its current and potential clients, understand the current capabilities and likely future needs of clients, efficiently time and target its marketing efforts, develop industry-leading educational materials for clients, and grow its client base, referral network, and revenue. In short, the information at issue in this case is critical to 7EDU's ability to successfully compete in the marketplace.

31. A competitor's or other third party's use of these trade secrets would result in irreparable harm to 7EDU by, for example, exposing its core business strategies, and providing competitors with clear insight into the needs, key contacts, rates, contract terms, and preferences of 7EDU's clients. 7EDU's competitors could use this information to compete with 7EDU for business without having to invest the time, effort, and resources that 7EDU poured into developing this information. As a company that charges its clients for its experience and expertise, which are reflected in its course materials, the disclosure of such material would not only destroy the sales advantages that 7EDU has devoted such significant resources to building, it could also severely damage 7EDU's relationships with its clients.

**B. 7EDU takes efforts to protect its confidential and trade secret information.**

32. 7EDU takes the protection of its confidential and trade secret information very seriously, and expends a considerable amount of time and money to keep its information secure. At all relevant times, 7EDU has taken extensive and reasonable steps to protect the confidentiality of its trade secrets and other proprietary information. These steps include:

a. Dual-factor authentication for any remote access to 7EDU systems or databases;

b. Email and messaging vaults and account recovery;

c. Data insight scanning and reporting;

d. Workspace audit logs;

e. On-site security at 7EDU's office;

f. Maintaining and disseminating a policy regarding the Company's confidential and trade secret information; and

g. Maintaining and disseminating a policy which outlines Company policy and guidelines with respect to the use and protection of electronic resources.

33. As a further safeguard for its confidential and trade secret information, 7EDU requires its employees to contractually agree to protect the company's intellectual property through their employment contracts and proprietary information and invention assignment agreements.

34. To that end, on October 21, 2020, Defendant You executed an Employment Contract ("You Employment Contract") and on October 22, 2020, Defendant You executed an Employee Proprietary Information and Invention Assignment Agreement ("You PIIA"). A copy of the You Employment Contract is attached as **Exhibit A**. A copy of the You PIIA is attached as **Exhibit B**.

35. Among other things, the You Employment Contract provides that during the time of her employment, Defendant You

> "agree[s] to not engage in any employment, business, or activity that is in any competitive with the business or proposed business of [7EDU]. [Defendant You] shall disclose to [7EDU] in writing any other gainful employment, business, or activity that he or she is currently associated with or participating in that competes with [7EDU]. [Defendant You] shall not assist any other person or organization in competing with [7EDU] or in preparing to engage in competition with the business or prospective business(es) of [7EDU]."

Exhibit. A, Section 17.

36. Additionally, in the You Employment Contract, Defendant You agreed "to keep all Confidential Information[1] absolutely confidential and protect its release from the public," "not to divulge, reveal, report or use, for any purpose, any of the Confidential Information which [Defendant You] has obtained or which was disclosed to [Defendant You] as a result of [Defendant You's]

[1] "Confidential Information" is defined in the You Employment Contract as "information which is confidential to [7EDU]." Exhibit A, Section 18.

employment by [7EDU]," and "that any disclosure of the Confidential Information to a third party cannot be reasonably or adequately compensated for in money damages, would cause irreparable injury to [Defendant You], would gravely affect the effective and successful conduct of [7EDU's] business and goodwill and would be a material breach of this Agreement." Exhibit A, Section 21-22. The You Employment Contract also required Defendant You to follow 7EDU's policies and procedures, including 7EDU's Handbook. *See* Exhibit A, Section B.

37. Similarly, in the You PIIA, Defendant You agreed that during her employment, and at all times thereafter, she would "hold the Proprietary Information[2] in strict confidence and […] not use, reproduce, disclose or deliver, directly or indirectly, any Proprietary Information except to the extent necessary to perform [her] duties." Exhibit B, Section 3.

38. Defendant You also agreed in the You PIIA that she would not,

> "following the termination of [her] employment with the Company for any reason, use the Company's Proprietary Information or trade secrets or any other means that would amount to unfair competition to solicit any of the Company's customers, clients, vendors, business partners, or suppliers, or otherwise interfere with any business relationship or contract between the Company and any of its customers, clients, vendors, business partners, or suppliers."

Exhibit B, Section 3(d)(ii).

39. In the You PIIA, Defendant You further agreed "to promptly return all property of the Company," to "not retain any written or other tangible material containing any Proprietary Information or information pertaining to any Company Invention," and that during her employment she had a "duty of loyalty to the Company," that she would "not engage in any activity that is in any way detrimental to the Company's business or demonstrably anticipated business of the Company." Exhibit B, Section 9-10.

40. In Section 11 of the You PIIA, Defendant You agreed that "any breach by [her] of this Agreement would cause irreparable injury to the Company for which pecuniary compensation would not afford adequate relief and for which it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief to the Company." Therefore, she agreed "that if

---

[2] "Proprietary Information" is defined in the You PIIA as "any and all information and materials […] pertaining in any manner to the business of or used by the Company and its affiliates, or pertaining in any manner to any person or entity to whom the Company owes a duty of confidentiality." Exhibit B, Section 2(a).

[she] breach[ed] any provision of this Agreement, the Company shall be entitled to injunctive or other equitable relief to remedy any breach or prevent any threatened breach of this Agreement, without necessity of posting bond or other security or proving it has sustained any damage." Exhibit B, Section 11.

41. Similarly, Defendant Li signed an employment contract on May 3, 2023 (the "Li Employment Contract"), containing the same provisions as the You Employment Contract. A copy of the Li Employment Contract is attached as **Exhibit C**. Defendant Li also signed a Proprietary Information and Invention Assignment Agreement on May 3, 2023 (the "Li PIIA"), containing the same provisions as the You PIIA. A copy of the Li PIIA is attached as **Exhibit D**.

42. As set forth above, 7EDU also maintained and disseminated a policy regarding the Company's confidential and trade secret information, as well as a policy which outlines Company policy and guidelines with respect to the use and protection of electronic resources.

43. Accordingly, Defendants You, Qu, and Li were required to keep 7EDU's confidential and trade secret information confidential pursuant to 7EDU's policies, as well as applicable law.

## III. DEFENDANTS YOU, QU, and LI'S EMPLOYMENT AND RESIGNATIONS

44. Defendants You, Qu, and Li were trusted 7EDU employees.

45. Defendant You began her employment with 7EDU as Learning and Development Director on October 26, 2020. She was promoted to Sales & Marketing Lead on August 2, 2022, and promoted again to Chief Operating Officer on June 1, 2023. Due to performance problems beginning shortly after this promotion, she was demoted to her previous position of Marketing & Sales Director on August 21, 2023. On December 4, 2023, Defendant You resigned her employment with 7EDU, and her employment terminated on December 7, 2023. During her time at 7EDU and owing to her high-level positions, Defendant You had been given a significant amount of trust, including access to many of 7EDU's most valuable trade secrets and other confidential information.

46. Defendant Li began her employment with 7EDU as a Student Mentor on or around May 3, 2023. On December 13, 2023, Defendant Li resigned her employment with 7EDU, and her employment terminated on December 13, 2023. At the time of her resignation, as appropriate for her job responsibilities, Defendant Li had been given access to some of 7EDU's most valuable trade

secrets and other confidential information.

47. Defendant Qu began her employment with 7EDU as an English Instructor on September 11, 2019. On December 14, 2023, Defendant Qu resigned her employment with 7EDU, and her employment terminated the same day. At the time of her resignation, as appropriate for her job responsibilities and her tenure with 7EDU, Defendant Qu had been given a significant amount of trust, including access to some of 7EDU's most valuable trade secrets and other confidential information.

48. As part of its extensive efforts to protect its trade secret and confidential information, 7EDU disables access to its systems and databases upon termination. Thus, Defendant You's access to 7EDU's systems was terminated on December 7, 2023, Defendant Li's access to 7EDU's systems was terminated on December 13, 2023, and Defendants Qu's access to 7EDU's systems was terminated on December 14, 2023.

## IV. DEFENDANTS' MISCONDUCT

### A. Defendants have stolen and misappropriated 7EDU's confidential and trade Secret information.

49. As a further part of 7EDU's commitment to protecting its intellectual property, 7EDU conducts forensic investigations of its systems following the departure of employees with access to sensitive information.

50. Upon conducting such an investigation regarding Defendants You, Qu, and Li, 7EDU discovered that Defendants You and Qu had accessed 7EDU's secure Google Drive, which is a cloud-based storage system/database wherein virtually all of 7EDU's business files have been compiled and stored. Computer forensics show that Defendant You opened and viewed nearly 100 files containing 7EDU's most valuable, confidential, and trade secret information in the week before resigning her employment with the Company. Defendant You spent significantly more time opening and viewing documents during the days leading up to her resignation than she had during the preceding months. The documents that Defendant You repeatedly opened and viewed during this time included a document showing 7EDU's employee compensation. Defendant You also viewed the 7EDU Console documents for students she was counseling, but did not update them with information as she had been asked to do, in writing, multiple times. Defendant You also opened and viewed the spreadsheets titled

“【不对外】2023-2024 Promotion Courses and Programs 【星标】” and “NEW MKT/sales/product propsal (sic)” multiple times during the days before her resignation. Defendant You had no valid business reason to be opening and viewing these documents, which related to 7EDU’s future, strategic business plans, when she was about to leave 7EDU’s employment. Upon information and belief, Defendant You used her personal computer to view these files so that she could copy key information from the files and use them after her employment with 7EDU terminated.

51. Defendant You’s viewing activity was inconsistent with any of her prior work as a 7EDU employee or use of 7EDU’s systems. Importantly, she accessed 7EDU’s key marketing and sales documents on her last day of employment instead of completing client account transfers as she had promised to do.

52. Although Defendant You promised to return her 7EDU devices in their original condition, Defendant You also deleted the data from her 7EDU laptop and cleared the data from the applications on her 7EDU phone before returning these devices to 7EDU. Upon information and belief, Defendant You deleted the data on the 7EDU devices to conceal her downloading and/or copying of 7EDU’s confidential and trade secret information, as well as her solicitation of 7EDU students/parents and employees using 7EDU’s confidential and trade secret information.

53. Similarly, Defendant Li deleted the data from her 7EDU phone before returning these devices to 7EDU. Upon information and belief, Defendant Li deleted the data on her 7EDU phone to conceal her misappropriation of 7EDU sales leads, and solicitation of 7EDU students, parents and employees using 7EDU’s confidential and trade secret information.

54. Computer forensics also show that Defendant Qu downloaded hundreds of files containing 7EDU’s confidential and trade secret information immediately prior to resigning her employment with 7EDU. In the days leading up to her departure, Defendant Qu downloaded over 800 files from 7EDU’s password-protected Google Drive. Most of these downloads were completed as mass downloads late at night on her last two days of employment with 7EDU (before she had even told 7EDU that she would be resigning). Defendant Qu selected and downloaded these files all at the same time, showing that Defendant Qu’s goal was simply to take the files so that they could be used by Defendants.

55. Defendant Qu's mass-downloading activity was inconsistent with any of her prior work as a 7EDU employee; during her entire four years at 7EDU, she had never previously downloaded anywhere near that many files in a single day. Upon information and belief, Defendant Qu used her personal computer for these downloads so that she could keep the files and use them after her employment with 7EDU terminated.

56. As described in detail above, Defendants You and Li conspired to divert all marketing leads from social media channels exclusively to Defendant Li, when they should have been split evenly between Li and two other sales team members. Li then deleted all information about these leads when she abruptly resigned and wiped her 7EDU-issued phone and laptop before returning them. Upon information and belief, Defendant Li took these leads with her to help start Ignision's business.

57. Defendants You and Qu also took documents containing 7EDU's client information. For example, Defendant You viewed multiple 7EDU Console documents on her last few days at work while she was neglecting important transition tasks including updating those very documents. Likewise, Defendant Qu downloaded documents containing detailed reviews and feedback for students in different 7EDU courses. As described in more detail above, these documents include client contracts as well as information on services provided to clients, information on the needs and progress of the clients, pricing, renewal dates and terms, contact information, long-term relationship histories, notes from interactions with 7EDU personnel, client concerns and complaints, the progress of each client, and a panoply of additional data that describe the exact relationship between 7EDU and its clients. This information is valuable because its secrecy prevents competitors from engaging in surgically targeted marketing to 7EDU's clients. For example, if a competitor has access to 7EDU's client contracts, it would know exactly whom to contact, the most advantageous time and way to pitch 7EDU's clients, what programs and services the clients need or would be interested in, how to price its programs and services to efficiently undercut 7EDU, and how to seamlessly "pick up where 7EDU left off" in the client's counseling journey.

58. Defendant Qu also took 7EDU's course materials, including wholesale copying of its curriculum information. For example, Defendant Qu downloaded the "Critical Reading and Writing Series Stage Plan Fall 2021-Spring 2022" document described in Paragraph 27, above. As described

in more detail above, these documents are critical to 7EDU because they provide the blueprints for creating copycat courses. A competitor could use these materials to mimic 7EDU's courses.

59. Defendants You and Qu also took documents containing employee information. These documents include employee contact information and employee compensation information. This information is valuable because its secrecy prevents competitors from engaging in surgically targeted solicitation of 7EDU's employees. For example, if a competitor has access to 7EDU's employee information, it would know exactly whom to contact, the most advantageous time and way to solicit 7EDU's employees, and how much compensation to offer 7EDU's employees to efficiently lure them to a competitor.

60. Upon information and belief, Defendant Li also used 7EDU's confidential and trade secret information to solicit 7EDU students and parents, and deleted the evidence of such misconduct from her 7EDU phone.

61. Defendants You, Qu, and Li's theft of 7EDU's confidential and trade secret information is particularly concerning because they had been planning for months to leave 7EDU to start a direct competitor, Defendant Ignision. Upon information and belief, Defendant You, Qu, and Li engaged in these unlawful activities within the scope of their employment with Defendant Ignision. Defendant Ignision offers college admissions counseling and tutoring, in direct competition to 7EDU. 7EDU and Defendant Ignision compete in the same market: college admissions counseling and tutoring. The companies also compete for customers in the same geographic area – the San Francisco Bay Area, and in particular, Silicon Valley.

62. Upon information and belief, Defendants You, Qu, and Li knew not only that they were going to start working for a competing business, Defendant Ignision, but that they knew they were bringing Defendant Ignision stolen information to help it compete against 7EDU. Upon information and belief, Defendant You, Qu and Li began preparing to steal 7EDU's confidential and trade secret information to use for their competing business well before they resigned, at least as early as mid-2023.

63. On December 4, 2023, Defendant You informed 7EDU's CEO, Jun Liu, that she had decided to leave 7EDU for another opportunity. Defendant You agreed to help transition her clients to

another 7EDU employee, and promised to try her best to minimize any kind of damage to 7EDU. Defendant You told Jun Liu, CEO of 7EDU, that she would support the transition of her clients to make sure that the students were not affected. Defendant You agreed to let 7EDU inform its students of Defendant You's resignation. Defendant You's promises were false, and were intended to hide her plans from 7EDU.

64. On December 5, 2023, the day after she announced her resignation and before 7EDU could inform its clients of Defendant You's plans, Defendant You emailed 7EDU's clients without informing 7EDU, announcing her departure and encouraging them to contact her at her personal email. This caused concern among some of 7EDU's clients. The following day, Defendant Qu approached 7EDU's CEO, offering to take over the clients that Defendant You had serviced on behalf of 7EDU. 7EDU, unaware of Defendant Qu's plan to resign days later, began transitioning Defendant You's students to Defendant Qu. It is now clear that Defendant Qu requested to take over these client accounts in collaboration with Defendant You, so that they could try to bring these clients over to Defendant Ignision.

65. On December 6, 2023, Jun Liu and 7EDU's co-founder, Yan Liu, met with Defendant You regarding the transition, and 7EDU's Department Manager, Wanting Chen, sent Defendant You a transition document to work on. Ms. Chen repeated a request that she had previously made in August, 2023, for Defendant You to update her counseling notes in the 7EDU Console and related documents for the students she was counseling. However, by the end of the day, Defendant You had made little progress on these tasks, and 7EDU deactivated Defendant You's work accounts. When Defendant You claimed that she couldn't complete the transition document because she no longer had access to her Google Drive, 7EDU instructed her to complete the document from memory, and later that day, 7EDU terminated her employment.

66. A few days after 7EDU transitioned Defendant You's students to Defendant Qu as Ms. Qu had requested, Ms. Qu announced her resignation directly to 7EDU's clients in an email – before she had informed 7EDU about her plans to leave. Defendant Li resigned the following day. Defendants Li and Qu's sudden resignations caused further disruption to 7EDU's clients.

67. Soon after resigning their employment with 7EDU, Defendants You, Qu, and Li

contacted 7EDU's clients to tell them that they had started working for a new company, Defendant Ignision.

68. Soon after resigning their employment with 7EDU, Defendants You, Qu, and Li used 7EDU's confidential information to solicit 7EDU clients to terminate their agreements with 7EDU and to sign up with Defendant Ignision. For example, Defendant Qu used 7EDU's confidential information to reach out to at least one 7EDU client and told them that she wanted to continue tutoring them through her personal Zoom. 7EDU has lost contracts with eight clients as a result of the Defendants' actions.

69. In addition, soon after resigning their employment with 7EDU, Defendants You and Qu used 7EDU's confidential information to solicit 7EDU contractors to work with Ignision. For example, on information and belief, 7EDU solicited these contractors using detailed, proprietary information regarding compensation for 7EDU's workforce that Defendant You opened and viewed shortly before resigning in order to offer slightly higher rates to entice the contractors to agree to work with Ignision.

**B. Defendant You misdirected 7EDU payments to her personal bank account.**

70. 7EDU has discovered that while she was employed at 7EDU, Defendant You secretly misdirected payments owed to 7EDU through a contract with a partner organization to her personal bank account. Defendant You instructed the partner to pay her directly using a payment service, and then instructed a 7EDU employee to mark the invoices that had been issued to the partner as paid. These payments included, without limitation, a payment in the amount of $2,045.78 on September 12, 2023, a payment in the amount of $2,045.78 on September 27, 2023, and a payment in the amount of $4,091.55 on November 17, 2023. Defendant You did not inform 7EDU about these diverted payments, and did not transfer the funds to 7EDU. 7EDU only learned about this when the partner wanted to renew its contract and asked how they should pay given that Ms. You no longer worked at 7EDU. The partner shared detailed records showing that the payments were made directly to the partner by Defendant You.

**C. Defendant You has sabotaged 7EDU's social media account.**

71. In the course of her employment with 7EDU, Defendant You had access to 7EDU's

social media and marketing platform accounts. Defendant You sabotaged 7EDU's RED social marketing platform handle by irreversibly changing the name of the account to her own handle (yayou0615), making the account worthless for 7EDU marketing. This account had 1,545 followers when Defendant You changed the name. 7EDU quickly created a new account, but it only has 172 followers to date. As a result of Defendant You's actions, 7EDU has lost significant sales that it had previously generated from its RED account.

**D. Defendant Ignision is making false and/or misleading representations on its website.**

72. Defendant Ignision is making false and/or misleading representations on its website (https://ignision.education), including the following:

a. that Ignision's students have a 97% acceptance rate to colleges;

b. that Ignision's students have received 500+ top university offers;

c. that Ignision has supported 1000+ students; and

d. that Ignision's students have received offers of admission from Johns Hopkins University, Massachusetts Institute of Technology, University of Pennsylvania, University of California, Berkeley, Columbia University, Stanford University, Yale University, Cornell University, Swarthmore College, Brown University, and Harvard University.

Defendant Ignision's representations are false. It is not possible for these representations to be true, as Ignision was only formed on December 15, 2023. The above representations by Defendant Ignision were copied from 7EDU's website.

**E. Defendants ignored 7EDU's request that they stop using 7EDU's confidential and trade secret information.**

73. After their resignations, 7EDU sent Defendants You, Li, and Qu emails reminding them that student contact and other information were 7EDU's intellectual property, and that contacting 7EDU students using such information would breach her proprietary information agreement. 7EDU received no response from Defendants You and Li, and an email from Defendant Qu denying that she had any obligation to keep 7EDU's intellectual property confidential.

74. On December 28, 2023, 7EDU sent Defendant You a cease and desist letter, demanding that Defendant You cease using and disclosing 7EDU's confidential and trade secret information, and return 7EDU's information. A copy of the letter is attached as **Exhibit E.** 7EDU received a response from Defendant You's counsel on January 6, 2024, requesting a two-week extension to respond. 7EDU's counsel responded on January 11, 2024, requesting an immediate response, but to date, 7EDU has not received any substantive response. A copy of the email correspondence with Defendant You's counsel is attached as **Exhibit F**.

75. On March 8, 2024, 7EDU sent Defendants Qu, Li, and Ignision a cease and desist letter, demanding that Defendants return all stolen trade secrets and/or remove them from their devices, requesting that Defendants provide sworn attestations of their compliance, and asking Defendants to provide it with access to their email accounts and devices to confirm that they did not retain the trade secrets they stole. A copy of the letter is attached as **Exhibit G.** The Defendants never responded to this letter.

## FIRST CAUSE OF ACTION

**(Trade Secret Misappropriation Under the Defend Trade Secrets Act (18 U.S.C. §1836 et seq.) Against Defendants You, Qu, Li and Ignision and Does 1 through 10)**

76. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

77. 7EDU owns and possesses trade secret information as set forth above, including documents containing confidential and proprietary information that is valuable specifically because it is not known to the public.

78. 7EDU will not disclose its trade secrets in a public filing, and Defendants You, Qu, Li, and Ignision's exfiltration was so extensive that every category of trade secret information cannot be identified at this point in 7EDU's investigation. Nonetheless, 7EDU is aware of at least the following categories of trade secret information misappropriated by Defendants You, Qu, Li, and Ignision (and described in greater detail above):

a. pricing information;

b. client service details;

c. client contracts and related information;

d. client informational repositories;

e. business development and strategy documents; and

f. instructional and counseling materials.

79. These trade secrets were created by 7EDU at significant expense and developed over the course of many years.

80. 7EDU's trade secret information is highly valuable, and 7EDU will suffer irreparable harm from the use and disclosure of its information, including loss of business and loss of competitive advantage.

81. 7EDU has taken reasonable steps to protect the secrecy of its trade secrets, including those listed above.

82. Upon information and belief, Defendant You misappropriated 7EDU's trade secret information by viewing and copying 7EDU's employee compensation information, detailed client counseling, business strategy, and revenue information in preparation for her resignation from 7EDU and retaining those files after her employment terminated, then deleting data on her 7EDU phone and laptop to hide her misconduct. Defendant You also misappropriated 7EDU's trade secret information by using 7EDU's confidential and trade secret information to solicit 7EDU students, parents, and contractors on behalf of Defendant Ignision.

83. Defendant Qu misappropriated 7EDU's trade secret information by downloading over 800 files in preparation for her resignation from 7EDU, retaining those files after her employment terminated, and using 7EDU's confidential and trade secret information to develop Ignision's course offerings with minimal expense and effort by using 7EDU's proprietary information as a starting point, and soliciting 7EDU's clients on behalf of Defendant Ignision.

84. Defendant Li misappropriated 7EDU's trade secret information by using 7EDU's confidential and trade secret information to solicit prospective and existing 7EDU clients on behalf of Defendant Ignision, then deleting data on her 7EDU phone to hide her misconduct.

85. Defendants You, Qu, Li, and Ignision had no legitimate business reason to take those documents or to use the information as alleged here.

86. On information and belief, unless they are enjoined from doing so, Defendants You,

Qu, Li, and Ignision will continue to misappropriate, disclose, and use 7EDU's trade secrets for their benefit and to 7EDU's detriment. On information and belief, Defendant Ignision is aware that Defendants You, Qu, and Li are using 7EDU's trade secrets for the benefit of Defendant Ignision, and to the detriment of 7EDU, and Defendant Ignision will continue to use 7EDU's trade secrets unless it is enjoined from doing so.

87. Because 7EDU's remedy at law is inadequate and it will suffer irreparable harm, 7EDU seeks—in addition to damages—a preliminary injunction and a permanent injunction to protect its confidential and trade secret information and legitimate business interests. 7EDU will continue to suffer irreparable harm absent injunctive relief.

88. Defendants' misappropriation of 7EDU's trade secret information has caused and will continue to cause 7EDU substantial injury, including but not limited to actual damages, lost profits, harm to its reputation, and the diminution in value of its trade secrets.

89. Upon information and belief, Defendants have also been unjustly enriched by their misappropriation of 7EDU's trade secrets which, as described above, are worth millions of dollars.

90. Defendants' misappropriation of 7EDU's trade secrets is willful and malicious within the meaning of 18 U.S.C. § 1836(b)(3)(C). Defendants misappropriated 7EDU's trade secrets intentionally and knowingly and with a deliberate intent to benefit themselves and to injury 7EDU, against whom Defendant Ignision is now competing.

91. Defendants and Does 1 through 10, and each of them, knew of Defendants' conduct, actually knew or had reason to know that Defendants' possession and use of 7EDU's trade secret and confidential information was derived through improper means, and facilitated or benefited from the misappropriation and misuse. Defendants and Does 1 through 10 acted in concert with Defendants, knowingly encouraging and participating in the wrongful conduct, and receiving, misappropriating, and acting as a repository for the trade secret materials misappropriated by Defendants. Defendants and Does 1 through 10 took advantage of and profited from Defendants' improper conduct as alleged herein.

92. 7EDU is entitled to damages in an amount to be determined at trial, as well as injunctive relief, and an awarded of exemplary damages and attorney fees pursuant to 18 U.S.C.

Section 1836(b)(3).

**SECOND CAUSE OF ACTION**

**(Trade Secret Misappropriation Under Cal. Civ. Code §3426**

**Against Defendants You, Qu, Li and Ignision and Does 1 through 10)**

93. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

94. 7EDU owns and possesses trade secret information as set forth above, including documents containing confidential and proprietary information that is valuable specifically because it is not known to the public.

95. 7EDU will not disclose its trade secrets in a public filing, and Defendants You, Qu, Li, and Ignision's exfiltration was so extensive that every category of trade secret information cannot be identified at this point in 7EDU's investigation. Nonetheless, 7EDU is aware of at least the following categories of trade secret information misappropriated by Defendants You, Qu, Li, and Ignision (and described in greater detail above):

a. pricing information;

b. client service details;

c. client contracts and related information;

d. client informational repositories;

e. business development and strategy documents; and

f. instructional and counseling materials.

96. These trade secrets were created by 7EDU at significant expense and developed over the course of many years.

97. 7EDU's trade secret information is highly valuable, and 7EDU will suffer irreparable harm from the use and disclosure of its information, including loss of business and loss of competitive advantage.

98. 7EDU has taken reasonable steps to protect the secrecy of its trade secrets, including those listed above.

99. Upon information and belief, Defendant You misappropriated 7EDU's trade secret information by viewing and copying 7EDU's employee compensation information, detailed client

counseling, business strategy, and revenue information in preparation for her resignation from 7EDU and retaining those files after her employment terminated, then deleting data on her 7EDU phone and laptop to hide her misconduct. Defendant You also misappropriated 7EDU's trade secret information by using 7EDU's confidential and trade secret information to solicit 7EDU students, parents, and contractors on behalf of Defendant Ignision.

100. Defendant Qu misappropriated 7EDU's trade secret information by downloading over 800 files in preparation for her resignation from 7EDU, retaining those files after her employment terminated, and using 7EDU's confidential and trade secret information to develop Ignision's course offerings with minimal expense and effort by using 7EDU's proprietary information as a starting point, and soliciting 7EDU's clients on behalf of Defendant Ignision.

101. Defendant Li misappropriated 7EDU's trade secret information by using 7EDU's confidential and trade secret information to solicit prospective and existing 7EDU clients on behalf of Defendant Ignision, then deleting data on her 7EDU phone to hide her misconduct.

102. Defendants You, Qu, Li, and Ignision had no legitimate business reason to take those documents or to use the information as alleged here.

103. On information and belief, unless they are enjoined from doing so, Defendants You, Qu, Li, and Ignision will continue to misappropriate, disclose, and use 7EDU's trade secrets for their benefit and to 7EDU's detriment. On information and belief, Defendant Ignision is aware that Defendants You, Qu, and Li are using 7EDU's trade secrets for the benefit of Defendant Ignision, and to the detriment of 7EDU, and Defendant Ignision will continue to use 7EDU's trade secrets unless it is enjoined from doing so.

104. Because 7EDU's remedy at law is inadequate and it will suffer irreparable harm, 7EDU seeks—in addition to damages—a preliminary injunction and a permanent injunction to protect its confidential and trade secret information and legitimate business interests. 7EDU will continue to suffer irreparable harm absent injunctive relief.

105. Defendants' misappropriation of 7EDU's trade secret information has caused and will continue to cause 7EDU substantial injury, including but not limited to actual damages, lost profits, harm to its reputation, and the diminution in value of its trade secrets.

106. Upon information and belief, Defendants have also been unjustly enriched by their misappropriation of 7EDU's trade secrets which, as described above, are worth millions of dollars.

107. Defendants' misappropriation of 7EDU's trade secrets is willful and malicious within the meaning of 18 U.S.C. § 1836(b)(3)(C). Defendants misappropriated 7EDU's trade secrets intentionally and knowingly and with a deliberate intent to benefit themselves and to injury 7EDU, against whom Defendant Ignision is now competing.

108. Defendants and Does 1 through 10, and each of them, knew of Defendants' conduct, actually knew or had reason to know that Defendants' possession and use of 7EDU's trade secret and confidential information was derived through improper means, and facilitated or benefited from the misappropriation and misuse. Defendants and Does 1 through 10 acted in concert with Defendants, knowingly encouraging and participating in the wrongful conduct, and receiving, misappropriating, and acting as a repository for the trade secret materials misappropriated by Defendants. Defendants and Does 1 through 10 took advantage of and profited from Defendants' improper conduct as alleged herein.

109. 7EDU is entitled to damages in an amount to be determined at trial, as well as injunctive relief, and an awarded of exemplary damages and attorney fees pursuant to 18 U.S.C. Section 1836(b)(3).

## THIRD CAUSE OF ACTION

## (Breach of Contract Against Defendant You)

110. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

111. As a condition of her employment at 7EDU, Defendant You agreed to abide by the terms of the You Employment Contract and the You PIIA.

112. Among other things, these contracts imposed the following obligations on Defendant You:

a. Devote best efforts to 7EDU and refrain from acting against 7EDU's interests (Ex. A (You Employment Contract), § B and 17; Ex. B (You PIIA), § 10);

b. Abide by 7EDU's policies (Ex. A, § B);

c. Protect and keep secret 7EDU's confidential and trade secret information (Ex.

A, §21-23; Ex. B, § 3(a));

d. Return all company physical and intellectual property upon termination (Ex. A, §29; Ex. B, § 9); and

e. Provide written certification of the return of all physical and intellectual 7EDU property (Ex. B, § 9).

113. 7EDU met its obligations under the You Employment Contract and the You PIIA including, without limitation, by providing Defendant You with a salary and benefits.

114. Defendant You breached her obligations by, among other things:

a. Upon information and belief, by viewing and copying 7EDU's files, immediately before leaving in violation of both her contractual obligations and 7EDU's policies so that she could use that information to directly compete against 7EDU.

b. Deleting 7EDU files on her 7EDU laptop and phones.

c. Failing to return 7EDU's intellectual property after her termination;

d. Failing to provide a written certificate of the return of 7EDU's physical and intellectual property;

e. Diverting all 7EDU social media marketing leads to Defendant Li from July 2023 until Defendant Li resigned, and then failing to transition those leads to 7EDU upon her resignation;

f. Failing to update client counseling notes and updates, a key part of her job, starting in mid-2023

g. Misdirecting 7EDU payments to herself; and

h. Irreversibly changing the name of 7EDU's social media account, making the account worthless for 7EDU marketing purposes.

115. Defendant You's performance on these contractual provisions was not excused.

116. As a direct and proximate result of Defendant You's breaches, 7EDU has suffered damages in an amount to be proven at trial. Further 7EDU will continue to be directly and proximately damages and irreparably harmed if Defendant You is not enjoined from further violation of her

contractual obligations, directed to comply therewith, and prohibited from using and disclosing 7EDU's confidential and trade secret information. 7EDU does not have an adequate remedy at law and will not be fully compensated for Defendant You's breaches without injunctive relief.

**<u>FOURTH CAUSE OF ACTION</u>**

**<u>(Breach of Contract Against Defendant Li)</u>**

117. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

118. As a condition of her employment at 7EDU, Defendant Li agreed to abide by the terms of the Li Employment Contract and the Li PIIA.

119. Among other things, these contracts imposed the following obligations on Defendant Li:

a. Devote best efforts to 7EDU and refrain from acting against 7EDU's interests (Ex. C (Li Employment Contract), § B and 17; Ex. D (Li PIIA), § 10);

b. Abide by 7EDU's policies (Ex. C, § B);

c. Protect and keep secret 7EDU's confidential and trade secret information (Ex. C, § 21-23; Ex. D, § 3(a));

d. Return all company physical and intellectual property upon termination (Ex. C, § 29; Ex. D, §9); and

e. Provide written certification of the return of all physical and intellectual 7EDU property (Ex. D, § 9).

120. 7EDU met its obligations under the Li Employment Contract and the Li PIIA including, without limitation, by providing Defendant Li with a salary and benefits.

121. Defendant Li breached her obligations by, among other things:

a. Diverting all of 7EDU's social media marketing leads from July 2023 until her resignation to herself, and then failing to transfer those leads to 7EDU upon her resignation.

b. Deleting 7EDU files on her 7EDU phone before returning it to 7EDU.

c. Failing to return 7EDU's intellectual property after her termination; and

d. Failing to provide a written certificate of the return of 7EDU's physical and

intellectual property.

122. Defendant Li's performance on these contractual provisions was not excused.

123. As a direct and proximate result of Defendant Li's breaches, 7EDU has suffered damages in an amount to be proven at trial. Further 7EDU will continue to be directly and proximately damages and irreparably harmed if Defendant Li is not enjoined from further violation of her contractual obligations, directed to comply therewith, and prohibited from using and disclosing 7EDU's confidential and trade secret information. 7EDU does not have an adequate remedy at law and will not be fully compensated for Defendant Li's breaches without injunctive relief.

**FIFTH CAUSE OF ACTION**

**(Intentional Interference with Contractual Relations**

**Against Defendants You, Qu, Li, and Ignision, and Does 1 through 10)**

124. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

125. 7EDU had valid services agreements with its clients (collectively, the "Client Agreements").

126. 7EDU had valid employment agreements with its employees (collectively, the "Employee Agreements"), including Defendant Li.

127. Defendants You, Qu, Li and Ignision were aware of 7EDU's Client Agreements and Employee Agreements.

128. Defendants You, Qu, Li, and Ignision intentionally engaged in conduct designed to disrupt the Client Agreements and the Employee Agreements, including, without limitation, including misdirecting all social media sales leads to Defendant Li, failing to complete client counseling notes and updates, and failing to transition students to active counselors at 7EDU, and otherwise attempting to disrupt the contractual relationships between 7EDU and its clients, and the contractual relationships between 7EDU and its employees.

129. 7EDU's contractual relationships with its clients and employees were actually disrupted because several clients have terminated their agreements with 7EDU, and at least one employee has terminated her agreement with 7EDU.

130. Does 1-10, and each of them, knew of the conduct being engaged in by Defendants ,

actually knew or had reason to know that Defendants' conduct was wrongful, and facilitated or benefitted from the conduct. Does 1-10 acted in concert with Defendants, knowingly encouraging and participating in their wrongful conduct, and receiving, misappropriating and acting as a repository for, the property misappropriated by Defendants. Does 1-10 took advantage of and profited from Defendants' improper conduct as alleged herein.

131. As a direct and proximate result of Defendants' unlawful conduct, 7EDU has suffered economic damages, including, without limitation, lost profits associated with the termination of the Client Agreements and the Employee Agreements, loss of its competitive position, and loss of market share. 7EDU has also been irreparably harmed, entitling it to injunctive relief.

132. 7EDU is entitled to exemplary or punitive damages because Defendants acted with fraud, malice, oppression, and in conscious disregard of 7EDU's rights.

## SIXTH CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Advantage**

**Against Defendants You, Qu, Li, and Ignision, and Does 1 through 10)**

133. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

134. 7EDU had existing and prospective economic relationships with each of its existing and prospective clients.

135. Defendants You, Qu, Li and Ignision were aware of 7EDU's economic relationships with its existing and prospective clients.

136. Defendants You, Qu, Li, and Ignision intentionally engaged in conduct designed to disrupt 7EDU's economic relationships with its existing and prospective clients, including, without limitation, including misdirecting all social media sales leads to Defendant Li, failing to complete client counseling notes and updates, failing to transition students to active counselors at 7EDU, and otherwise engaging in communications with clients and employees to dissuade them from working with 7EDU and otherwise attempting to disrupt 7EDU's economic relationships with its existing and prospective clients. 7EDU's economic relationships with its existing and prospective clients were actually disrupted.

137. Does 1-10, and each of them, knew of the conduct being engaged in by Defendants,

actually knew or had reason to know that Defendants' conduct was wrongful, and facilitated or benefitted from the conduct. Does 1-10 acted in concert with Defendants, knowingly encouraging and participating in their wrongful conduct. Does 1-10 took advantage of and profited from Defendants' improper conduct as alleged herein.

138. As a direct and proximate result of Defendants' unlawful conduct, 7EDU has suffered economic damages, including, without limitation, damage to business reputation, lost profits, lost revenue, loss of its competitive position, loss of market share, and lost business opportunities, all in an amount to be determined according to proof at the time of trial. 7EDU has also been irreparably harmed, entitling it to injunctive relief.

139. 7EDU is entitled to exemplary or punitive damages because Defendants acted with fraud, malice, oppression, and in conscious disregard of 7EDU's rights.

**SEVENTH CAUSE OF ACTION**

**(Conversion Against Defendant You, and Does 1 through 10)**

140. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

141. Defendant You intentionally misdirected payments from 7EDU's partner to her personal bank account, by instructing the partner to pay their 7EDU invoices directly to her instead of paying 7EDU. Defendant You then kept these payments, and did not submit them to 7EDU. Defendant You also instructed another 7EDU employee to mark the invoices as paid in 7EDU's financial system.

142. Based on 7EDU's investigation so far, the misdirected payments include a payment of $2,045.78 on September 12, 2023, a payment in the amount of $2,045.78 on September 27, 2023, and a payment in the amount of $4,091.55 on November 17, 2023. Together, these payments total around $8,183.11.

143. Defendant You did not inform 7EDU about these unauthorized payments. 7EDU only learned about Defendant You's scheme when the partner asked about renewing its contract, and asked how to pay since Defendant You was no longer at 7EDU. The money that Defendant You misdirected is the property of 7EDU. 7EDU did not give Defendant You permission to use or disburse this money. Defendant You wrongfully and fraudulently retained and/or disbursed this money for her own gain.

144. As set forth above, Defendant You has wrongfully denied 7EDU those payments, and has exercised control over those payments, and converted them by transferring and/or paying herself these proceeds for her own gain.

145. 7EDU has demanded immediate payment of the payments to which it is entitled, but Defendant You has refused those demands and continues to assert sole and exclusive possession and control over the payments that belong to 7EDU.

146. Does 1-10, and each of them, knew of the conduct being engaged in by Defendant You, actually knew or had reason to know that Defendant You's conduct was wrongful, and facilitated or benefitted from the conduct. Does 1-10 acted in concert with Defendant You, knowingly encouraging and participating in their wrongful conduct, and receiving, misappropriating and acting as a repository for, the property misappropriated by Defendant You. Does 1-10 took advantage of and profited from Defendant You's improper conduct as alleged herein.

147. 7EDU is entitled to immediate possession of the payments. As a legal and proximate result of defendants' conversion, 7EDU has suffered damages in an amount unknown at this time, but which is not less than $8,183.11. 7EDU will establish its exact damages according to proof at trial.

148. In acting as herein alleged, Defendant You, and Does 1 through 10 acted with fraud, oppression, and malice and with the intent to cause injury to 7EDU. The conduct of Defendant You, and Does 1 through 10 was despicable, oppressive, and in conscious disregard of the rights of 7EDU. Accordingly, 7EDU is entitled to recover exemplary and punitive damages from Defendant You, and Does 1 through 10, jointly and severally, in an amount sufficient to punish and make an example of Defendant You, and Does 1 through 10, which sum shall be shown according to proof at trial.

## **EIGHTH COUNTERCLAIM**

**(For Money Had and Received Against Defendant You, and Does 1 through 10)**

149. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

150. As set forth above, Defendant You and Does 1 through 10, and each of them, received money that was intended to be used for the benefit of 7EDU. This money was not used for the benefit of 7EDU, and Defendant You has not given the money to 7EDU.

151. Does 1-10, and each of them, knew of the conduct being engaged in by Defendant You,

actually knew or had reason to know that Defendant You's conduct was wrongful, and facilitated or benefitted from the conduct. Does 1-10 acted in concert with Defendant You, knowingly encouraging and participating in her wrongful conduct, and receiving, misappropriating and acting as a repository for, the money misappropriated by Defendant You. Does 1-10 took advantage of and profited from Defendant You's improper conduct as alleged herein.

152. As a result, Defendant You became indebted to 7EDU in the sum of at least $8,183.11 for money had and received by Defendant You and Does 1 through 10, and each of them.

153. Neither the whole nor any part of this sum has been paid, although demand therefore has been made. There is now due, owing, and unpaid from Defendant You, and Does 1 through 10, and each of them, to 7EDU the sum of at least $8,183.11.

154. 7EDU seeks recovery of at least $8,183.11 plus interest at the legal rate, according to proof.

## NINTH CAUSE OF ACTION

**(Breach of Duty of Loyalty Against Defendants You, Qu, Li, and Does 1 through 10)**

155. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

156. As employees of 7EDU, Defendants You, Qu, and Li each owed 7EDU a duty of loyalty. As result, Defendants You, Qu, and Li were obligated with the utmost good faith and in the best interest of 7EDU.

157. 7EDU was entitled to place its trust and confidence in Defendants You, Qu, and Li and was entitled to expect Defendants You, Qu, and Li to act with the utmost good faith towards it in carrying out the business of 7EDU.

158. 7EDU did rely on Defendants You. Qu, and Li's loyalty and integrity and faithful performance of their job duties and responsibilities.

159. Labor Code section 2863 specifically states that "An employee who has any business to transact on his own account, similar to that entrusted to him by his employer, shall always give the preference to the business of the employer."

160. Through the actions set forth above, including misdirecting all social media sales leads to Defendant Li, failing to complete client counseling notes and updates, and failing to transition

students to active counselors at 7EDU, as well as Defendants' other efforts to harm and steal the business of 7EDU, Defendants You, Qu, and Li knowingly and willingly breached their common law duties of loyalty to 7EDU and violated California Labor Code 2863.

161. This claim is not predicated on the misappropriation or theft of any confidential, proprietary, and/or trade secret information belonging to 7EDU. Rather, it is predicated on Defendants' You, Qu, and Li's deceit and beaches of their duties of loyalty.

162. As a direct and proximate result of Defendants You, Qu, and Li's breach of their duties of loyalty, 7EDU has been and is being harmed and faces irreparable injury.

163. 7EDU is entitled to damages, in an amount to be determined at trial, as well as disgorgement by Defendants You, Qu, and Li of the salary, benefits, and other forms of renumeration paid to them during the time that they were, in secret, being disloyal to 7EDU, and all profits they and/or their new employer, Defendant Ignision, received as a result of this disloyalty, in an amount to be determined at trial 7EDU is further entitled to injunctive relief against Defendants to remedy their past improper conduct and prevent further irreparable harm to 7EDU.

164. Defendants' actions were done with malice, fraud, oppression, and reckless disregard of the above-described rights of 7EDU and within the meaning of California Civil Code Section 3294. Therefore, 7EDU seeks and is entitled to recover punitive damages.

## TENTH CAUSE OF ACTION

**(Breach of Fiduciary Duty Against Defendant You)**

165. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

166. A fiduciary relationship existed between 7EDU on one hand, and Defendant You, on the other hand, during the time that Defendant You served as Chief Operating Officer and Sales & Marketing Director because of the parties' conduct, where Defendant You was responsible for, among other things, managing payments to 7EDU.

167. As Chief Operating Officer of 7EDU, and then as its Sales & Marketing Director, Defendant You owed fiduciary duties of care, loyalty, and good faith to 7EDU. Defendant You's fiduciary duties included obligations to exercise good business judgment, to act prudently in the management of 7EDU's payments, and to discharge her actions in good faith, and to deal fairly and

truthfully with 7EDU. Defendant You also owed a fiduciary duty to act in the best interest of 7EDU.

168. Defendant You breached her fiduciary duties of good faith and loyalty by, among other things, misdirecting all social media sales leads to Defendant Li, failing to complete client counseling notes and updates, and failing to transition students to active counselors at 7EDU, as well as Defendant's other efforts to harm and steal the business of 7EDU, and other wrongful conduct, as alleged herein. This claim is not predicated on the misappropriation or theft of any confidential, proprietary, and/or trade secret information belonging to 7EDU, and is instead predicated on the independently wrongful actions described above.

169. As a foreseeable, direct, and proximate result of Defendant You's breach of fiduciary duty, 7EDU has been damaged in an amount according to proof.

170. Additionally, as a direct, proximate, and foreseeable result of the wrongful conduct of defendants, and each of them, 7EDU is entitled to relief, including imposition of a constructive trust, recovery in quantum meruit, restitution, and/or disgorgement of any profits, fees, or payments that may be obtained by defendants as a result of such wrongful conduct.

171. Defendant You's actions were done with malice, fraud, oppression, and reckless disregard of the above-described rights of 7EDU and within the meaning of California Civil Code Section 3294. Therefore, 7EDU seeks and is entitled to recover punitive damages.

## **ELEVENTH CAUSE OF ACTION**

**(Aiding and Abetting Breach of Duty of Loyalty**

**Against Defendants You, Qu, Li, Ignision, and Does 1 through 10)**

172. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

173. Defendants each provided substantial assistance, support, and encouragement to the other Defendants in committing breaches of their duties of loyalty, as described above. Defendants engaged in this bad conduct with full knowledge that the other Defendants were still employed by 7EDU and, therefore, owed duties of loyalty to 7EDU.

174. Further, 7EDU alleges on information and belief that Defendant Ignision accepted the benefits of Defendants' misconduct with full knowledge that the acts were wrongful.

175. This claim is not predicated on the misappropriation or theft of any confidential,

proprietary, and/or trade secret information belonging to 7EDU, and is instead predicated on the independently wrongful actions described above.

176. The conduct of Defendants was a substantial factor in causing the harm suffered by 7EDU as a result of the breaches described above.

177. Does 1-10, and each of them, knew of the conduct being engaged in by Defendants, actually knew or had reason to know that Defendants' conduct was wrongful, and facilitated or benefitted from the conduct. Does 1-10 acted in concert with Defendants, knowingly encouraging and participating in their wrongful conduct. Does 1-10 took advantage of and profited from Defendants' improper conduct as alleged herein.

178. As a direct and proximate result of Defendants' unlawful conduct, 7EDU has suffered economic damages, including, without limitation, damage to business reputation, lost profits, lost revenue, loss of its competitive position, loss of market share, and lost business opportunities, all in an amount to be determined according to proof at the time of trial.

179. Defendants' actions were done with malice, fraud, oppression, and reckless disregard of the above-described rights of 7EDU and within the meaning of California Civil Code Section 3294. Therefore, 7EDU seeks and is entitled to recover punitive damages.

**TWELFTH CAUSE OF ACTION**

**(Aiding and Abetting Breach of Duty of Fiduciary Duty**

**Against Defendants Qu, Li, Ignision, and Does 1 through 10)**

180. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

181. Defendants each provided substantial assistance, support, and encouragement to Defendant You in committing the breach of fiduciary duty, as described above. Defendants engaged in this bad conduct with full knowledge that the Defendant You was still employed by 7EDU as Chief Operating Officer and as its Sales & Marketing Director, and, therefore, owed fiduciary duties to 7EDU.

182. Further, 7EDU alleges on information and belief that Defendant Ignision accepted the benefits of Defendant You's misconduct with full knowledge that the acts were wrongful.

183. This claim is not predicated on the misappropriation or theft of any confidential,

proprietary, and/or trade secret information belonging to 7EDU, and is instead predicated on the independently wrongful actions described above.

184. The conduct of Defendants was a substantial factor in causing the harm suffered by 7EDU as a result of the breaches described above.

185. Does 1-10, and each of them, knew of the conduct being engaged in by Defendants, actually knew or had reason to know that Defendants' conduct was wrongful, and facilitated or benefitted from the conduct. Does 1-10 acted in concert with Defendants, knowingly encouraging and participating in their wrongful conduct. Does 1-10 took advantage of and profited from Defendants' improper conduct as alleged herein.

186. As a direct and proximate result of Defendants' unlawful conduct, 7EDU has suffered economic damages, including, without limitation, damage to business reputation, lost profits, lost revenue, loss of its competitive position, loss of market share, and lost business opportunities, all in an amount to be determined according to proof at the time of trial.

187. Defendants' actions were done with malice, fraud, oppression, and reckless disregard of the above-described rights of 7EDU and within the meaning of California Civil Code Section 3294. Therefore, 7EDU seeks and is entitled to recover punitive damages.

**THIRTEENTH CAUSE OF ACTION**

**(Federal False Advertising in Violation of 15 U.S.C. §1125(a) Against Defendant Ignision and Does 1 through 10)**

188. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

189. Defendant Ignision is making false and/or misleading representations on its website, including the following:

a. that Ignision's students have a 97% acceptance rate to colleges;

b. that Ignision's students have received 500+ top university offers;

c. that Ignision has supported 1000+ students; and

d. that Ignision's students have received offers of admission from Johns Hopkins University, Massachusetts Institute of Technology, University of Pennsylvania, University of California, Berkeley, Columbia University, Stanford University,

Yale University, Cornell University, Swarthmore College, Brown University, and Harvard University.

190. Defendant Ignision's representations are false. It is not possible for these representations to be true, as Ignision was only formed on December 15, 2023.

191. Defendant Ignision's false and misleading marketing materials and statements on its website constitute false advertising in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125.

192. Defendant Ignision has made and continues to make false and misleading misrepresentations concerning its services in Defendant Ignision's marketing materials and statements on its website, throughout the United States, including in California, with the intent to mislead and deceive potential clients.

193. Upon information and belief, Defendant Ignision's false and/or misleading statements have actually deceived or tended to deceive a substantial segment of the relevant consumers for the parties' competing college admissions and tutoring services.

194. Upon information and belief, Defendant Ignision's false and/or misleading statements are material in that they have influenced the purchasing decisions of clients in the United States.

195. Defendant Ignision's false and/or misleading statements were and are made in interstate commerce.

196. Defendant Ignision's improper activities, as described herein, have been willful and deliberate, thereby making this an exceptional case under the Lanham Act. Indeed, Defendant Ignision knew or reasonably should have known that its advertisements and marketing materials were false and/or misleading. Therefore, Defendant Ignision's false advertising of its products was purposeful and knowing and merits a finding that exceptional circumstances exist sufficient to support an award of attorneys' fees and treble damages.

197. Does 1-10, and each of them, knew of the conduct being engaged in by Defendant Ignision, actually knew or had reason to know that Defendant Ignision's conduct was wrongful, and facilitated or benefitted from the conduct. Does 1-10 acted in concert with Defendant Ignision, knowingly encouraging and participating in their wrongful conduct. Does 1-10 took advantage of and profited from Defendant Ignision's improper conduct as alleged herein.

198. As a direct and proximate result of the acts of Defendants as alleged herein, 7EDU has been damaged through, among other things, lost sales and profits, lost students, and lsot market share.

199. As a direct and proximate result of the acts of Defendants as alleged herein, 7EDU has suffered and will continue to suffer damage to its business, goodwill, reputation, and profits, while Defendant Ignision is profiting at 7EDU's expense.

200. 7EDU has suffered an irreparable injury. 7EDU has no adequate remedy at law, and the balance of hardships favor granting 7EDU injunctive relief.

201. The public interest would be served by enjoining Defendants because it would, among other reasons, stop Defendant Ignision's false and misleading advertising and consumer deception from continuing.

**FOURTEENTH CAUSE OF ACTION**

**(False Advertising in Violation of Cal. Bus. & Prof. Code §17500 et seq.**

**Against Defendant Ignision and Does 1 through 10)**

202. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

203. Defendant Ignision advertises its services on its website, including its competing college admissions and tutoring services, in the State of California. In so doing, Defendant Ignision makes representations concerning its past successes and its employees. As set forth above, these representations are false and misleading.

204. Defendant Ignision knew that the statements on its website are untrue or misleading or, by the exercise of reasonable care, should have known that the statements are untrue or misleading.

205. Defendant Ignision's conduct constitutes false advertising under Cal. Bus. & Prof. Code §17500 et seq. Such false advertising has been done willfully with the intent to harm 7EDU.

206. Defendant Ignision has benefited from the sale of its services to clients who relied upon the untrue and misleading representations set forth herein.

207. Defendant Ignision's false and misleading statements were intended to competitively disadvantage 7EDU in the State of California and give Defendant Ignision an unfair competitive advantage in the marketplace.

208. Does 1-10, and each of them, knew of the conduct being engaged in by Defendant

Ignision, actually knew or had reason to know that Defendant Ignision's conduct was wrongful, and facilitated or benefitted from the conduct. Does 1-10 acted in concert with Defendant Ignision, knowingly encouraging and participating in their wrongful conduct. Does 1-10 took advantage of and profited from Defendant Ignision's improper conduct as alleged herein.

209. Defendants' false advertising has caused and is causing damage and irreparable harm to 7EDU in the form of lost profits, loss of market share, loss of sales, and loss of reputation and goodwill, which damage and injury will continue if not enjoined.

**FIFTEENTH CAUSE OF ACTION**

**(Unfair Competition (California Business & Professions Code § 17200, et. seq.)**

**Against Defendants You, Qu, Li, Ignision, and Does 1 through 10)**

210. 7EDU realleges and incorporates all preceding paragraphs herein by reference.

211. By the other wrongful conduct alleged herein, defendants have engaged in a pattern of unfair, unlawful, and/or fraudulent business practices and unfair competition in violation of California Business and Professions Code Section 17200, et. seq.

212. As a result of defendants' unfair competition, 7EDU has suffered and will continue to suffer irreparable harm from defendants' unfair practices and unfair competition, including, without limitation, harm to their business reputation, goodwill, and stature, for which there is no adequate remedy at law, thereby justifying injunctive relief.

213. Until and unless injunctive relief is granted, 7EDU will be irreparably harmed and defendants will be unjustly enriched, which enrichment should be disgorged pursuant to allowable remedies under California Business and Professions Code Section 17200, et. seq.

214. Additionally, as a direct, proximate, and foreseeable result of the wrongful conduct of defendants, and each of them, 7EDU is entitled to relief, including return of the payments intended for 7EDU, as well as imposition of a constructive trust, recovery in quantum meruit, restitution, and/or disgorgement of any profits, fees, or payments that may be obtained by defendants as a result of such wrongful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, 7EDU prays for judgment jointly and severally against Defendants You, Qu,

Li, Ignision, and Does 1 through 10, inclusive, as follows:

a. For temporary and permanent injunctive relief, including an order stating that 7EDU is entitled to immediate possession of the confidential and trade secret information of 7EDU; an order requiring Defendants to immediately withdraw, retract, and/or destroy, as applicable, all marketing materials containing false or misleading statements; an order requiring Defendants to publish appropriate corrective advertising; and an order requiring Defendants to withdraw from any student agreements signed based on these false and misleading statements;

b. For compensatory damages, including general, actual, economic, consequential, emotional distress, and special damages, in an amount to be proven at trial;

c. For exemplary and punitive damages based on defendants' knowing, willful, intentional, and malicious conduct in an amount to be proven at trial;

d. For pre-judgment and post-judgment interest on the damages, according to proof;

e. For equitable relief, including imposition of a constructive trust, recovery in quantum meruit, restitution and/or disgorgement of any profits, fees, or payments;

f. For exemplary and punitive damages based on defendants' knowing, willful, intentional and malicious conduct in an amount to be proven at the trial;

g. For attorneys' fees pursuant to agreement or statute, according to proof;

h. For costs of suit and expenses; and

i. For such other relief as may be just and proper.

DATED: May 8, 2024 Hawkinson Yang LLP

By: /s/ Elena DiMuzio

Elena DiMuzio
David Yang
Matt Hawkinson
Kevin Goldman
Sharlene Lee

Attorneys for Plaintiff
7EDU Impact Academy Inc.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff 7EDU Impact Academy Inc. hereby demands a trial by jury of any and all issues triable of right by a jury pursuant to the Seventh Amendment to the United States Constitution or as given by a statute of the United States.

DATED: May 8, 2024 Hawkinson Yang LLP

By: /s/ Elena DiMuzio

Elena DiMuzio
David Yang
Matt Hawkinson
Kevin Goldman
Sharlene Lee

Attorneys for Plaintiff
7EDU Impact Academy Inc.