DAVID YANG (SBN 246132)
*dyang@hycounsel.com*
MATT HAWKINSON (SBN 248216)
*mhawkinson@hycounsel.com*
KEVIN GOLDMAN (SBN 249894)
*kgoldman@hycounsel.com*
SHARLENE LEE (SBN 274033)
*slee@hycounsel.com*
ELENA DIMUZIO (SBN 239953)
*edimuzio@hycounsel.com*
HAWKINSON YANG LLP
8033 W. Sunset Blvd. #3300
Los Angeles, CA 90046
Telephone: (213) 634-0370
Facsimile: (213) 260-9305

Attorneys for Plaintiff
7EDU IMPACT ACADEMY INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

7EDU IMPACT ACADEMY INC.,

Plaintiff,

v.

YA YOU, an individual, AMY QU (a.k.a. AIMEE QU), an individual; YAYI LI, an individual; IGNISION EDUCATION SILICON VALLEY, a California corporation; and DOES 1-10, inclusive.

Defendants.

CASE NO. 5:24-cv-01708-EJD

**PLAINTIFF 7EDU'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Hearing: August 22, 2024 at 9:00 a.m.
Courtroom: 4
Judge: Hon. Edward J. Davila
280 South 1st St.
San Jose, CA 95113

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1
II. BACKGROUND .......... 1
  A. Factual Background .......... 1
  B. Procedural History .......... 2
III. LEGAL STANDARD .......... 3
IV. ARGUMENT .......... 4
  A. 7EDU states claims for trade secret misappropriation. .......... 4
    1. 7EDU has pled its trade secrets with sufficient detail. .......... 4
    2. 7EDU has pled sufficient detail regarding its reasonable measures to protect its trade secret information. .......... 7
    3. 7EDU has sufficiently pled Defendants' misappropriation of its trade secrets. .......... 8
  B. 7EDU states claims for breach of contract. .......... 10
  C. 7EDU's intentional interference and unfair competition claims are not preempted by CUTSA. .......... 12
    1. 7EDU states claims for intentional interference with contractual relations and intentional intereference with prospective economic advantage. .......... 12
    2. 7EDU states a claim for unfair competition. .......... 14
  D. 7EDU has adequately pledged conversion and money had and received. .......... 14
  E. 7EDU states claims for breach of the duty of loyalty and fiduciary duty. .......... 15
  F. 7EDU states claims for false advertising under 15 U.S.C. § 1125(a) and Cal. Bus & Prof. Code § 17500. .......... 16
  G. Any dismissal should be with leave to amend. .......... 17
V. CONCLUSION .......... 18

## TABLE OF AUTHORITIES

**Cases**


*Albert's Organics, Inc. v. Holzman*,
445 F. Supp. 3d 463 (N.D. Cal. 2020) ....................6, 7, 12

*Angelica Textiles Serve., Inc. v. Park*,
220 Cal. App. 4th 495 (Cal. Ct. App. 2013) ....................16

*Apple Inc. v. Rivos Inc.*,
Case No. 5:22-cv-02637-EJD, 2023 WL 5183034 (N.D. Cal. Aug. 11, 2023) ....................7, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................3, 4

*Avidor v. Sutter's Place, Inc.*,
151 Cal. Rptr. 3d 804 (2013) ....................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................3, 12

*CytoDyn of N.M., Inc. v. Amerimmune Pharms., Inc.*,
160 Cal. App. 4th 288 (Cal. Ct. App. 2008) ....................7

*Della Penna v. Toyota Motor Sales U.S.A., Inc.*,
11 Cal. 4th 376 (1995) ....................14

*Express Scripts Inc., v. Lavin*,
Case No. 17CV01423, 2017 WL 2903205 (E.D. Mo. Jul. 7, 2017) ....................9

*Farhang v Indian Inst. of Tech.*,
Case No. C–08–02658 RMW, 2010 WL 2228936 (N.D. Cal. June 1, 2010) ....................11

*Fowler v. Varain Assocs., Inc.*,
196 Cal. App. 3d 34 (Cal. App. 6 Dist. 1987) ....................18

*Harper House, Inc. v. Thomas Nelson, Inc.,*
889 F.2d 197 (9th Cir. 1989) ....................19

*Henry Schein Inc v. Cook*,
Case No. 16-cv-03116-JST, 2017 WL 783617 (N.D. Cal. Mar. 1, 2017) ....................15

*Imax Corp. v. Cinema Techs., Inc.*,
152 F.3d 1161 (9th Cir. 1998) ....................7

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
978 F.3d 653 (9th Cir. 2020) ....................4, 7

*Leadsinger, Inc. v. BMG Music Publ'g*,
512 F.3d 522 (9th Cir. 2008) ....................21

*Lesnik v. Eisenmann SE*,
374 F. Supp. 3d 923 (N.D. Cal. 2019) ....................21

*Lindy Pen Co. v. Bic Pen Corp.*,
982 F.2d 1400, 1411 (9th Cir. 1993)). .......... 20

*Los Angeles Mem'l Coliseum Com. v. Insomniac, Inc.*,
233 Cal. App. 4th 803 (Cal. Ct. App. 2015) .......... 19

*Luttrell v. Hart*,
Case No. 5:19-cv-07300-EJD, 2020 WL 5642613 (N.D. Cal. Sept. 22, 2020) .......... 4

*MAI Sys. Corp. v. Peak Comput., Inc.*,
991 F.2d 511 (9th Cir.1993) .......... 8

*Myers v. Stephens*,
233 Cal. App. 2d 104 (Ct. App. 1965) .......... 13

*Navigation Holdings, LLC v. Molavi,*
445 F. Supp. 3d 69 (N.D. Cal. 2020) .......... 4, 6, 7, 12

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
50 Cal. 3d 1118 (1990) .......... 14

*Pellerin v. Honeywell Int'l, Inc.*,
877 F. Supp. 2d 983 (S.D. Cal. 2012) .......... 11

*Posdata Co. Ltd. v. Kim*,
Case No. C-07-02504 RMW, 2007 WL 1848661 (N.D. Cal. June 27, 2007) .......... 8

*Power Integrations Inc. v. De Lara*,
Case No. 20-cv-410-MMA (MSB), 2020 WL 1467406 (S.D. Cal. Mar. 26, 2020) .......... 10

*Pyro Spectaculars N., Inc. v. Souza*,
861 F. Supp. 2d 1079 (E.D. Cal. 2012) .......... 8

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
923 F. Supp. 1231 (N.D. Cal. Sept. 22, 1995) .......... 9

*Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*,
768 F.3d 938 (9th Cir. 2014) .......... 4

*S. Cal. Inst. of Law v. TCS Educ. Sys.*,
Case No. CV 10-8026 PSG (AJWx), 2011 WL 1296602 (C.D. Cal. Apr. 5, 2011) .......... 11

*Scilex Pharm. Inc. v. Sanofi-Aventis U.S. LLC*,
Case No. 21-cv-01280-JST, 2021 WL 11593043 (N.D. Cal. Aug. 16, 2021) .......... 20

*Segerdahl Corp. v. Ferruzza*,
Case No. 17-cv-3015, 2019 WL 77426 (N.D. Ill. Jan. 2, 2019) .......... 9

*SMC Networks, Inc. v. Hitron Techs. Inc.*,
Case No. SACV 12-1293-JLS (RNBx), 2013 WL 12114104 (C.D. Cal. Nov. 13, 2013) .......... 15

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) .......... 19, 20

*Space Data Corp. v. X*,
Case No. 16-CV-03260-BLF, 2017 WL 5013363 (N.D. Cal. Feb. 16, 2017)............................13

*Spice Jazz LLC v. Youngevity Int'l, Inc.*,
Case No. 19-cv-0583-BAS-DEB, 2020 WL 6484640 (E.D. Cal. Nov. 4, 2020) ....................6, 11

*Synopsys, Inc. v. ATopTech, Inc.*,
Case No. C 13–cv–02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013)..............................7

*Taylor v. Google LLC*,
Case No. 22-16654, 2024 WL 837044 (9th Cir. 2024) .............................................................17

*TrafficSchool.com, Inc. v. Edriver Inc.*,
653 F.3d 820 (9th Cir. 2011) .........................................................................................19, 20

*Tri Cnty. Tel. Ass'n. Inc. v. Campbell*,
Case No. 17-CV-089-F, 2018 WL 10399165 (D. Wyo. Apr. 17, 2018) ....................................11

*Valenzuela v. City of Calexico*,
Case No. 14-CV-481-BAS-PCL, 2015 WL 2184304 (S.D. Cal. May 11, 2015)........................11

*Waymo LLC v. Uber Tech., Inc.*,
256 F. Supp. 3d 1059 (N.D. Cal. 2017). ....................................................................................14

**Statutes**

15 U.S.C. §1125(a) ..........................................................................................................19

18 U.S.C. § 1839(3) ..........................................................................................................4

18 U.S.C. § 1839(6)(A)......................................................................................................4

18 U.S.C. § 1839(f)(A)-(B)..................................................................................................4

Cal. Bus & Prof. Code § 17500 .........................................................................................19

Cal. Bus. & Prof. Code §§ 17200-17210 ............................................................................16

Cal. Civ. Code § 3426.1(d) ..................................................................................................4

Cal. Civ. Code § 3426.7.....................................................................................................13

## I. INTRODUCTION

Plaintiff 7EDU Impact Academy Inc. ("7EDU") filed a 42 page First Amended Complaint ("FAC") presenting in great detail the story of Defendants' deceit as they stole valuable materials from 7EDU to form a competing business. The FAC also contains detailed allegations concerning Defendant Ya You's theft of money belonging to 7EDU. The FAC sets forth 15 causes of action, including trade secret misappropriation, breach of contract, conversion, and unfair competition.

Defendants claim that Plaintiff has failed to plead facts to support *any* of the 15 causes of action. Defendants ask that the entire FAC be dismissed with prejudice.

Defendants overreach with their motion, and they try to justify this overreach by mischaracterizing the allegations in the FAC. Contrary to Defendants' misrepresentations, the facts alleged in the FAC are more than enough to make 7EDU's claims for relief "plausible." Defendants' motion should be denied.

## II. BACKGROUND

### A. Factual Background

This case presents a classic story of employees who treated their employer's property as their own, and who took as much as they could carry on their way out the door – and used it start a competing business.

Defendants Ya You ("You"), Amy Qu ("Qu"), and Yayi Li ("Li") worked for 7EDU's college application counseling and tutoring service. FAC ¶¶ 2-3; 44-47. Months before they resigned their positions, Defendants began acting to benefit themselves, and their plans for a new application counseling service, at 7EDU's expense. FAC ¶ 21-22. Defendants Li and You worked together to misappropriate 7EDU's new-client leads from social media. *Id*. Defendant You intercepted and kept payments from a 7EDU client, and attempted to cover it up. FAC ¶ 70. You also stopped updating the documents 7EDU uses to plan and monitor student progress for eight of the students she was counseling, which was a core part of her job. FAC ¶ 21.

You resigned from 7EDU in early December 2023. FAC ¶ 21. Though she promised to finally update her student counseling files so they could be transferred to other counselors, she failed to do it. *Id*. But she found time, in the week before her last day, to open and view nearly 100

documents from 7EDU's secure Google Drive containing confidential and trade secret information of 7EDU – including the files she had falsely promised to update. FAC ¶ 21. You returned her 7EDU-issued laptop and phone completely and irrevocably wiped of all information, including all of her work-related communications and work product stored on those devices. *Id*.

When You resigned, Defendant Qu offered to take on her counseling clients to help ease the transition. FAC ¶ 64. Not knowing that Qu was in cahoots with You, 7EDU transitioned You's clients to Qu. *Id.* Qu's offer was a ruse, designed to make it easier to take those clients from 7EDU. *Id*. Days after those students were reassigned to Qu, she also resigned from 7EDU. FAC ¶ 66. The night before her last day at 7EDU, Qu spent hours downloading hundreds of documents from 7EDU's secure server to her personal laptop. FAC ¶¶ 54, 66.

Defendant Li resigned from 7EDU the day after Defendant Qu resigned. FAC ¶ 66. Like Defendant You, Li returned all of her devices wiped of all data – including the sales leads she and You had diverted to herself. FAC ¶ 53. Defendants You, Qu, and Li then used information taken from 7EDU to solicit its clients to end their contracts with 7EDU, and begin working with Defendant Ignision, resulting in the loss of at least eight 7EDU student contracts. FAC ¶ 68.

**B. Procedural History**

When 7EDU discovered that the Defendants had inappropriately accessed and downloaded 7EDU proprietary information, that Defendants You and Li deleted all information from their 7EDU-issued devices, and that the Defendants were reaching out to the families of 7EDU's clients to encourage them to leave 7EDU and instead work with Ignision, it acted quickly to try to resolve the problem cooperatively. FAC ¶ 74. 7EDU asked Defendants to return all materials taken from 7EDU, confirm that they had no further copies and would not use the materials going forward, and provide for forensic confirmation of these promises. FAC ¶¶ 73-75, Exs. E-G. 7EDU has never gotten a substantive response to these requests from any of the Defendants. FAC ¶ 75.

Faced with no other way to protect its confidential information, 7EDU filed its initial Complaint in this case (Dkt. No. 1), and simultaneously moved for a temporary restraining order to prevent ongoing misuse of its information and harm to its business. (Dkt. No. 3). The Court held a status conference on March 26, 2024, entered a modified TRO, and set a briefing schedule

and a further hearing on 7EDU's motion for TRO. Dkt. No. 18. At the subsequent hearing (and at the Court's urging), the parties agreed to some expedited discovery related to 7EDU's claims, including engaging a neutral forensic vendor to analyze the Defendants' devices and email. Dkt. No. 23. The Court also extended the TRO, and set a further conference date. *Id*.

The Defendants moved to dismiss the initial Complaint on April 19, 2024. Dkt. No. 31. 7EDU filed the FAC on May 8, 2024. Dkt. No. 38. Defendants filed their motion to dismiss the FAC on May 22, 2024.

Although, pursuant to the stipulation regarding discovery, the parties agreed to engage a forensic vendor as of May 13, 2024, Defendants delayed until June 5, 2024 to provide Defendant Qu's laptop and email to the vendor for analysis.[1]

## III. LEGAL STANDARD

A complaint need only contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This means that the claim must only be plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the allegation. *Twombly*, 550 U.S. at 556. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Luttrell v. Hart*, Case No. 5:19-cv-07300-EJD, 2020 WL 5642613, at *2 (N.D. Cal. Sept. 22, 2020). Courts must accept as true all "well-pleaded factual allegations," and must construe those allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 664; *Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

[1] Defendants repeatedly argue that Plaintiffs should have added more proof of their claims to the FAC from expedited discovery, and that negative inferences about the strength of the claims can be drawn from materials submitted with the original TRO Motion. *See, e.g.,* Mot. at 1. Due to Defendants' delay, expedited discovery has hardly progressed. But more importantly, as summarized in the Legal Standard section of this brief, Defendants' argument is inappropriate at the pleading stage, which requires the Court to accept as true all well-pleaded allegations.

## IV. ARGUMENT

### A. 7EDU states claims for trade secret misappropriation.

Trade secret misappropriation claims under the California Uniform Trade Secret Act ("CUTSA") and the federal Defend Trade Secret Act ("DTSA") have substantially similar elements, which are: (1) the existence of a trade secret, (2) the misapporpriation of a trade secret, and (3) the misappropriaton caused or threatened damage to the plaintiff. *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020).

Trade secrets must be identified with "sufficient particularity" so that the defendant can determine "the boundaries within which the secret lies." *Navigation Holdings, LLC v. Molavi,* 445 F. Supp. 3d 69, 75 (N.D. Cal. 2020). And, the plaintiff must show that it "has taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d).

Further, "misappropriation" can be adequately alleged based on acquisition by improper means, or disclosure or use without consent. 18 U.S.C. § 1839(f)(A)-(B). "Improper means" is defined to include "theft, misrepresentation" and "breach of a duty to maintain secrecy." 18 U.S.C. § 1839(6)(A).

Defendants challenge the sufficiency of 7EDU's identification of trade secrets and the sufficiency of 7EDU's alleged efforts to maintain secrecy. Defendants further argue that the FAC does not sufficiently allege that You and Li acquired trade secrets (implicitly conceding that Qu's voluminous downloads were acquisition), and does not sufficiently allege that any of the individual Defendants used or disclosed trade secrets. 7EDU addresses these arguments in order.

#### 1. 7EDU has pled its trade secrets with sufficient detail.

In its FAC, 7EDU added substantial detail to its already very detailed initial Complaint. *See*, *e.g.*, FAC ¶¶ 25-29. 7EDU alleges that the Defendants misappropriated six different categories of trade secret information: pricing information; client service details; client contracts and related information; client informational repositories; business development and strategy documents; and instructional and counseling materials. FAC ¶ 78. 7EDU has provided detailed descriptions of exemplary documents that contain trade secret information falling into each of these categories.

For instance, in Paragraph 26 of the FAC, 7EDU describes the "7EDU Console," a spreadsheet created for each 7EDU counseling client. This document organizes every element of preparing for admission to an elite secondary school, including: detailed plans for coursework and extracurricular activities for every semester and summer while the client works with 7EDU; client and family contact information and other personal information; detailed notes about the client's progress in 7EDU courses, school courses, and other activities, as well as notes about the student's preferences and interests. *Id*. The 7EDU Console document is a specific example of the trade secrets client service details, client informational repositories, clint contracts, and instructional and counseling materials.

Likewise, Paragraph 27 of the FAC describes, in detail, a document that outlines a template for designing courses offered by 7EDU. This documet contains the trade secrets "business development and strategy documents, and instructional materials".

In Paragraph 28, 7EDU describes specific documents that outline 7EDU's strategic business plans (including the schedule and topics for courses to offer), detail pricing strategies, and show past and projected revenues from different 7EDU offerings. The documents described in Paragraph 28 contain the trade secrets "pricing information and business development and strategy documents."

The information provided in 7EDU's FAC goes far beyond what is required to "permit the defendant to ascertain at least the boundaries within which the secret lies." *Navigation Holdings*, 445 F. Supp. 3d at 75. Comparing 7EDU's allegations to the complaint in *Navigation Holdings* is instructive. There, the plaintiff alleged in a single paragraph that their "Client Information" trade secret included the identities of their clients, who were "key players in the alloy industries," including contact and pricing information. *Id.* at 77. The Court found that this single paragraph was sufficiently detailed to allege a trade secret. *Id.* Courts have repeatedly found that confidential customer information—like the client information 7EDU has asserted as a trade secret here—is a protectable trade secret. *See*, *e.g.*, *Spice Jazz LLC v. Youngevity Int'l, Inc.*, Case No. 19-cv-0583-BAS-DEB, 2020 WL 6484640, at *4 (E.D. Cal. Nov. 4, 2020) (recognizing trade secret status of "customer information that requires time and effort to gather as protected trade secrets, unlike

customer information that anyone can easily access."); *Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 473 (N.D. Cal. 2020) (holding that trade secrets described as "names of . . . customers and suppliers, the names of key employees to be poached and the total percentage of annual corporate sales made by those key employees, pricing and financing resources, potential venture partners, key confidential business relationships, including . . . plans to expand and develop certain markets, Albert's investment commitments, [and] profitability" was sufficiently pled).

Defendants' Motion argues that 7EDU's alleged trade secrets are too broad, but does not address the detailed allegations in the FAC. *See generally* Mot. at 4-7. Defendants rely on inapposite authorities to make this argument. Defendants cite cases relating to highly technical trade secrets, like manufacturing processes or technical designs, holding that it is insufficient to base a trade secret allegation on submission of entire technical manuals or undifferentiated source code. *See, e.g., Apple Inc. v. Rivos Inc.*, Case No. 5:22-cv-02637-EJD, 2023 WL 5183034, at *5-*6 (N.D. Cal. Aug. 11, 2023) (finding trade secret designs for integrated circuits sufficiently pled where plaintiff submitted sealed declarations that identifie[d] examples and elaborate[d] upon certain . . . functions and features that are reflected within those chip specifications"); *Synopsys, Inc. v. ATopTech, Inc.*, Case No. C 13–cv–02965 SC, 2013 WL 5770542 at *6 (N.D. Cal. Oct. 24, 2013) (dismissing with leave to amend when claimed secrets were tools and software for designing complex integrated circuits, some that had been published, and plaintiff had submitted technical documents and code without identification of specific elements). But the trade secrets alleged in this case are not highly technical, and there is no need to submit sealed declarations to "identify examples" of them; without revealing the secrets themselves, 7EDU provided extensive examples of its six alleged trade secrets by describing specific documents that embody these secrets in Paragraphs 25-29 of the FAC. None of the complaints claiming confidential customer information and discussed in the preceding paragraph submitted sealed declarations, yet all of them were found to have sufficiently alleged customer information trade secrets. *See*, *e.g.*, *Navigation Holdings*, 445 F. Supp. 3d at 75; *Albert's Organics*, 445 F. Supp. 3d at 474 (N.D. Cal. 2020).

Defendants' other cited authorities are simply not relevant. *CytoDyn of N.M., Inc. v. Amerimmune Pharms., Inc.*, 160 Cal. App. 4th 288, 297 (Cal. Ct. App. 2008) (case finding a trial court erred in awarding enhanced damages under UTSA when the complaint asserted only misappropriation of patents and trademarks); *InteliClear*, 978 F.3d at 657-58 (reversing summary judgment for defendant, because there was a triable issue as to whether the plaintiff had identified high-tech trade secrets with sufficient particularity); *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998) (affirming summary judgment finding insufficiently-specified, highly technical trade secrets).

**2. 7EDU has pled sufficient detail regarding its reasonable measures to protect its trade secret information.**

7EDU has alleged the significant efforts it makes to protect its trade secret information, citing confidentiality agreements, policies on use of company information and procedures on employee departures, on-site security, and digital security measures such as dual-factor authentication, audit logs, and account recovery. FAC ¶¶ 32-43. Courts have regularly held that a company need not become an "impenetrable fortress" to demonstrate adequate security measures for trade secrets. *Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1091 (E.D. Cal. 2012) (internal citation omitted; finding reasonable measures based on use of confidentiality agreements, maintenance of secure network servers, password-restricted access, and limited access by job function, despite imperfect security practices); *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 521 (9th Cir.1993); *Posdata Co. Ltd. v. Kim*, Case No. C-07-02504 RMW, 2007 WL 1848661 (N.D. Cal. June 27, 2007) (finding, for TRO purposes, that plaintiff's use of confidentiality agreements and internal security measures constituted reasonable measures to protect trade secrets).

Without addressing the confidentiality measures described in the FAC, Defendants argue they fall short because there is no allegation that 7EDU's documents were labeled "confidential" or "trade secret." But Defendants cite no authority imposing this requirement. In addition, the allegations show that the individual Defendants were on notice of their responsibility to protect confidential information. The 7EDU Employment Contract required employees to "keep all

Confidential Information absolutely confidential and protect its release" and that "if there is any question as to such disclosure then the Employee will seek out senior management …prior to making any disclosure." FAC Exs. A & C at 4. Likewise, 7EDU required employees to "hold Proprietary Information in strict confidence" and "not use, reproduce, disclose or deliver" it other than as required to perform work for 7EDU. FAC Exs. B & D at 4. Defendants further argue that because all of the Defendants are alleged to have access to at least some 7EDU trade secrets, 7EDU did not adequately protect its trade secrets. But this ignores 7EDU's allegations that it provided access to its trade secrets to the Defendants "appropriate for [their] job responsibilities." FAC ¶¶ 45-47.

Rather than supporting the conclusion they urge, Defendants' cited authorities demonstrate that "reasonable measures" for protecting trade secret information is a flexible standard that 7EDU has more than met. *See Segerdahl Corp. v. Ferruzza*, Case No. 17-cv-3015, 2019 WL 77426, at *3 (N.D. Ill. Jan. 2, 2019) (denying motion to dismiss DTSA claims, and finding that annual security training, controlling facilities, password-protecting computers, and disclosing on a need-to-know basis sufficiently alleged confidentiality measures); *Express Scripts Inc., v. Lavin*, Case No. 17CV01423, 2017 WL 2903205 (E.D. Mo. Jul. 7, 2017) (granting TRO; finding reasonable confidentiality measures based on confidentiality labels and non-disclosure agreements); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1253-1254 (N.D. Cal. Sept. 22, 1995) (evidence that defendant signed a non-disclosure agreement, among other measures, showed the plaintiff took reasonable steps to protect its purported trade secrets, and noting that efforts need not be "extreme").

**3. 7EDU has sufficiently pled Defendants' misappropriation of its trade secrets.**

7EDU alleges that all of the individual Defendants both acquired its trade secrets improperly, and used them without consent, satisfying both elements of the misappropriation standard. *Apple v. Rivos*, 2023 WL 5183034, at *6 ("To plead misappropriation, plaintiffs must establish one of two categories of conduct: (1) acquisition of the secret by improper means, or (2) disclosure or use of the trade secret without consent."). In addition to Defendant Qu's

downloading of hundreds of documents, which Defendants implicitly concede satisfies the "acquisition" category, 7EDU alleges: (a) that Defendant You conspired with Defendant Li to misdirect 7EDU's social media marketing leads solely to Defendant Li (FAC ¶¶ 21, 56); (b) that Defendants Li and You returned their 7EDU-issued devices completely wiped of all company information, including the misappropriated marketing leads (FAC ¶¶ 52-53); (c) that, in the days leading up to her departure, Defendant You neglected important job transition work, and instead opened an unusually large number of documents containing highly sensitive information, including client contact information, from 7EDU's secure Google Drive – many that she had no business reason to access (FAC ¶¶ 21, 50-51); (d) that Defendant Qu lied about her intention to remain with 7EDU so that You's former students would be transferred to her, immediately before she herself resigned (FAC ¶ 64); and (e) after their resignations, all of the individual Defendants used 7EDU confidential information to solicit 7EDU clients to terminate their agreements with 7EDU, resulting in the loss of eight clients (FAC ¶¶ 67-68).

As this Court has held, suspicious data access immediately prior to a departure, in connection with the defendants moving to similar roles at a competing company, "readily lend themselves to an inference" that Defendants are using the misappropriated information in their new roles. *Apple v. Rivos*, 2023 WL 5183034, at *6; *see also Power Integrations Inc. v. De Lara*, Case No. 20-cv-410-MMA (MSB), 2020 WL 1467406, at *19 (S.D. Cal. Mar. 26, 2020) (noting that misappropriation was adequately alleged as to a defendant who "lied about his employment" with a competitor, which provided "circumstantial evidence" that he possessed trade secret information and intended to use it).

Defendants argue that because two of the individual Defendants are not alleged to have "downloaded" 7EDU's proprietary information, the allegations of unlawful acquision are inadequate as to those two. Again, Defendants cite no authority imposing a requirement of alleging "downloading" in order to claim "unlawful acquisition," or to support an inference that the Defendants are using trade secrets, and the cases cited in this section of the Motion merely hold that conclusory allegations, with no factual support at all, are insufficient. *Valenzuela v. City of Calexico*, Case No. 14-CV-481-BAS-PCL, 2015 WL 2184304, at *6 (S.D. Cal. May 11, 2015)

(claims that are "nothing more than a recitation of elements" are insufficient to support discovery); *Tri Cnty. Tel. Ass'n. Inc. v. Campbell*, Case No. 17-CV-089-F, 2018 WL 10399165, at *4 (D. Wyo. Apr. 17, 2018) (denying untimely motion to amend complaint); *S. Cal. Inst. of Law v. TCS Educ. Sys.*, Case No. CV 10-8026 PSG (AJWx), 2011 WL 1296602, at *8 (C.D. Cal. Apr. 5, 2011) (dismissing trade secret claim based only on a conclusory allegation that defendants "intend[s] to disclose plaintiff's trade secrets and confidential information to others"); *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 989 (S.D. Cal. 2012) (plaintiff alleged only the conclusion "used and/or disclosed", with no supporting facts at all); *Spice Jazz*, 2020 WL 6484640, at *5 (dismissing claims against one defendant because there were no factual allegations regarding their "involvement in the actions giving rise to the lawsuit"); *Farhang v Indian Inst. of Tech.*, Case No. C–08–02658 RMW, 2010 WL 2228936, at *12 (N.D. Cal. June 1, 2010) (dismissing, with leave to amend, where complaint stated only the conclusion that defendants "disclosed without consent"; this did not give rise to "a reasonable basis for inferring" that this disclosure happened).

The cases cited by Defendants simply stand for the general proposition that a claim must have a "plausible" factual basis. *See Twombly*, 550 U.S. at 556. 7EDU has alleged its trade secret claims in significant detail, explained the Defendants' suspicious actions, and stated reasonable inferences supporting its claims for relief. Again, courts in this district have repeatedly found that allegations far less detailed than those in 7EDU's FAC meet the standard for alleging misappropriation. *See*, *e.g.*, *Navigation Holdings*, 445 F. Supp. 3d at 75; *Albert's Organics*, 445 F. Supp. 3d at 474 (N.D. Cal. 2020).

**B. 7EDU states claims for breach of contract.**

In its third and fourth causes of action, 7EDU alleges all elements of claims for breach of contract against Defendants You and Li. The FAC identifies the contracts and key clauses (Defendant Li and You's Employment Agreements, Exs. A and C, and Employee Proprietary Information and Invention Assignment Agreements ("PIIA"), Ex. D and E; *see* FAC ¶¶ 112, 119). The Employment Agreement also required the Defendants to "abide by 7EDU's policies" (FAC ¶¶ 112, 119). The FAC further identifies many ways that Li and You's covert use of 7EDU

confidential information to form their competing business breached these obligations. FAC ¶¶ 114, 121. For example, by diverting social media marketing leads away from other 7EDU employees, and then by deleting that information before returning her 7EDU-issued device, Defendants You and Li breached their obligations under the Employment Contract and PIIA to "refrain from acting against 7EDU's interests; protect 7EDU's confidential and trade secret information; [and] return all company physical and intellectual property upon termination." FAC ¶ 119. 7EDU alleges it has been harmed by these actions in an amount to be proven at trial; this is because the full extent of damages is difficult to measure without discovery.

Defendants first argue that because Defendant You had authorized access to 7EDU information during her employment, any access or use of that information by You during her employment could not breach the PIIA. Mot. at 12. This simply ignores the provisions cited above, requiring that Defendants "refrain from acting against 7EDU's interests" and "protect 7EDU's trade secret information." Defendants then make a straw-man argument that there was nothing to prevent Defendants from deleting "personal materials" on devices, without addressing the allegations that they deleted *everything*, including specific, trade-secret information like marketing leads. Defendants also ignore the (standard) provisions in both the Employment Contract and the PIIA requiring employees to "return all company physical and intellectual property upon termination," arguing (without support) that Defendants were not prohibited from deleting such information upon termination, because there was no "specific procedure set forth." Mot. at 12. Once again, Defendants rely on authority holding that a complaint that "does not offer any factual allegations" to support a "reasonable basis to infer" that the complained-of conduct happened is insufficient. *Space Data Corp. v. X*, Case No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (dismissing for failure to state a claim for breach of an NDA, when complaint alleged no facts "about what information Google used, how Google used that information, or how that purported use violated the NDA's confidentiality provisions.").

Finally, Defendants argue that 7EDU "fails to allege . . . it was damaged" by Defendant You's breaches. This is false. The FAC describes how You's actions, in breach of her contractual obligations, damaged 7EDU by stealing its money, causing eight of its students to stop working

with 7EDU, and depriving 7EDU of months of its social media marketing contacts, among other serious harms. *See, e.g.*, FAC ¶¶ 56, 68, 70. The specific allegations of harm in Counts 3 and 4 are stated generally, which is appropriate for breach of contract damages. *Myers v. Stephens*, 233 Cal. App. 2d 104, 120 (Ct. App. 1965) (damages for breach of contract that "necessarily result from the act complained of" "need not be specially pleaded") (internal citations omitted).

### C. 7EDU's intentional interference and unfair competition claims are not preempted by CUTSA.

The Motion incorrectly claims that "[s]tatutory unfair competition and tortious interference claims are also preempted by the CUTSA." Mot. at 14. To the contrary, the California Uniform Trade Secret Act ("CUTSA") contains a savings clause, which states that CUTSA does not supersede "other civil remedies that are not based upon misappropriation of a trade secret." Cal. Civ. Code § 3426.7. For this reason, there is no supersession where the claim alleges "wrongdoing materially distinct from the wrongdoing alleged in a CUTSA claim." *Waymo LLC v. Uber Tech., Inc.*, 256 F. Supp. 3d 1059, 1063 (N.D. Cal. 2017).

#### 1. 7EDU states claims for intentional interference with contractual relations and intentional intereference with prospective economic advantage.

To state a cause of action for intentional interference with contractual relations, a plaintiff must show: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach of disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). Similarly, a claim for tortious interference with prospective economic advantage must allege: (1) an economic relationship "containing the probability of future economic benefit"; (2) knowledge by the defendant of the relationship; (3) acts by defendant to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages proximately caused by the defendant. *Della Penna v. Toyota Motor Sales U.S.A., Inc.*, 11 Cal. 4th 376, 380 n.1 (1995).

Here, 7EDU alleges a fifth cause of action for intentional interference with contractual relations with respect to its existing clients and its employees, and alleges a sixth cause of action

for interference with prospective economic advantage with respect to its existing and propsoective clients.

In *Henry Schein Inc v. Cook*, Case No. 16-cv-03116-JST, 2017 WL 783617, at *4 (N.D. Cal. Mar. 1, 2017), the defendant engaged in wrongful conduct during her employment with plaintiff, including soliciting customers to move their business. The Court noted that since the complaint did not allege that the defendant relied on any misappropriated data when she took these separate wrongful actions, the tortious interference claim was not displaced or preempted by the CUTSA. *See SMC Networks, Inc. v. Hitron Techs. Inc.*, Case No. SACV 12-1293-JLS (RNBx), 2013 WL 12114104, at *11 (C.D. Cal. Nov. 13, 2013) (CUTSA does not preempt a claim for interference with economic advantage where the claim is predicated on a defendant's wrongful conduct separate from trade secret misappropriation).

With respect to 7EDU's existing and prospective clients, as in *Henry Schein*, 7EDU alleges the following wrongful conduct separate from defendants' trade scret misappropriation: (1) Defendant Qu, knowing that she planned to resign days later, requested to take over Defendant You's accounts in collaboration with Defendant You, so that they could try to bring these clients over to Defendant Ignision (FAC ¶ 64); (2) Defendant You sabotaged 7EDU's social media account while employed by 7EDU (FAC ¶ 70); and (3) that during their employment with 7EDU, Defendants You, Qu, and Li misdirected all social media leads to Defendant Li, failed to complete client counseling notes and updates, and failed to transition students to active counselors at 7EDU (FAC ¶ 128). The FAC alleges that this separate wrongful actions resulted in several clients terminating their agreements with 7EDU and other lost business opportunities (FAC ¶ 129, 131, 136, and 138). As with *Henry Schein*, since the complaint alleges separate wrongful actions, the tortious interference claims with respect to the existing and prospective clients are not displaced or preempted by the CUTSA.

With respect to 7EDU's employees, 7EDU alleges that defendants misdirected all social media sales leads to Defendant Li instead of other employees and failed to transition students to active counselors working at 7EDU, causing at least one employee to terminate her agreement with 7EDU. FAC ¶¶ 128-129. Since this separate wrongful conduct did not involve the

misappropriation of trade secrets, the intentional interference claim is also not superseded with respect to 7EDU's employees.

**2. 7EDU states a claim for unfair competition.**

The California Unfair Competition Law ("UCL") provides a remedy for any person or entity injuried by any "unlawful, unfair or fraudulent practice." Cal. Bus. & Prof. Code §§ 17200-17210. The FAC contains several allegations, such as misdirecting 7EDU payments to Defendant You's personal bank account (FAC ¶ 70), sabotaging 7EDU's social media account (FAC ¶ 77), misdirecting all social media leads to Defendant Li, failing to complete client counseling notes and updates, failing to transition students to active counselors at 7EDU (FAC ¶ 128), and making false representations on Defendant Ignision's website (FAC ¶ 72). Thus, the unfair competition claim is not superseded or preempted because it contains allegations separate from defendants' misappropriation of trade secrets. *See Angelica Textiles Serve., Inc. v. Park*, 220 Cal. App. 4th 495, 499 (Cal. Ct. App. 2013) (CUTSA does not preempt an unfair competition claim based on wrongful conduct independent of the trade secret misappropriation).

Accordingly, 7EDU has alleged tortious interference and unfair competition claims.

**D. 7EDU has adequately pledged conversion and money had and received.**

7EDU's FAC alleges that, several months before she resigned from employment with 7EDU, Defendant You began acting as though 7EDU's property was her own – including by outright theft. *See* FAC ¶ 70. The allegations are simple: You was working with a company that had contracted with 7EDU. *Id.* 7EDU issued invoices to the partner company. You instructed the partner to pay the amount due on the invoices directly to her. She received the payments, totaling $8,183.11, and never turned this money over to 7EDU. *Id.* These allegations are sufficient to state causes of action for both conversion and money had and received. 7EDU had a right to the value it was owed under its contract with the partner (the plaintiff's right to the property), Defendant You took and kept the payments (disposed of the property in a manner inconsistent with 7EDU's rights), and 7EDU was damaged because it never received payment – thus meeting the requirements for a conversion claim. *See Taylor v. Google LLC*, Case No. 22-16654, 2024 WL 837044, at *1 (9th Cir. 2024). Likewise, 7EDU has stated a claim for money had and received

because these allegations are sufficient to raise a facially plausible claim that Defendant You received money intended to be used for the benefit of 7EDU, and that the money was not given to 7EDU. *Avidor v. Sutter's Place, Inc.*, 151 Cal. Rptr. 3d 804, 816 (2013) (noting that a claim for money had and received is stated "wherever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter").

Defendants argue that these claims are not sufficiently pled because 7EDU did not allege the value of the invoices issued, or allege that the values You received match the value of the invoices. In this case, it is Defendants' argument that is not facially plausible. In fact, the very authorities Defendants cite in support of their argument show that it must fail. In *Taylor v. Google*, the Ninth Circuit reversed dismissal of a conversion claim based on alleged unauthorized use of cellular data by Google, holding that "cellular data is capable of precise definition*." Taylor v. Google*, 2024 WL 837044, at *1. The upheld allegation simply stated "Plaintiffs have property interests in the cellular data allowances that they purchase from their mobile carriers." *Taylor v. Google LLC*, Case 5:20-cv-07956-VKD, Dkt. 1 (Complaint) at 20. Equally implausibly, and without support, Defendants argue that 7EDU's conversion claim is insufficient because it fails to demonstrate that the money "was intended to be used for 7EDU's benefit." 7EDU's allegations about payments owed to it are more concrete than the "property interests" asserted in *Taylor*, and more than sufficient to raise the basis for this claim beyond the speculative.

**E. 7EDU states claims for breach of the duty of loyalty and fiduciary duty.**

7EDU states claims for breach of the duty of loyalty against all of the individual Defendants, and the claim for breach of fiduciary duty against Defendant You. Regarding the breach of the duty of loyalty, Defendants admit that under California law, "employees owe a duty of undivided loyalty to their employer during the term of employment." Mot. at 16, citing *Fowler v. Varain Assocs., Inc.*, 196 Cal. App. 3d 34, 41 (Cal. App. 6 Dist. 1987). The Fowler decision also holds that "California law does not authorize an employee to transfer his loyalty to a competitor." *Id*. at 41. The FAC is filled with allegations of the Defendants "transferring loyalty" from 7EDU to their new, competing venture, Ignision. These include Defendant You stealing money owed to 7EDU and failing to perform key job functions like updating counseling notes;

Defendant Qu asking to take over the counseling work from You after she resigned, waiting until 7EDU transitioned students to her, and then announcing her own resignation (with no notice); and Defendants Li and You conspiring to direct all social media marketing leads away from other 7EDU employees and solely to Defendant Li. Defendants argue that "nowhere in the complaint is there an allegation that this supposed conduct occurred during the employment of Defendants." This is incorrect. All of these activities are alleged to have happened during Defendants' employment with 7EDU. *See* FAC ¶ 21 (describing You's acts starting in "mid-2023"), ¶ 22 ("starting in mid-July, 2023, all marketing leads . . . would be delivered exclusively to Defendant Li"), ¶ 64 ("The following day [December 6, 2023, 8 days before her resignation], Defendant Qu . . . offer[ed] to take over the clients" from You).

Likewise, the same allegations (as to You) are sufficient to allege a breach of her fiduciary duty to 7EDU. As Chief Operating Officer and Sales and Marketing Director, Defendant You held sufficiently senior positions that she owed fiduciary duties as a matter of law. *Los Angeles Mem'l Coliseum Com. v. Insomniac, Inc.*, 233 Cal. App. 4th 803, 834 (Cal. Ct. App. 2015) ("officers of corporations who participate in the management of the corporation are considered fiduciaries as a matter of law") (internal citations omitted). The allegations against You establish that she breached those duties while employed at 7EDU, and caused 7EDU damages as a result. This is sufficient to state a claim.

**F. 7EDU states claims for false advertising under 15 U.S.C. § 1125(a) and Cal. Bus & Prof. Code § 17500.**

The Motion challenges 7EDU's causes of action for false advertising under the Lanham Act (15 U.S.C. §1125(a)) and California's False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500) on the grounds that the FACdoes not "identify any facts that would support the conclusion that any such 'lost sales' were the result of the alleged 'false advertising,' as opposed to any other possible cause." Mot. at 17.

As an initial matter, "a competitor need not prove injury when suing to enjoin conduct that violates section 43(a)." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (citing *Harper House, Inc. v. Thomas Nelson, Inc.,* 889 F.2d 197, 210 (9th Cir. 1989)).

However, here, 7EDU has alleged injury-in-fact. A party may show its injury "by creating a chain of inferences showing how defendant;s false advertising could harm plaintiff's business." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011). "Evidence of direct competition is strong proof that plaintiffs have a stake in the outcome of the suit, so their injury isn't conjectural or hypothetical." *Id.* at 825-826.

In *Scilex Pharm. Inc. v. Sanofi-Aventis U.S. LLC*, Case No. 21-cv-01280-JST, 2021 WL 11593043, at *3 (N.D. Cal. Aug. 16, 2021), the Court held that the plaintiff adequately pled an injury-in-fact for both Lanham Act and FAL claims through a chain of inferences because it alleged that it competed with the defendant company for customers and that the false advertising deceived customers into buying the defendant's product instead of the plaintiff's product. Similarly, here, 7EDU adequately pled an injury-in-fact through a chain of interences because it alleged that Ignision competes with 7EDU, and that the false advertising deceived potential clients into purchasing Ignision's services instead of 7EDU's services. Importanly, a plaintiff is not required to show that the defendant's advertisements were the only reason for plaintiff's reduced sales. *See Scilex*, 2021 WL 11593043, at *4 (the fact that plaintiff may have also lost profits as a result of other market forces does not undermine plaintiff's allegations that it lost profits because consumers bought defendant's product instead of plaintiff's product because they were misled by defendants' false advertising).

Moreover, the summary judgment case cited by the Motion, *Southland Sod Farms*, notes that "an inability to show actual damages does not alone preclude a recovery under section 1117" and that "the preferred approach allows the district court in its discretion to fashion relief, including monetary relief, based on the totality of the circumstances." 108 F.3d at 1146 (citing *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400 (9th Cir. 1993)).

Thus, 7EDU has alleged Lanham Act and FAL claims.

**G. Any dismissal should be with leave to amend.**

"Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires,' bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lesnik v. Eisenmann SE*,

374 F. Supp. 3d 923, 938 (N.D. Cal. 2019). "Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith." *Id.* (citing *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)). None of the reasons for denying leave to amend exist in this case. Thus, to the extent that the Court is inclined to grant Defendants' Motion to Dismiss as to any of the causes of action in the FAC, it should do so with leave to amend.

## V. CONCLUSION

Defendants vastly overreach in arguing that all 15 causes of action in Plaintiff's 42-page First Amended Complaint are conclusorily pled and should be dismissed with prejudice. It is Defendants' arguments that are conclusory and unsupported. Their motion should be denied.

DATED: June 7, 2024 Hawkinson Yang LLP

By: /s/ Elena DiMuzio

David Yang
Matt Hawkinson
Kevin Goldman
Sharlene Lee
Elena DiMuzio

Attorneys for Plaintiff
7EDU Impact Academy Inc.