Michael N. Cohen (Cal. Bar. No. 225348)
*mcohen@cohenip.com*
COHEN IP LAW GROUP PC
9025 Wilshire Blvd., Suite 301
Beverly Hills, California 90211
Tel: 310-288-4500
Fax: 310-246-9980

Attorney for All Defendants

Jason P. Tortorici (Cal. Bar. No. 207972)
*jpt@schillecitortoricilaw.com*
SCHILLECI & TORTORIC
21361 Pacific Coast Highway Suite A
Malibu, CA 90265
Tel: 424-255-6009
Fax: 205-623-3700

Attorneys for Defendants:
Ignision Education Silicon Valley, Amy Qu, and Ya You

*Additional Counsel Listed on Signature Page*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| 7EDU IMPACT ACADEMY INC., a California Corporation,<br><br>　　　　　　　　Plaintiff,<br><br>　vs.<br><br>YA YOU, an individual; AMY QU (a.k.a. AIMEE QU), an individual; YAYI LI, an individual; IGNISION EDUCATION SILICON VALLEY, a California corporation; and DOES 1-10, inclusive,<br><br>　　　　　　　　Defendants. | Case No.: 5:24-cv-1708-EJD<br><br>**JOINT STATEMENT REGARDING DISCOVERY DISPUTES** |

Pursuant to paragraph 8 of the Court's Civil and Discovery Referral Matters Standing Order, the parties provide this joint statement.  Counsel for the parties met and conferred by Zoom on August 28, 2024, September 4, 2024, September 26, 2024, October 1, 2024, and November 5, 2024, and were unable to resolve the issues below.  The number of days remaining before the close of fact discovery: 275 (Fact discovery cut-off is August 22, 2025); Trial Setting Conference is set for December 11, 2025.

**1.    Unresolved Issues**:

*Issue No. 1: Identification of Trade Secrets*.  Whether Plaintiff 7EDU's trade secret designation (Ex. 1 (Plaintiff 7EDU's "Trade Secret Designation")) meets the requirements of California Code of Civil Procedure § 2019.210 ("Section 2019.210").

*Issue No. 2: "Expedited" Discovery*.  Whether Defendants may withhold discovery that the parties agreed to "expedite" during an in-person conference with Judge Davila on April 4, 2024 until Plaintiff further updates its Designation of Trade Secrets to Defendants' satisfaction.  *See* Exs. A-B (Charts showing Expedited Requests for Production and Interrogatories to Defendant Qu, responses, and proposed compromises).

*Issue No. 3: Non-Trade-Secret Discovery.*  Whether Defendants may withhold discovery on non-trade-secret based claims.  *See* Exs. C (chart showing Plaintiff's first set of Requests for Production to Defendant Ignision, responses, and proposed compromises), D-F (charts showing Plaintiff's Second Set of Requests for Production to all individual Defendants, responses, and proposed compromises).

**2.    Each Party's Proposed Compromise**:

   a.    ***Issue No. 1: Identification of Trade Secrets***

      1.    *Defendant Ignision's Proposed Compromise*

Defendant Ignision proposes that Plaintiff 7EDU serve a trade secret designation that complies with Section 2019.210 within 7 days.  Thereafter, Defendant Ignision will supplement its discovery responses within 30 days.

Plaintiff 7EDU and Defendant Ignision are both small businesses that provide private

JOINT STATEMENT REGARDING DISCOVERY DISPUTES
5:24-cv-1708-EJD                                                     1

1 tutoring and college admission counseling. Plaintiff 7EDU alleges that Defendant Ignision hired some of its former employees and that some of Plaintiff 7EDU's students transferred to Defendant Ignision. Plaintiff 7EDU also alleges that Defendant Ignision misappropriated trade secrets related to Plaintiff 7EDU's tutoring and college counseling business.

The parties have encountered a significant dispute regarding Plaintiff 7EDU's identification of its trade secrets. Section 2019.210 provides that, "in any action alleging the misappropriation of a trade secret. . ., before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity."

Here, Plaintiff 7EDU's Trade Secret Designation does not comply with Section 2019.210 because none of its "categories" identify any trade secret with reasonable particularity. It is well-settled that "the plaintiff 'should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade.'" *Inteliclear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020) ("Plaintiffs may not simply rely upon 'catchall' phrases or identify categories of trade secrets they intend to pursue at trial.") *citing Imax Corp. v. Cinema. Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998) (Plaintiffs must "clearly refer to tangible trade secret material" instead of referring to material "which potentially qualifies for trade secret protection.").

As an initial matter, Plaintiff 7EDU's Trade Secret Designation is so vague and non-specific that it is not marked as "confidential" and it has not been filed under seal. Ex. 1 ("Trade Secret Designation"). This alone "belies the proposition that it contains information specific enough to be considered 'confidential' trade secrets." *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1112 (N.D. Cal. 2016) ("Section 2019.210 does not expressly require a plaintiff alleging a CUTSA claim to file the trade secret disclosure under seal. However, the statute contemplates the need for such a procedure by providing that 'a party alleging . . . misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code [concerning protective orders].'").

But even if Plaintiff 7EDU's Trade Secret Designation were labeled "confidential," it would

JOINT STATEMENT REGARDING DISCOVERY DISPUTES
5:24-cv-1708-EJD                                                        2

1  not comply with Section 2019.210 because it identifies general categories of information that any
2  college counseling business would likely possess. Indeed, five of Plaintiff 7EDU's eight categories
3  are identified solely as generic business information for a student tutoring service: No. 1 ("Customer
4  contact information for students and parents"), No. 3 ("Customer contracts"), No. 4 ("Prospective
5  customer information"), No. 5 ("Instructional development materials"), and No. 8 ("student essays").
6  And for two of the remaining categories, which identify information in reference to Plaintiff 7EDU,
7  the identification is not limited to information that originated from Plaintiff 7EDU. Indeed,
8  categories 2 and 6 refer to information "for 7EDU's students" and "for 7EDU contractors and
9  employees." But, if Plaintiff 7EDU's complaint is to be believed, some former 7EDU students and
10 employees are now associated with Defendant Ignision. And, as such, Defendant Ignision would
11 likely have substantial information of its own "for" those 7EDU students and employees that did not
12 originate from Plaintiff 7EDU.

13         Plaintiff 7EDU's alleged trade secret Number 7 highlights the problem. Although 7EDU
14 refers to this category as "7EDU strategic business plans and financial information," Plaintiff
15 7EDU's definition of this category is comprised entirely of generic descriptions of information that
16 any tutoring service would possess: "[s]chedules of classes and events, specific features and benefits
17 for different subscription levels, pricing strategy and discounts, and minimum numbers of students
18 required to meet revenue goals." These descriptions are "so broad that they could apply to any
19 company" in the student counselling business. *Albert's Organics, Inc. v. Holzman*, 2020 U.S. Dist.
20 LEXIS 135492, *9, 2020 WL 4368205 (N.D. Cal. 2020) ("plaintiff's trade secret designation does
21 not meet the reasonable particularity standard [because it describes the trade secrets as] '[p]roduct
22 inventory and sales pricing information,' '[p]ricing and financing resources, and terms and
23 conditions,' and '[p]otential venture partners.'"). Instead of referring generally to, for example,
24 "schedules of classes," Plaintiff 7EDU should provide a concrete description of what its allegedly
25 trade secret "schedules" actually are.

26         In its section below, Plaintiff 7EDU does not contend that the broad categories identified in
27 its Trade Secret Designation meet the "reasonable particularity" requirement of Section 2019.210.
28

JOINT STATEMENT REGARDING DISCOVERY DISPUTES
5:24-cv-1708-EJD                                    3

1   Instead, Plaintiff 7EDU contends it has complied with the statute by "producing and citing
2   documents containing this information." *See Below* at 5 ("While Defendants argue that the
3   categories of information cited are overly broad, they ignore the documents cited and produced.").
4   But the Ninth Circuit has specifically rejected this approach: "[i]t is inadequate for plaintiffs to 'cite
5   and incorporate by reference hundreds of documents that purportedly reference or reflect the trade
6   secret information.'" *Inteliclear*, 978 F.3d 653, 658.  And for one of the "trade secret" categories—
7   No. 4—Plaintiff 7EDU <u>does not identify any documents at all</u> and concedes that "Plaintiff cannot
8   identify the specific information that was taken for this category." *See Below* at 6.

9         The problem here is compounded by the fact that Plaintiff 7EDU cites 2,337 pages of
10  documents.  While some of these may "contain" some trade secret information, they also
11  undoubtably contain substantial amounts of additional information that is not trade secret.  And the
12  lack of "reasonable particularity" in Plaintiff 7EDU's approach is illustrated by Plaintiff 7EDU's
13  citation of the same 291 pages of documents in support of two different trade secret categories. *See*
14  Trade Secret Designation at 2-3 (identifying documents bearing production numbers
15  "7EDU_0000185-268; 7EDU_0000284-306; 7EDU_0000361-527" as "containing" trade secret
16  categories 1 and 2).  Ultimately, the question is: how are the Court and Defendant Ignision supposed
17  to determine what among the thousands of pages of documents referenced by Plaintiff 7EDU
18  describes any particular trade secret?  The answer is that they cannot until Plaintiff 7EDU provides
19  a description of its trade secrets that complies with Section 2019.210.

20        One of Defendant Ignision's concerns is that Plaintiff 7EDU wants to snoop around in
21  Defendant Ignision's document production in the hopes of finding something it can claim as a trade
22  secret of its own.  But this is exactly what Section 2019.210 was enacted to prevent.  *Alphonso Inc.*
23  *v. Tremor Video, Inc.*, 2022 WL 17968081, *7-8 (N.D. Cal. 2022) ("One of the touchstone goals of
24  the § 2019.210 disclosure is to prevent plaintiffs from engaging in a 'shifting sands' strategy wherein
25  they 'allege secrets vaguely, discover what is in the defendant's possession, and claim it was a trade
26  secret all along.'")  "Imprecise disclosures cut to the heart of the statute's goal by preventing
27  defendants from ascertain[ing] at least the boundaries within which the secret lies." *Alta Devices,*
28  

JOINT STATEMENT REGARDING DISCOVERY DISPUTES
5:24-cv-1708-EJD                                         4

*Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018).

As can be seen in the sections below, Plaintiff 7EDU has insisted that Defendant Ignision produce discovery in response to discovery requests that Plaintiff 7EDU claims are "not specific to 7EDU's trade secret claims." But this approach begs the question: how can the Court and the Defendant tell which discovery requests are "not specific" to the trade secrets when Plaintiff 7EDU has not adequately identified the trade secrets? Indeed, "[t]he letter and spirit of section 2019.210 require the plaintiff, subject to an appropriate protective order, to identify or designate the trade secrets at issue with sufficient particularity to limit the permissible scope of discovery." *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (2005) ("The trade secret designation mandated by section 2019.210 . . . limits the scope of discovery in much the same way as the allegations of a complaint limit discovery in other types of civil actions."). Put simply, without compliance with Section 2019.210, there is no principled way to "limit" discovery as Plaintiff 7EDU suggests.

2. *Plaintiff 7EDU's Proposed Compromise*

Defendant Qu shall respond to "expedited" discovery within one week; Defendants shall respond to discovery relating to claims unrelated to trade secrets within one week; Defendants shall respond to all trade-secret-related discovery requests within one week, and complete their production by January 24, 2025.

*Plaintiff 7EDU's Trade Secrets Are Adequately Disclosed*

Plaintiff 7EDU has disclosed its claimed trade secrets with "reasonable particularity" by describing the categories of claimed secret information, and producing and citing documents containing this information. This disclosure will "allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits." *Advanced Modular Sputtering, Inc. v. Superior Ct.,* 132 Cal. App. 4th 826, 836, 33 Cal. Rptr. 3d 901, 908 (2005). For example, for trade secret three ("Customer Contracts"), Plaintiff 7EDU has produced and cited the active student contracts that existed at the time the three individual defendants

resigned from 7EDU. These students include many whom the Defendants improperly used 7EDU's trade secret information to solicit to move to their newly-formed company, Ignision. Thus, the universe of claimed secret information is finite and clear. Likewise, for trade secret six, Plaintiff has cited a single spreadsheet containing individual compensation information to define the claimed secret. One of the Defendants accessed this document during her last hours of employment with 7EDU despite having no valid work-related reason to do so, while she was neglecting to do other necessary transition work she had promsied to complete. The claimed information is specifically defined by the cited document. While Defendants argue that the categories of information cited are overly broad, they ignore the documents cited and produced which provide clear boundaries for the claimed secrets, and easily distinguish between information originating from 7EDU and information originating from Ignision.

The only trade secret for which Plainitff has not disclosed documents is category four. As the First Amended Complaint explains in detail (*see* Dkt. No. 38, ¶¶ 21-22), Plaintiffs allege that at least two of the Defendants misappropriated prospective new business leads during their employment with 7EDU, and never shared these leads with 7EDU. Accordingly, Plaintiff cannot identify the specific information that was taken for this category.

Defendants argue, above, that Plaintiff's secrets are "identified solely as generic business information," and that they have no way to distinguish between Ignision's information and that which originated from 7EDU. This is simply untrue. Plaintiff has identified specific documents containing its claimed trade secrets. Defendants can and should search for information in their possession, that originated from Plaintiff 7EDU, based on Plaintiff's disclosures of its internal documents. Defendants largley ignore Plaintiff's cited documents in their argument, and apparently did not review the information cited, as they asked to submit this dispute to the Court before having received access to Plaintiff's full production. Plaintiff has identified its trade secret information in a way that is adequate to put the Defendants on notice of Plaintiff's claims, which is all that is required at this stage. *See Advanced Modular Sputtering, Inc. v. Superior Ct.,* 132 Cal. App. 4th 826, 836, 33 Cal. Rptr. 3d 901, 908 (2005) (holding that the 2019.210 disclosure should

be "reasonable, *i.e.,* fair, proper, just and rational" in order to put the opposing party and the court on notice of the scope of discovery required). Defendants argue that Plaintiff 7EDU's disclosure is inadequate because it combines defined categories of information and documents containing that information, but the cited cases instead hold that "merely list[ing] hundreds of documents that allegedly 'reflect'… trade secrets" without "provid[ing] any assistance on where in those documents the trade secrets can be found" is inadequate to distinguish the claimed secrets from general knowledge. *X6D Ltd. v. Li-Tek Corps. Co.*, No. CV102327GHKPJWX, 2012 WL 12952726, at *8 (C.D. Cal. Aug. 27, 2012) (quoted above and in *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020). Instead, 7EDU has cited, for example, documents with students' names and contact information (from trade secret category one) to show the source and details of of the claimed names and contact information. This disclosure is neither vague nor hard to understand. Finally, Defendants' argument that Plaintiff has provided its trade secret information without confidentiality designations, and therefore waived trade secret protections, is false. Plaintiff's document production has been designated as confidential information under the Protective Order in this case.

Accordingly, Defendants should begin responding to Plaintiff's discovery requests (Exs. C-F) within one week, and should substantially complete their production by January 24, 2025, in advance of the February 5, 2025 Settlement Conference.

    b.    *Issue No. 2: "Expedited" Discovery*

        1.    *Defendants Should Produce "Expedited" Discovery Now*

Defendant Qu downloaded over 800 documents from 7EDU's secure server to her personal laptop hours before she left Plaintiff's employment, without advance notice, to form a competing company with other former 7EDU employees. *See* FAC , Dkt. 38 ¶ 23. Shortly after Plaintiff filed its original Complaint, during an in-person conference with Judge Davila, the parties agreed to engage in "expedited" discovery to help assess the merits of the case and the need for a permanent injunction. *See* Dkt. No. 28 at 51:10-20. Defendant Qu's initial responses to these requests, served on May 1, 2024, contained no substance, but offered to meet and confer, and noted that "any items

JOINT STATEMENT REGARDING DISCOVERY DISPUTES
5:24-cv-1708-EJD                              7

that may be responsive to this request would be located on Defendant [Qu's] laptop. The Parties are currently discussing the retention of a forensic vendor to search said laptop, which will impact the scope of this request." *See, e.g.*, Ex. A.

The parties agreed to split the expense of hosting Qu's laptop and an image of her personal email, and agreed on search terms tailored to find highly relevant documents:

- the names of twelve of 7EDU's students and teachers that Ignision successfully solicited
- emails between the personal email accounts of the individual Defendants mentioning 7EDU, its founder Jun Liu, or Ignision
- titles of specific documents that Defendant Qu downloaded from 7EDU to her laptop

Defendants are now refusing to commit to a date for substantively responding to these requests, stating that the discovery is premature until Defendants accept Plaintiff's trade secret disclosure. But the parties agreed to this process, including sharing the expense of hosting and searching the data, months before full discovery opened. Defendants note that Judge Davila has not ruled on Defendants' deficient responses as though this blesses their behavior; but Judge Davila referred discovery disputes to this Court, and 7EDU believed (until Defendants' recent change of position) that Defendants would honor their agreement to produce this information. Defendant Qu should produce the documents identified through searching her laptop and email without further delay. *See* Exs. A-B (charts summarizing expedited requests, responses, and compromises).

        2.      *Defendant Ignision's Proposed Compromise*

Defendant Ignision proposes that Plaintiff 7EDU serve a trade secret designation that complies with Section 2019.210 within 7 days. Thereafter, Defendant Ignision will supplement its discovery responses within 30 days.

As an initial matter, Defendant Ignision disputes Plaintiff 7EDU's assertion in its Complaint that one of the defendants "downloaded over 800 documents" containing Plaintiff 7EDU's trade secrets. Defendant Ignision has not yet filed an answer in this case and it will respond to the allegations in Plaintiff 7EDU's Complaint in due course.

Moreover, Defendant Ignision has complied with all its obligations regarding "expedited"

discovery, including by (1) responding to Plaintiff 7EDU's "expedited" discovery requests, (2) producing documents in response to those requests, and (3) producing documents from Defendants' private messaging apps based on search terms provided by Plaintiff 7EDU, (4) surrendering its laptop and email accounts to a neutral discovery vendor, (5) agreeing to pay half of the fees for the neutral discovery vendor, and (6) agreeing with Plaintiff 7EDU on the search terms to be applied by the neutral vendor in processing the laptop and email accounts.

Plaintiff 7EDU points to no order of the Court or stipulation of the parties that Defendant Ignision has violated or that would suggest that Section 2019.210 would not apply to this case. The parties submitted multiple joint status reports—and Judge Davila issued multiple orders—regarding the progress of the expedited discovery. And at no time did Plaintiff 7EDU report, or did Judge Davila find, that Defendant Ignision was in violation of any obligation regarding "expedited" discovery. Doc. 35 (5/8/2024 Joint Status Report on Expedited Discovery), 37 (5/8/2024 Order re Joint Status Report), 50 (6/14/2024 Joint Status Report on Expedited Discovery), 55 (8/16/2024 Joint Status Report on Expedited Discovery and Order), 61 (8/16/2024 Joint Status Report on Expedited Discovery and Order).

The time has now come for Plaintiff 7EDU to comply with Section 2019.210. Defendant Ignision should not be required to produce all its confidential information to Plaintiff 7EDU so that Plaintiff 7EDU can sift through it and identify information it now wants to claim as its own trade secrets. *Loop AI Labs Inc.*, 195 F. Supp. 3d at 1117 ("section 2019.210 prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets . . . [and] prevents plaintiff from conducting 'fishing expeditions' into competitors' business files.'"). Plaintiff 7EDU should first identify its trade secrets with "reasonable particularity" as required by the statute.

    c.    ***Issue No. 3: Non-Trade-Secret Discovery***

        1.    *Defendants Should Respond to Non-Trade-Secret-Related Claims Now*

Defendants have refused to respond to all regular (non-expedited) discovery requests, on the basis that Plaintiff's Trade Secret Disclosures are insufficient. *See* C-F (Defendants' responses to regular (non-expedited) discovery requests). These responses were due September 23, 2024.

Without having moved for a stay of discovery, Defendants have imposed one for themselves. However, Plaintiff's FAC includes multiple claims that do not relate to trade secret misappropriation. Two of Plaintiff's claims relate to theft of money. *See* FAC, Dkt. 38, Claims 7-8. Two additional claims relate to false and misleading advertising by Defendants. *See* FAC , Dkt. 38, Claims 13-14. Section 2019.210 states that only discovery *relating to the trade secret* is stayed pending adequate disclosure of the trade secret. *See Loop AI Labs Inc v. Gatti,* No. 15-CV-00798-HSG(DMR), 2015 WL 9269758, at *4 (N.D. Cal. Dec. 21, 2015) (staying discovery only as to trade secret claims, pending adequate trade secret disclosure). Accordingly, there is no basis to resist discovery regarding claims distinct from trade secret misappropriation. Judge Davila has issued a case schedule, and based on the parties' stipulation, ordered this matter to a Settlement Conference before this Court on February 5, 2025. To prepare for this conference and to make progress in the litigation, discovery must progress. Defedants' responses to discovery requests relating to the non-trade-secret-based claims are seriously overdue, and Defendants should search for and produce information relating to these claims without further delay. *See* Exs. C-F (Charts summarizing requests, responses, and proposed compromises).

2. *Defendant Ignision's Proposed Compromise*

Defendant Ignision proposes that Plaintiff 7EDU serve a trade secret designation that complies with Section 2019.210 within 7 days. Thereafter, Defendant Ignision will supplement its discovery responses within 30 days.

The burden should not be on Defendant Ignision or the Court to identify which discovery requests may, or may not, relate to Plaintiff 7EDU's trade secrets. "[T]he burden is on the trade secret claimant to provide a level of detail adequate to distinguish the subject information from general knowledge or knowledge of skilled persons." *Brescia v. Angelin*, 172 Cal. App. 4th 133, 147 (2009) ("section 2019.210 was intended to require the trade secret claimant to identify the alleged trade secret with adequate detail to allow the defendant to investigate . . . and to allow the court to craft relevant discovery."). Accordingly, Plaintiff 7EDU should serve a trade secret designation that complies with Section 2019.210 prior to the parties commencing further discovery.

| | | |
|---|---|---|
| 1 | DATED: November 20, 2024 | Hawkinson Yang LLP |
| 2 | | By:     /s/ Elena DiMuzio |
| | | David Yang |
| 3 | | Matt Hawkinson |
| 4 | | Kevin Goldman |
| | | Sharlene Lee |
| 5 | | Elena DiMuzio |

Attorneys for Plaintiff
7EDU Impact Academy Inc.

By:     /s/ Perry Clark

MICHAEL N. COHEN (Cal. Bar. No. 225348)
mcohen@cohenip.com
9025 Wilshire Blvd., Suite 301
Beverly Hills, California 90211
Telephone: (310) 288-4500
Facsimile: (310) 246-9980

Attorney for All Defendants

Jason P. Tortorici (Cal. Bar. No. 207972)
*jpt@schillecitortoricilaw.com*
SCHILLECI & TORTORIC
21361 Pacific Coast Highway Suite A
Malibu, CA 90265
Tel: 424-255-6009
Fax: 205-623-3700

Attorneys for Defendants:
Ignision Education Silicon Valley, Amy Qu, and Ya You

Perry R. Clark (Cal. Bar No. 197101)
LAW OFFICES OF PERRY R. CLARK
825 San Antonio Road, Suite 201
Palo Alto, CA 94303
Telephone: (650) 248-5817
Facsimile: (650) 618-8533
Email: perry@perryclarklaw.com

Attorney for Defendant Ignision Education SiliconValley

**JOINT STATEMENT REGARDING DISCOVERY DISPUTES**
5:24-cv-1708-EJD      11