UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| 7EDU IMPACT ACADEMY INC., <br><br> Plaintiff, <br><br> v. <br><br> YA YOU, et al., <br><br> Defendants. | Case No.  24-cv-01708-EJD <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** <br><br> Re: ECF No. 42 |

Plaintiff 7EDU Impact Academy Inc. ("7EDU") brings this action against Defendants Ya You, Aimee Qu, Yayi Li[1], and Ignision Education Silicon Valley ("Ignision") (collectively, "Defendants") asserting various claims related to Defendants' alleged actions in stealing trade secret information to create a competing tutoring business.  Before the Court is Defendants' motion to dismiss 7EDU's First Amended Complaint (ECF No. 38, "FAC").  Motion to Dismiss ("Mot." or "Motion"), ECF No. 42.  Having carefully reviewed the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons stated below, Defendants' Motion is GRANTED IN PART and DENIED IN PART.

## I.    BACKGROUND

The following facts are taken from the First Amended Complaint unless otherwise noted.  Additional relevant facts are stated in Section III.

---

[1] The FAC refers to Defendant Yayi Li by shorthand as "Defendant Li" but Defendants' Motion refers to Defendant Yayi Li as both "Defendant Li" and "Defendant Yi" at times.  *Compare* FAC ¶ 9 (referring to "Defendant Li") *with* Mot. 12, 16 (referring to "Defendant Yi" and "Defendant Li").  In this Order, the Court uses only "Defendant Li" to avoid confusion.

United States District Court <br> Northern District of California

United States District Court
Northern District of California

1

### A.    The Parties

7EDU is a high-end education consulting and tutoring business based in Silicon Valley that helps students and their parents navigate the college admissions process.  FAC ¶ 1.  Defendants You, Qu, and Li are former employees of 7EDU.  *Id.* ¶ 2.  Starting at least as early as mid-2023, while they were all still employed by 7EDU, Defendants You, Qu, and Li created a plan to establish a separate business (Defendant Ignision) to compete with 7EDU.  *Id.* ¶ 3.   Defendant You resigned from 7EDU in December 2023, and Defendant Qu suggested that 7EDU transfer Defendant You's client matters to Defendant Qu.  *Id.*  Defendant Qu resigned days later, and Defendants used this as an opportunity to try to take 7EDU's clients.  Defendant Li resigned from 7EDU the day after Defendant Qu resigned.  *Id.* ¶ 66.  As part of a purported scheme to steal 7EDU's business, Defendants also reached out to students they had been working with both before and after they left 7EDU to attempt to persuade those students to move to Ignision for counseling services.  *Id.*

After their resignations, 7EDU sent Defendants You, Li, and Qu emails reminding them that student contact and other information were 7EDU's intellectual property, and that contacting 7EDU students using such information would breach their proprietary information agreements. FAC ¶ 73.  7EDU received no response from Defendants You and Li, and an email from Defendant Qu denying that she had any obligation to keep 7EDU's intellectual property confidential.  *Id.*  On December 28, 2023, 7EDU sent Defendant You a cease-and-desist letter, demanding that Defendant You cease using and disclosing 7EDU's confidential and trade secret information, and return 7EDU's information.  *Id.* ¶ 74.   7EDU sent the remaining Defendants a cease-and-desist letter on March 8, 2024.  *Id.* ¶ 75.

### B.    Procedural Background

On March 19, 2024, 7EDU filed its original complaint and an *ex parte* application for a temporary restraining order ("TRO") and a request for expedited discovery.  ECF Nos. 1, 3. Following a Status Conference on April 26, 2024, the Court issued a modified TRO and set a further hearing on 7EDU's motion.  ECF No. 18.  The subsequent hearing for the TRO took place

Case No.: 24-cv-01708-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

2

1   on April 4, 2024, in which the Court postponed any ruling on a preliminary injunction.  The

2   parties stipulated to limited expedited discovery.

3          Defendants moved to dismiss the initial complaint on April 19, 2024.  ECF No. 31.  Rather

4   than oppose the motion to dismiss, 7EDU filed the FAC on May 8, 2024.  ECF No. 38.  The FAC

5   asserts 15 causes of action, including claims for trade secret misappropriation, breach of contract,

6   conversion, and unfair competition.  Defendants filed the present motion to dismiss on May 22,

7   2024, challenging all causes of action for failure to state a claim under Rule 12(b)(6).  The motion

8   is fully briefed.  7EDU's Opposition to the Motion to Dismiss ("Opp."), ECF No. 47; Defendants'

9   Reply in Support of the Motion to Dismiss ("Reply"), ECF No. 51.

10  ## II.    LEGAL STANDARD

11         Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient

12  specificity to "give the defendant fair notice of what the ... claim is and the grounds upon which it

13  rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).

14  Although particular detail is not generally necessary, the factual allegations "must be enough to

15  raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Id.*

16  at 555, 570.  A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to

17  state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Dismissal of a claim

18  under Rule 12(b)(6) may be based on a "lack of a cognizable legal theory or the absence of

19  sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901

20  F.2d 696, 699 (9th Cir. 1988) (internal citation omitted); *see Ministerio Roca Solida v. McKelvey*,

21  820 F.3d 1090, 1096 (9th Cir. 2016).

22         Claims that sound in fraud are further subject to a heightened pleading standard.  Fed. R.

23  Civ. Proc. 9(b) ("In alleging fraud or mistake, a party must state with particularity the

24  circumstances constituting fraud or mistake."); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

25  1103–04 (9th Cir. 2003) (recognizing that claims "grounded in fraud" or which "sound in fraud"

26  must meet the Rule 9(b) pleading standard, even if fraud is not an element of the claim).  The

27  allegations must be "specific enough to give defendants notice of the particular misconduct which

28  Case No.: 24-cv-01708-EJD
    ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
                                    3

1    is alleged to constitute the fraud charged so that they can defend against the charge and not just

2    deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.

3    1985). This requires an account of the "time, place, and specific content of the false

4    representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG*

5    *LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058,

6    1066 (9th Cir. 2004)). In other words, fraud or claims asserting fraudulent conduct must generally

7    contain more specific facts than is necessary to support other causes of action. That said, with

8    respect to omissions-based fraud claims, "the pleading standard is lowered on account of the

9    reduced ability in an omission suit 'to specify the time, place, and specific content, relative to a

10   claim involving affirmative misrepresentations.'" *Barrett v. Apple Inc.*, 2021 WL 827235, at *7

11   (N.D. Cal. Mar. 4, 2021) (quoting *In re Apple & AT&T Mobility Antitrust Litig.*, 596 F. Supp. 2d

12   1288, 1310 (N.D. Cal. 2008)).

13         At the motion to dismiss stage, the Court must read and construe the complaint in the light

14   most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th

15   Cir. 1996). Additionally, the Court must accept as true all "well-pleaded factual allegations."

16   *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, "courts are not bound to accept as true a

17   legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Nor is a complaint

18   sufficient if it merely "tenders naked assertions devoid of further factual enhancement." *Iqbal*,

19   556 U.S. at 678 (internal quotation marks omitted). "In all cases, evaluating a complaint's

20   plausibility is a 'context-specific' endeavor that requires courts to draw on ... judicial experience

21   and common sense." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *Starr v.*

22   *Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). When deciding whether to grant a motion to dismiss,

23   the Court generally "may not consider any material beyond the pleadings." *Hal Roach Studios*,

24   *Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, the Court may

25   consider material submitted as part of the complaint or relied upon in the complaint and may also

26   consider material subject to judicial notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89

27   (9th Cir. 2001); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003)

28   Case No.: 24-cv-01708-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    (holding the court is "not required to accept as true conclusory allegations which are contradicted

2    by documents referred to in the complaint.").

3        If a motion to dismiss is granted, "leave to amend should be granted 'unless the court

4    determines that the allegation of other facts consistent with the challenged pleading could not

5    possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992)

6    (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

7    Leave to amend may also be denied if allowing amendment would unduly prejudice the opposing

8    party, cause undue delay, or be futile, or if the moving party has acted in bad faith.

9    *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

10   **III.    DISCUSSION**

11       Defendants move to dismiss all 15 causes of action asserted against them for failure to

12   state a claim under Rule 12(b)(6).  The Court addresses Defendants' arguments for each below.

13       **A.    Trade Secret Misappropriation Claims**

14       Defendants move to dismiss 7EDU's claims for trade secret misappropriation under the

15   Defend Trade Secrets Act ("DTSA") (FAC ¶¶ 76–92) and the California Uniform Trade Secret

16   Act ("CUTSA") (*id.* ¶¶ 93–109).

17       In order to state a claim under DTSA or CUTSA, 7EDU must allege: (1) it possessed trade

18   secrets; (2) Defendants misappropriated those trade secrets; and (3) Defendants caused or

19   threatened to cause 7EDU damage.  *See InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d

20   653, 657–58 & n. 1 (9th Cir. 2020) (noting courts have analyzed claims together based on

21   similarity of elements).  Defendants argue 7EDU cannot establish the first two elements.

22       **1.    Whether 7EDU Sufficiently Alleges It Possessed Trade Secrets**

23       The term "trade secrets" consists of three essential components: "(1) information, (2) that

24   is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret."

25   *InteliClear*, 978 F.3d at 657.  Defendants argue that 7EDU fails to sufficiently identify the trade

26   secrets at issue.  The DTSA defines a trade secret as:

27       all forms and types of financial, business, scientific, technical, economic, or

28

United States District Court
Northern District of California

engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3).  CUTSA's definition of a trade secret is similar: "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Cal. Civ. Code § 3426.1(d).

7EDU is not required to disclose the details of its trade secrets in the FAC.  However, it must include facts that "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade."  *InteliClear*, 978 F.3d at 658; *accord Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968).  In general, "allegations that set out purported trade secrets in broad, categorical terms that are merely descriptive of the types of information that generally *may* qualify as protectible trade secrets are insufficient to state a claim."  *Beluca Ventures LLC v. Einride Aktiebolag*, 660 F. Supp. 3d 898, 907 (N.D. Cal. 2023) (quoting *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1048 (N.D. Cal. 2020) (emphasis in *Cisco*)).

Examples of such "broad, categorical" terms are: "source code, customer lists and customer related information, pricing information ... marketing plans and strategic business development initiatives ...;" "data on the propagation of radio signals from stratospheric balloon-based transceivers;" and "marketing strategy, product composition, packaging and manufacturing logistics" are too general to state a claim.  *Cisco*, 462 F. Supp. 3d at 1048 (citations omitted); *see also Ross v. Abbott Vascular, Inc.*, No. 19-cv-3794-JST, 2022 WL 20275185, at *10 (N.D. Cal. Mar. 3, 2022) (allegations that trade secrets consist of "tangible and intangible business, scientific,

United States District Court
Northern District of California

1  and technical information in the form of training methods, techniques, processes, and written

2  materials" insufficient to state a claim).

3      7EDU identifies the following "categories" of trade secrets Defendants allegedly

4  misappropriated: pricing information, client service details, client contracts and related

5  information, client informational repositories, business development and strategy documents, and

6  instructional and counseling materials.  FAC ¶ 78.  Beyond identifying the above categories,

7  7EDU argues it has "provided detailed descriptions of exemplary documents that contain trade

8  secret information" falling in each category.  Opp. 4.  Below is a chart showing the "exemplary

9  document," the description provided in the FAC, and the category of trade secret 7EDU argues it

10  falls under.

| Exemplary Document | Description in FAC | Categories of Trade Secret Allegedly Misappropriated |
|---|---|---|
| "7EDU Console" spreadsheet | The spreadsheets contain (FAC ¶ 26):<br>• detailed plans for every week of the summer break;<br>• a "Timeline" tab, broken down by semester from the time the student starts working with 7EDU, with a summary of plans for extracurricular activities, academic courses, travel, and other development opportunities including independent projects that 7EDU advises students in selecting and completing, plus notes by 7EDU staff about counseling, advice, skills development, growth areas, and client concerns and preferences;<br>• contact information for student and parent (legal name, preferred name, email, graduation year, mailing address, place of birth, current school);<br>• a "counselor dashboard" for 7EDU staff to keep detailed notes on the student's progress in all of the areas mentioned in the Timeline plan (Academics, Community Involvement, Competition, Intellectual Curiosity, Experiential Learning, Special Talents, | Client service details, client informational repositories, clint contracts, and instructional and counseling materials |

28  Case No.: 24-cv-01708-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

| Exemplary Document | Description in FAC | Categories of Trade Secret Allegedly Misappropriated |
|---|---|---|
| | Holiday Plan), plus details about all the courses the student is taking;<br>• an "admissions" tab to track details of a student's applications to colleges and universities, with a summary of their grades on different standardized tests, their GPA, sports, volunteering, and their strengths and weaknesses;<br>• a "student dashboard" page for student updates on the categories outlined above;<br>• "Counselor Dashboard" page for more-detailed notes on all of the categories outlined above;<br>• an "Event Dashboard," listing all 7EDU-sponsored classes the student should attend<br>• "Resume" page to collect information to help build the student's resume. | |
| "Critical Reading and Writing Series Stage Plan Fall 2021-Spring 2022" | The document contains (FAC ¶ 27):<br>• tables for the course at six grade levels, specifying in detail (by week): a focus genre of writing, with detailed specifications for content to be covered, skills to be developed, and the correct assessment tool to gauge progress. | Business development and strategy documents, and instructional materials |
| " 【不对外】2023-2024 Promotion Courses and Programs 【星标】 " | The spreadsheet shows (FAC ¶ 28):<br>• 7EDU's strategic business plan for the year, including the schedule for all classes and events, specific features and benefits for different subscription levels, pricing strategy (including discounts), and details such as the minimum number of students required. | Pricing information and business development and strategy documents |
| "NEW MKT/sales/product propsal (sic)" | The spreadsheet summarizes (FAC ¶ 28):<br>• revenues from different elements of 7EDU's services, broken down by month, over the years 2022–2023, and projects revenues for new and recurring business for different types of services for 2024, with plans and action items to achieve this growth | Pricing information and business development and strategy documents |

The Court finds that 7EDU has sufficiently alleged it possessed trade secrets. 7EDU does more than rely on "catchall phrases" or on broad categories of information to describe the trade secrets. The additional descriptions of exemplary documents in paragraphs 26–28 sufficiently

1  "narrow[] the scope of information at issue in such categories to particular subjects mentioned in

2  certain documents or communications alleged in the FAC." *Cisco*, 462 F. Supp. 3d at 1049 (trade

3  secret information described with sufficient particularity where complaint narrowed categories to

4  particular subjects).  Defendants' cited authority does not change this conclusion because the trade

5  secrets at issue in those cases involve highly technical processes or designs.  *See, e.g.*, *Apple Inc.*

6  *v. Rivos Inc.*, Case No. 22-cv-02637-EJD, 2023 WL 5183034, at *5–6 (N.D. Cal. Aug. 11, 2023)

7  (involving trade secret designs for integrated circuits); *Synopsys, Inc. v. ATopTech, Inc.*, Case No.

8  C 13-cv-02965 SC, 2013 WL 5770542 at *6 (N.D. Cal. Oct. 24, 2013) (alleged trade secrets were

9  tools and software for designing complex integrated circuits).

10       As 7EDU points out, this case involves less technical alleged trade secrets, and to pass

11  muster at this stage, the question is whether the FAC's "level of detail ... is sufficient to ascertain

12  at least the boundaries within which the secrets lie and the scope of appropriate discovery." *Five*

13  *Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-CV-05611-PJH, 2020 WL 513287, at *6

14  (N.D. Cal. Jan. 31, 2020); *see also TMX Funding, Inc. v. Impero Tech. Inc.*, No. C 10-00202 JF

15  (PVT), 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010) (trade secret allegations sufficient

16  where plaintiff alleged nine categories of trade secret information, including "[i]ts business

17  methods and marketing plans, such as prospective customer and sales methods for attracting and

18  retaining customers;" and "[i]ts product information, including, but not limited to, cost, pricing,

19  margin data and other financial information").  The FAC passes that test.  Defendants appear to

20  concede so, having failed to address 7EDU's arguments on this point in reply.

21       The Court acknowledges, however, that the FAC does not explicitly limit the categories of

22  information *only* to those subjects identified in paragraphs 26–28.  *See, e.g.*, FAC ¶ 28 ("These

23  documents, *and others like them*, are valuable to 7EDU because they reflect details of its

24  confidential, competitive strategy and plans for business growth") (emphasis added).

25  Nevertheless, the Court finds that the FAC describes the claimed trade secrets with sufficient

26  particularity "to permit [Defendants] to ascertain at least the boundaries within which the secret

27  lies." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018) (quotations

28  Case No.: 24-cv-01708-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    omitted).  Further challenges to the scope of the claimed trade secrets can be raised as the case

2    develops.  Accordingly, the Court finds that 7EDU has plead its alleged trade secrets with

3    sufficient particularity.

4        Defendants also argue that 7EDU fails to allege facts that show it has taken reasonable

5    measures to keep the relevant information secret, including because there is no allegation that "any

6    of the 7EDU trade secret documents were label[sic], marked, or identified in any fashion as 'trade

7    secret' or even 'confidential.'"  Mot. 7.

8        7EDU alleges it has taken the following steps to protect the confidentiality of its alleged

9    trade secrets: "Dual-factor authentication for any remote access to 7EDU systems or databases;

10   Email and messaging vaults and account recovery; Data insight scanning and reporting;

11   Workspace audit logs; On-site security at 7EDU's office; Maintaining and disseminating a policy

12   regarding the Company's confidential and trade secret information; and Maintaining and

13   disseminating a policy which outlines Company policy and guidelines with respect to the use and

14   protection of electronic resources."  FAC ¶ 32 (cleaned up); *see also id.* ¶ 28 ("7EDU requires its

15   employees to contractually agree to protect the company's intellectual property through their

16   employment contracts and proprietary information and invention assignment agreements").  At

17   this stage, these types of actions are sufficient to establish 7EDU has taken reasonable measures to

18   keep the relevant information secret.  *See, e.g.*, *InteliClear*, 978 F.3d at 660 ("Confidentiality

19   provisions constitute reasonable steps to maintain secrecy."); *DiscoverOrg Data, LLC v. Bitnine

20   Glob., Inc.*, No. 19-cv-08098-LHK, 2020 WL 6562333, at 5 (N.D. Cal. Nov. 9, 2020) ("password

21   protection, restrictive license agreements, mail monitoring, and list protection" sufficient on

22   motion for default judgment to show "reasonable efforts" to maintain secrecy of trade secrets).

23       Defendants cite no authority for its argument that trade secret plaintiffs must allege their

24   documents are marked "confidential."  Nor does the Court find persuasive Defendants' argument

25   that 7EDU's trade secrets are not worthy of trade secret protection because the company permitted

26   Ms. Qu access to the allegedly confidential documents during her tenure with 7EDU.  The fact that

27   the company permitted its employee access to its allegedly confidential documents does not negate

28   Case No.: 24-cv-01708-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    a finding of secrecy at this stage.

2            In sum, 7EDU has sufficiently alleged it possessed trade secrets.

3            **2.    Whether 7EDU Sufficiently Alleges Misappropriation of the Trade Secrets**

4            Defendants argue that 7EDU fails to allege misappropriation of any category of trade

5    secrets. To plead misappropriation, plaintiffs must establish one of two categories of conduct:

6    (1) acquisition of the secret by improper means, or (2) disclosure or use of the trade secret without

7    consent. 18 U.S.C. § 1839(5)(A)–(B); *accord* Cal. Civ. Code § 3426.1(b); *Lamont v. Conner*,

8    2019 WL 1369928, at \*8 (N.D. Cal. Mar. 26, 2019). The DTSA defines "improper means" as

9    "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy,

10   or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A); *accord* Cal. Civ. Code

11   § 3426.1(a). Furthermore, the misappropriation may be either "actual or threatened." 18 U.S.C.

12   § 1836(b)(3)(A)(i).

13           As to Defendant You, 7EDU alleges she (1) secretly diverted all of 7EDU's social media

14   marketing leads to Defendant Li, (2) failed to update the documents 7EDU uses to track student

15   progress, (3) opened and viewed nearly 100 files from 7EDU's Google Drive, including files she

16   was supposed to update, (4) wiped her 7EDU-issued computer and phone before returning them to

17   7EDU—allegedly "in order to hide evidence of her misconduct." FAC ¶ 21. 7EDU alleges that

18   Defendant Li (1) had been issued a 7EDU-controlled WeChat account to communicate with

19   prospective clients, and (2) wiped her work laptop and phone before returning them, "making it

20   impossible for 7EDU to see or follow up on the previous six months of marketing leads." *Id.* ¶ 22.

21   Finally, Defendant Qu allegedly downloaded over 800 files from 7EDU's password-protected

22   Google Drive leading up to her departure, with most of the downloads occurring two days prior to

23   her resignation. *Id.* ¶ 23.

24           First, the allegations as to Defendant Qu are sufficient to allege that she acquired 7EDU's

25   trade secrets through improper means. The context surrounding the downloading, including the

26   alleged fact that the downloads occurred days before her departure and all at once support a

27

28   Case No.: 24-cv-01708-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    reasonable inference of misappropriation.  *See Auris Health, Inc. v. Noah Med. Corp.*, No. 22-CV-

2    08073-AMO, 2023 WL 7284156, at *4–5 (N.D. Cal. Nov. 3, 2023) (allegations, taken together

3    with broader factual context, sufficient to allege plausible claims of misappropriation where

4    former employees downloaded "dozens of documents" during the last week of employment).  One

5    day following Defendant Qu's resignation with 7EDU, Defendant Qu filed Articles of

6    Incorporation for Defendant Ignision—a competing tutoring service.  FAC ¶¶ 23–24.  Defendant

7    Qu is the Chief Executive Officer, Chief Financial Officer, and Secretary of Defendant Ignision.

8    *Id.* ¶ 24.  Taken together, these allegations are sufficient to reasonably infer that 7EDU's trade

9    secrets were at threat of disclosure or use by Defendant Qu, who downloaded hundreds of files

10    from 7EDU days before resigning and establishing a competing business.  *See Rivos*, 2023 WL

11    5183034, at *6 (misappropriation claims sufficient against defendants who allegedly "downloaded

12    and transferred several hundred gigabytes' worth of Apple confidential information to external or

13    personal drives in the days leading up to their departures" to work at a company with

14    "substantially similar roles and technology").

15         Next, the Court finds sufficient the allegations against Defendant You.  The allegations

16    that Defendant You, starting in mid-2023, failed to update documents 7EDU uses to plan and

17    monitor student progress despite promising to do so, but then opened nearly 100 files from

18    7EDU's Google Drive days prior to her departure, including those files she should have been

19    updating, followed by her erasure—despite promising to return the 7EDU devices in their original

20    condition—of all data on her work computer and phone before returning them, reasonably support

21    an inference that Defendant You improperly acquired 7EDU's trade secrets.  The FAC alleges her

22    viewing activity was "inconsistent with any of her prior work as a 7EDU employee or use of

23    7EDU's systems."  FAC ¶ 51; *see also Auris Health*, 2023 WL 7284156, at *5 (inference of

24    misappropriation supported by allegations of the "suspicious nature of [defendants'] download

25    activity, unlike their prior usage").  In addition, the fact that she started a new role at a competing

26    company shortly following the suspicious behavior suggests she, and Defendant Qu, intended to

27    use the information in their employment with Ignision.  *See Rivos*, 2023 WL 5183034, at *6 (fact

28    Case No.: 24-cv-01708-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

*United States District Court*
*Northern District of California*

that defendants "continued to work in roles that are analogous to their prior roles at Apple" supported inference that defendants "have used or are using Apple confidential information in their new roles"). Accordingly, the Court finds that the FAC alleges sufficient facts to infer that Defendants You and Qu misappropriated 7EDU's trade secrets.

The same is not true for Defendant Li. While the FAC alleges that Defendant Li deleted the data from her 7EDU phone before returning these devices to 7EDU, such conduct is not sufficient to rise to the level of misappropriation. Even assuming Defendant Li knew she was obligated to return her devices in their original condition, the FAC lacks any additional nonconclusory conduct or context that would reasonably suggest she erased the data for the nefarious purpose of helping build Ignision's business. In essence, the FAC alleges that (1) Defendant Li, as part of her employment with 7EDU, had a WeChat account to communicate with prospective clients, and (2) deleted her work devices before returning them. The FAC contains no allegations that Defendant Li's activity was out of the ordinary considering her habits or duties or that Defendant Li accessed, downloaded, or shared any files. Without more, such allegations fall short and cannot form the basis of a misappropriation claim against Defendant Li. *See Rivos*, 2023 WL 5183034, at *7 ("allegations that former employees merely possessed or failed to return lawfully acquired information are insufficient by themselves to establish misappropriation or show injury under the DTSA").

In sum, 7EDU has sufficiently alleged facts to support an inference of at least threatened misappropriation with respect to Defendants You and Qu. But the Court cannot reasonably infer that Defendant Li misappropriated 7EDU's trade secrets based on the FAC's current allegations. Defendants' motion to dismiss the misappropriation claims is therefore DENIED as to Defendants You and Qu but GRANTED WITH LEAVE TO AMEND as to Defendant Li.

### B.    Breach of Contract Claims

In addition to the misappropriation claims, 7EDU asserts a breach of contract claim against Defendants You (FAC ¶¶ 110–116) and Li (*id.* ¶¶ 117–123) for violations of their Employment Agreements (*id.* at Exs. A and C), and Employee Proprietary Information and Invention

Case No.: 24-cv-01708-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    Assignment Agreements ("PIIA") (*id.* at Exs. B, D).

2         To state a claim for breach of a written contract, 7EDU must allege: "(1) existence of the

3    contract; (2) [7EDU's] performance or excuse for nonperformance; (3) [Defendants'] breach; and

4    (4) damages to [7EDU] as a result of the breach."  *Albert's Organics, Inc. v. Holzman*, 445 F.

5    Supp. 3d 463, 476 (N.D. Cal. 2020).  Defendants challenge the last two elements: that 7EDU has

6    not alleged breach or any resulting injury.  Mot. 11–12.

7         The Court finds that 7EDU has sufficiently pled a breach of contract claim against

8    Defendant You.  First, 7EDU identifies the specific provisions it alleges have been breached.

9    FAC ¶¶ 112, 119.  At a minimum, 7EDU has stated a breach of § 29 of the Employment

10   Agreement and § 9 of the PIIA.  Section 29 of the Employment Agreement requires the Employee

11   to "turn over to the Employer all Confidential Information belonging to the Employer," including

12   "all documents, plans, specifications, passwords or other computer media, as well as any

13   duplicates or backups made of that Confidential Information in whatever form or media, in the

14   possession or control of the Employee" that may contain proprietary and confidential information

15   or "[i]s connected with or derived from the Employee's employment with the Employer."  Exs. A,

16   C § 29.  And by signing the PIIA, employees agree "to promptly return all property of the

17   Company."  Exs. B, D § 29; FAC ¶ 39.  The FAC alleges that Defendant You deleted 7EDU files

18   off her work devices and failed to return 7EDU's intellectual property after termination.

19   FAC ¶¶ 52, 114.  Given the additional context that Defendant You "viewed multiple 7EDU

20   Console documents on her last few days at work while she was neglecting important transition

21   tasks including updating those very documents" (*id.* ¶ 57), 7EDU has stated a plausible claim for

22   breach of at least the above provisions.

23        However, the FAC falls short as to Defendant Li.  As explained above, the FAC lacks

24   factual allegations with respect to Defendant Li's conduct.  At most, the FAC describes how,

25   unsurprisingly, Defendant Li had access to 7EDU's confidential information during her

26   employment and then returned her work devices with the information erased.  Although 7EDU

27   assumes Defendant Li's actions were improper and in violation of the Employment Agreement

28   Case No.: 24-cv-01708-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

and PIIA, the Court cannot determine the same based on the factual allegations before it.

As to harm, 7EDU alleges that it has lost contracts with eight clients as a result of the Defendants' actions. FAC ¶ 68. This is sufficient to plead resulting injury from the alleged breach of the Employment Agreement and PIIA.

Accordingly, Defendants' motion to dismiss the breach of contract claim is GRANTED WITH LEAVE TO AMEND as to Defendant Li but DENIED as to Defendant You.

### C.    Intentional Interference Claims

7EDU brings claims for intentional interference with contractual relations (FAC ¶¶ 124–132) and intentional interference with prospective economic advantage (*id.* ¶¶ 133–139) against all Defendants. Defendants argue both claims are preempted by CUTSA and are otherwise insufficiently plead. Mot. 12–13.

First, regarding preemption, "CUTSA provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies 'based upon misappropriation of a trade secret.'" *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010) (quoting Cal. Civ. Code § 3426.7, subds. (a), (b)) (disapproved in part on other grounds by *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 337 (2011)). CUTSA "preempts common law claims that are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." *Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*, No. 16-CV-03737-JCS, 2017 WL 412524, at *5 (N.D. Cal. Jan. 31, 2017) (internal quotations omitted). CUTSA does not supersede "other civil remedies that are not based upon misappropriation of a trade secret." Cal. Civ. Code § 3426.7. So claims which "(1) allege facts showing that the plaintiff's property right in the information at issue stems from some provision of positive law on grounds qualitatively different from grounds upon which trade secrets are considered property, or (2) allege wrongdoing materially distinct from the wrongdoing alleged in a CUTSA claim" are not preempted. *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1063 (N.D. Cal. 2017).

Here, 7EDU bases its intentional interference claims on alleged wrongful conduct that is distinct from the misappropriation. In particular, 7EDU alleges Defendant You "misdirected

United States District Court
Northern District of California

1    payments owed to 7EDU through a contract with a partner organization to her personal bank

2    account" (FAC ¶ 70) and sabotaged 7EDU's social media account by "irreversibly changing the

3    name of the account to her own handle" (*id.* ¶ 71), and Defendants "misdirect[ed] all social media

4    sales leads to Defendant Li" (*id.* ¶ 128).  These actions are separate from those alleged in

5    connection with the trade secret misappropriation—including accessing and downloading

6    confidential files.  Additionally, the impropriety of the conduct regarding the intentional

7    interference (misdirecting payments and sabotaging social media accounts) do not rely on any

8    material being deemed confidential.  In other words, misdirecting payments and sabotaging social

9    media accounts could still be wrongful and form the basis of an intentional interference claim even

10   if no confidential information was involved.

11           Accordingly, the Court declines to dismiss the intentional interference claims on

12   preemption grounds.  Turning to Defendants' other arguments regarding these claims—which

13   7EDU does not address—intentional interference requires "(1) a valid contract between [7EDU]

14   and a third party; (2) [Defendants'] knowledge of this contract; (3) [Defendants'] intentional acts

15   designed to induce a breach or disruption of the contractual relationship; (4) actual breach or

16   disruption of the contractual relationship; and (5) resulting damage."  *Pac. Gas & Elec. Co. v.*

17   *Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) (citations omitted).

18           As to its intentional interference claim, the FAC lacks sufficient specificity regarding

19   which contracts were disrupted.  7EDU alleges Defendants were aware of and disrupted "Client

20   Agreements" and "Employee Agreements."  FAC ¶¶ 127–128.  7EDU defines "Client

21   Agreements" as "valid services agreements" it had with "its clients" (*id.* ¶ 125), and "Employee

22   Agreements" as "valid employment agreements" it had with "its employees" (*id.* ¶ 126).  But these

23   allegations of "generalized disruption of contracts" are insufficient to identify "the particular

24   contracts" that were interfered with.  *Image Online Design, Inc. v. Internet Corp. for Assigned*

25   *Names & Numbers*, No. CV 12-08968 DDP JCX, 2013 WL 489899, at *9 (C.D. Cal. Feb. 7,

26   2013); *see also Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d

27   1124, 1134 (9th Cir. 2015) (affirming dismissal of tortious interference claim where plaintiff

28   Case No.: 24-cv-01708-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

"d[id] not allege any specific resultant disruption to contractual or economic relationships"); *see also Nat'l Specialty Pharmacy, LLC v. Padhye*, No. 23-CV-04357-PCP, 2024 WL 2206336, at *4 (N.D. Cal. May 16, 2024) (dismissing tortious interference with contract claim that "d[id] not specify what contracts were interfered with").

7EDU's intentional interference with prospective economic advantage claim likewise fails for similar reasons. That claim requires (1) the existence, between 7EDU and some third party, of an economic relationship that contains the probability of future economic benefit to 7EDU; (2) the Defendants' knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the Defendants' action. *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017) (quotations omitted).

The first element "has two parts: (1) an existing economic relationship that (2) contains the probability of an economic benefit to the plaintiff." *EcoHub, LLC v. Recology Inc.*, No. 22-CV-09181-TSH, 2023 WL 6725632, at *11 (N.D. Cal. Oct. 11, 2023) (quoting *Roy Allan Slurry Seal*, 2 Cal. 5th at 512). A cause of action for intentional interference "has been found lacking when either the economic relationship with a third party is too attenuated or the probability of economic benefit too speculative." *Id.* (quotations omitted). "[S]peculative expectancies" have traditionally not been protected "usually because there is no sufficient degree of certainty that the plaintiff ever would have received the anticipated benefits." *Id.* (quotations omitted).

7EDU's intentional interference with prospective business advantage claim suffers the same defect as its intentional interference with contract claim: both rely on generalized allegations regarding which prospective relationships—or contracts—were interfered with. The FAC alleges 7EDU had, and Defendants disrupted, "existing and prospective economic relationships with each of its existing and prospective clients." FAC ¶¶ 135, 136. Although 7EDU is not required at the pleading stage to identify by name the prospective clients, 7EDU is required "to identify a particular relationship or opportunity with which the defendant's conduct is alleged to have interfered." *Damabeh v. 7-Eleven, Inc.*, No. 5:12-CV-1739-LHK, 2013 WL 1915867, at *10

United States District Court
Northern District of California

(N.D. Cal. May 8, 2013); *AdTrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2018 WL 3428525, at *6 (N.D. Cal. July 13, 2018) (intentional interference with prospective economic advantage claim failed where the "FAC merely lump[ed] allegations regarding more than two hundred [sic] web publishers without pleading factual allegations as to the specific relationship between [plaintiff] and each publisher").

Accordingly, the Court GRANTS WITH LEAVE TO AMEND Defendants' motion to dismiss the intentional interference with contract and the intentional interference with prospective business advantage claims.

### D.    Conversion Claim

Next, Defendants argue that 7EDU's conversion claim should be dismissed for failing to state a claim. Mot. 14–15. California law requires "three criteria [to] be met before the law will recognize a property right." *Taylor v. Google, LLC*, No. 22-16654, 2024 WL 837044, at *1 (9th Cir. Feb. 28, 2024) (quoting *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 903 (9th Cir. 1992)). "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." *Id.*

7EDU brings its conversion claim against Defendant You for "intentionally misdirect[ing] payments from 7EDU's partner to her personal bank account, [] instructing the partner to pay their 7EDU invoices directly to her instead of paying 7EDU," keeping the payments rather than submitting them to 7EDU, and "instruct[ing] another 7EDU employee to mark the invoices as paid in 7EDU's financial system." FAC ¶ 141. The FAC identifies the amount of the allegedly misdirected payments (*id*. ¶ 142) and alleges that 7EDU "is entitled to immediate possession of the payments" (*id.* ¶ 147).

Defendants contend 7EDU fails to establish the second element because the FAC refers vaguely to marking "the invoices as paid," but does not identify the amounts of "the invoices," to whom they were issued, and by whom they were paid. Mot. 15. But the FAC does precisely identify the amounts 7EDU alleges were misdirected and when: a payment of $2,045.78 on

United States District Court
Northern District of California

September 12, 2023, a payment in the amount of $2,045.78 on September 27, 2023, and a payment in the amount of $4,091.55 on November 17, 2023. *Id.* ¶ 142. And Defendants cite no authority requiring 7EDU to identify the amount of the total invoice, as opposed to the amount misdirected, to be precisely identified. Defendants also argue that certain allegations appear inconsistent, and 7EDU has not alleged the payments were exclusively 7EDU's property. *See* Reply 5. But the claims can be explored through discovery and substantively challenged at a later date, if appropriate. And 7EDU has established a legitimate claim to exclusivity of the invoices because Defendant You was an employee of 7EDU's at the time of the alleged misconduct, 7EDU alleged the payments to Defendant You were "unauthorized," and 7EDU "did not give Defendant You permission to use or disburse this money." FAC ¶ 143.

As plead, the Court concludes that Defendants are on notice of what 7EDU alleges was misdirected and when. Accordingly, the conversion claim is sufficiently plead, and Defendants' motion to dismiss the conversion claim is DENIED.

### E.    "Money Had and Received" Claim

7EDU also brings a claim against Defendant You for "money had and received." FAC ¶¶ 149–154. "A cause of action for money had and received is stated if it is alleged [that] the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff." *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1454 (2013) (quotations omitted).

Like its challenge to 7EDU's conversion claim, Defendants argue 7EDU fails to link the allegedly "misdirected" payments to any funds that were intended for exclusive use by 7EDU. Mot. 16. The Court declines to dismiss 7EDU's "money had and received" claim on this basis. The FAC alleges that Defendant You received a certain sum of money ($8,183.11) that was intended for 7EDU, and Defendant You has not paid the amount to 7EDU. FAC ¶¶ 150–153. Taken together with the other factual allegations that Defendant You "instructed a 7EDU employee to mark the invoices that had been issued to the partner as paid" and "did not inform 7EDU about these diverted payments, and did not transfer the funds to 7EDU" (*id.* ¶ 70), the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Court finds the allegations sufficient to state a claim for "money had and received."

2        Accordingly, Defendants' motion to dismiss the "money had and received" claim[2] is

3    DENIED.

### F.    Duty of Loyalty and Fiduciary Duty Claims

5        7EDU brings a claim for breach of the duty of loyalty against Defendants You, Qu, and Li

6    (FAC ¶¶ 155–164) and a claim for breach of fiduciary duty against Defendant You (*id.* ¶¶ 165–

7    171).  "Although they are similar, breach of fiduciary duty and breach of the duty of loyalty are

8    two distinct claims under California law."  *E.D.C. Techs., Inc. v. Seidel*, 216 F. Supp. 3d 1012,

9    1016 (N.D. Cal. 2016) (citations omitted).

10       First, as to breach of duty of loyalty, "California courts generally have not distinguished

11   between managerial employees and lower-level employees with respect to the duty of loyalty, but

12   rather use[ ] broad language suggesting that all employees owe a duty of loyalty to their

13   employers."  *Id.*  Under California law, Defendants "owed [7EDU] a duty of loyalty during their

14   term of employment. As such, they had a duty to refrain from competing with [7EDU] and from

15   taking action on behalf of or otherwise assisting [7EDU's] competitors."  *Les Fields/C.C.H.I. Ins.*

16   *Servs. v. Hines*, No. 15-CV-03728-MEJ, 2016 WL 6873459, at *15 (N.D. Cal. Nov. 22, 2016)

17   (cleaned up).

18       7EDU has adequately alleged that Defendant Qu breached her duty of loyalty by

19   downloading over 800 files from 7EDU's password-protective Google Drive days before her

20   resignation.  Given the surrounding factual context, including that Defendant Qu established a

21   competing business, Ignision, the day following her departure from 7EDU, it is reasonable to infer

22   that she downloaded 7EDU's files to benefit Ignision.  7EDU has also adequately alleged that

23   Defendant You breached her duty of loyalty by, during her employment, "secretly divert[ing]" all

24   marketing leads to Defendant Li, failing to update "critical" documents, and opening nearly 100

25

26   ───────────────

27   [2] The FAC refers to the "for money had and received" claim as the "Eighth Counterclaim."
     FAC 33.  The Court assumes this is a typographical error and will treat the claim as the Eighth
     Cause of Action.

28   Case No.: 24-cv-01708-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1   files from 7EDU's Google Drive days before her departure from 7EDU.  FAC ¶ 21.  Taken

2   together, these allegations and others in the FAC support a reasonable inference that Defendant

3   You's actions were intended to ultimately assist 7EDU's competitor, Ignision.

4           However, the factual allegations as to Defendant Li are insufficient to state a claim for

5   breach of duty of loyalty.  7EDU alleges Defendant Li returned her work devices with all of her

6   information erased.  Apart from this allegation, 7EDU claims, on information and belief, that

7   Defendant Li took this information "to help build Ignision's business."  FAC ¶ 22.  But as above

8   with respect to other claims against Defendant Li, this conclusion is unsupported.  Without more,

9   simply alleging that Defendant Li returned her work device "wiped" is insufficient to conclude

10  that doing so was for the benefit of a competitor.  Accordingly, 7EDU has not state a claim for

11  breach of loyalty as to Defendant Li.

12          As to the breach of fiduciary duty, 7EDU "must show (1) the existence of a fiduciary duty,

13  (2) its breach, and (3) damages proximately caused by the breach."  *Les Fields*, 2016 WL

14  6873459, at *14 (quoting *Hasso v. Hapke*, 227 Cal. App. 4th 107, 140 (2014)).  "[B]efore a person

15  can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf

16  and for the benefit of another, or must enter into a relationship which imposes that undertaking as

17  a matter of law....Fiduciary duties are imposed by law in certain technical, legal relationships such

18  as those between partners or joint venturers...trustees and beneficiaries, principals and agents, and

19  attorneys and clients[.]"  *Id.* (quotations omitted).  Corporate directors and officers typically are

20  deemed to owe fiduciary duties to their employer, and non-officers also have been found to owe

21  fiduciary duties if they participate in management.  *Id.* (citing *Thomas Weisel Partners LLC v.*

22  *BNP Paribas*, 2010 WL 1267744, at *5–6 (N.D. Cal. Apr. 1, 2010) (citing California cases)).

23          Here, 7EDU alleges that Defendant You, as Chief Operating Officer and Sales and

24  Marketing Director, owed 7EDU a fiduciary duty because she was responsible for "managing

25  payments to 7EDU."  FAC ¶ 166.  Her alleged fiduciary duties included "obligations to exercise

26  good business judgment, to act prudently in the management of 7EDU's payments, and to

27  discharge her actions in good faith, and to deal fairly and truthfully with 7EDU."  *Id.* ¶ 167.

28  Case No.: 24-cv-01708-EJD
    ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

7EDU has not sufficiently alleged a claim against Defendant You for breach of fiduciary duty because it has not plead that Defendant You owed a fiduciary duty to 7EDU.  Although the FAC does allege that Defendant You was a Chief Operating Officer ("COO"), it explicitly states that, at the time of most of her alleged misconduct,[3] she was acting as Marketing & Sales Director after being demoted from her COO role in August 2023.  *Id.* ¶ 21.  Beyond the allegation that Defendant You was "responsible for managing payments to 7EDU," the FAC lacks facts to establish that Defendant You participated in management of the company such that she would owe it a fiduciary duty.  Put differently, Defendant You's handling of payments—without further detail regarding any additional duties—does not necessarily equate to management authority or otherwise rise to the level of owing her employer a fiduciary duty.  Having failed to plead a fiduciary duty with the requisite specificity, the Court does not reach whether 7EDU has alleged a breach of any fiduciary duty.

In sum, Defendants' motion to dismiss the breach of loyalty claim is DENIED as to Defendants Qu and You and GRANTED WITH LEAVE TO AMEND as to Defendant Li. Defendants' motion to dismiss the breach of fiduciary duty claim against Defendant You is GRANTED WITH LEAVE TO AMEND.

Defendants also move to dismiss 7EDU's claims for "aiding and abetting breach of duty of loyalty" (FAC ¶¶ 172–179) and "aiding and abetting breach of duty of fiduciary duty" (*id.* ¶¶ 180–187).  Because the Court dismisses the claim for breach of duty of loyalty as to Defendant Li and the claim for breach of fiduciary duty, the aiding and abetting claims dependent on those causes of actions are likewise dismissed.  *See Acres Bonusing, Inc. v. Ramsey*, No. 19-CV-05418-WHO, 2022 WL 17170856, at *9 (N.D. Cal. Nov. 22, 2022) (aiding and abetting claim premised on breach of duty failed where no underlying fiduciary duty was owed).  With respect to the

---

[3] Although the specific timing is not clear, the FAC does allege that "starting in mid-2023," Defendant You failed to update the documents 7EDU uses to plan and monitor student progress for eight of the students she was counseling.  FAC ¶ 21.  However, even if this conduct overlaps with the time when Defendant You was still serving as COO, the Court is not convinced that failing to update documents rises to the level of breaching any fiduciary duty.  The later conduct occurred after Defendant You was demoted.

Case No.: 24-cv-01708-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
22

1    surviving breach of loyalty claim as to Defendants Qu and You, the Court declines to dismiss the

2    related aiding and abetting claim because Defendants offer no argument for why those claims

3    should be dismissed separate from the arguments as to the underlying claim.

4        Accordingly, Defendants' motion to dismiss the aiding and abetting breach of loyalty

5    claim is GRANTED WITH LEAVE TO AMEND as to Defendant Li and DENIED as to

6    Defendants Qu and You.  Defendants' motion to dismiss the aiding and abetting breach of

7    fiduciary duty claim is GRANTED WITH LEAVE TO AMEND as to Defendants Qu, Li, and

8    Ignision.

9        **G.    False Advertising Claims**

10        7EDU brings a claim for "Federal False Advertising in Violation of 15 U.S.C. §1125(a)"

11    (the "Lanham Act") (FAC ¶¶ 188–201) and a claim for "False Advertising in Violation of Cal.

12    Bus. & Prof. Code §17500 et seq" (*id.* ¶¶ 202–209) ("FAL") both against Defendant Ignision.

13        To state a claim for false advertising under the Lanham Act, 7EDU must allege that

14    (1) Ignision made a false statement of fact in a commercial advertisement; (2) the statement

15    deceived or had the tendency to deceive a substantial segment of its audience; (3) the deception

16    was material, in that it was likely to influence the purchasing decision; (4) the false statement

17    entered interstate commerce; and (5) 7EDU has been or is likely to be injured as a result of the

18    false statement.  *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 69 F.4th 665, 671 (9th

19    Cir. 2023) (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)).

20    California's FAL "prohibits any unfair, deceptive, untrue or misleading advertising." *Moore v.

21    Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020) (cleaned up) (quoting Cal. Bus. &

22    Prof. Code § 17500).  "Any violation of the [FAL] ... necessarily violates the [UCL]." *Id.*

23    (quotations omitted).

24        Regarding the final requirement that 7EDU has been or is likely to be injured as a result of

25    the false statement, 7EDU alleges "Defendants' false advertising has caused and is causing

26    damage and irreparable harm to 7EDU in the form of lost profits, loss of market share, loss of

27    sales, and loss of reputation and goodwill, which damage and injury will continue if not enjoined."

28    Case No.: 24-cv-01708-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1    FAC ¶ 209.  Defendants argue these claims fail because 7EDU has not identified "a single sale

2    that has been diverted as a result of the allegedly 'false' statements."  Mot. 17.  The Court

3    construes this argument as raising an issue with 7EDU's Article III standing to bring a false

4    advertising claim.[4]  *See* Mot. 17 (citing *Kwikset*, 51 Cal. 4th at 322).

5         In a false advertising suit, a plaintiff establishes Article III injury if "some consumers who

6    bought the defendant['s] product under [a] mistaken belief" fostered by the defendant "would have

7    otherwise bought the plaintiff['s] product."  *TrafficSchool.com*, 653 F.3d at 825; *see also Kwikset*,

8    51 Cal. 4th at 322 (quotations omitted) (standing under FAL "extends to any person who has

9    suffered injury in fact and has lost money or property as a result of a violation []").  The plaintiff

10   can prove his injury using "actual market experience and *probable* market behavior."

11   *TrafficSchool.com*, 653 F.3d at 825 (citations omitted) (emphasis in original) (noting that this

12   principle "makes sense" because "proving a counterfactual is never easy, and is especially difficult

13   when the injury consists of lost sales that are predicated on the independent decisions of third

14   parties; i.e., customers").  A plaintiff who cannot produce lost sales data may therefore establish

15   an injury by "creating a chain of inferences showing how defendant's false advertising could harm

16   plaintiff's business."  *Id.*

17        7EDU relies on such a "chain of inferences" to establish standing and argues that 7EDU

18   adequately pled an injury-in-fact because it alleged that Ignision competes with 7EDU, and that

19   the false advertising deceived potential clients into purchasing Ignision's services instead of

20   7EDU's services.  Opp. 17 (citing *TrafficSchool.com*, 653 F.3d at 825).  But this argument is not

21   reflected in what 7EDU alleged in the FAC.  The FAC does not allege that the false advertising

22   deceived potential clients into purchasing Ignision's services *instead of* 7EDU's services.  It

23   merely alleges that Ignision "is profiting at 7EDU's expense" (FAC ¶ 199) and the false

24   advertising has caused 7EDU "lost profits, loss of market share, loss of sales, and loss of

25   _____

26   [4] Regardless, "[a]n independent analysis of Article III standing must occur prior to analysis of
     statutory standing." *Animal Legal Def. Fund v. HVFG LLC*, 939 F. Supp. 2d 992, 997 (N.D. Cal.

27   2013) (quoting *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011)).

28   Case No.: 24-cv-01708-EJD
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

reputation and goodwill" (*id.* ¶ 209). While 7EDU may rely on a "chain of inferences" to establish an injury, the FAC lacks allegations tethering any false statements by Ignision to harm to 7EDU's business. In other words, the FAC does not allege *how* Ignision's false advertising could harm 7EDU's business. This missing causal connection warrants dismissal of 7EDU's FAL claim, too. *See Kwikset*, 51 Cal. 4th at 326 (explaining that "Proposition 64 requires that a plaintiff's economic injury come as a result of the unfair competition or a violation of the false advertising law" and "[t]he phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation") (quotations omitted).

Accordingly, Defendants' motion to dismiss false advertising claims is GRANTED WITH LEAVE TO AMEND. Should 7EDU amend its complaint to include additional allegations from which the Court can infer some causal connection between the alleged false advertising and the claimed injury to 7EDU, 7EDU will have likely established Article III standing.

### H.    Unfair Competition Claim

Finally, 7EDU brings a claim for unfair competition under California Business & Professions Code § 17200 ("UCL") against all Defendants. FAC ¶¶ 210–214. Defendants move to dismiss the UCL claim for failing to allege any unlawful or unfair conduct by Defendants because 7EDU's remaining claims fail. *See* Mot. 18. To extent the UCL claim is based on one of the claims the Court dismissed above, that claim is similarly dismissed. However, the Court denied Defendants' motion as to several other claims. Accordingly, the Court rejects Defendants' argument that 7EDU's UCL claim fails on this basis and DENIES Defendants' motion to dismiss the UCL claim.

## IV.    CONCLUSION

Defendants request that the Court grant its motion with prejudice. The Court declines to do so. At the stage, the Court cannot say that amendment would be futile, and the Court will permit 7EDU another opportunity to amend the dismissed claims.

For the foregoing reasons, the Court **GRANTS** Defendants' Motion and **DISMISSES** the

United States District Court
Northern District of California

following claims:

- Misappropriation claims against Defendant Li (first and second causes of action);

- Breach of contract claim against Defendant Li (fourth cause of action);

- Intentional interference claims against all Defendants (fifth and sixth causes of action);

- Breach of duty of loyalty claim as to Defendant Li (ninth cause of action);

- Breach of fiduciary duty claim as to Defendant You (tenth cause of action);

- Aiding and abetting breach of duty of loyalty claim as to Defendant Li (eleventh cause of action);

- Aiding and abetting breach of fiduciary duty claim as to Defendants Qu, Li, and Ignision (twelfth cause of action); and

- False advertising claims as to Defendant Ignision (thirteenth and fourteenth causes of action).

Defendants' Motion is otherwise **DENIED**.  Any amended complaint must be filed within 21 days of this Order.


  **IT IS SO ORDERED.**

Dated: December 19, 2024

_____
EDWARD J. DAVILA
United States District Judge